UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: AQUEOUS FILM-FORMING FOAMS
PRODUCTS LIABILITY LITIGATION					MDL No. 2873


ORDER DENYING TRANSFER


**Before the Panel**:*  Defendant 3M Company moves under 28 U.S.C. § 1407(c) to transfer the *Rougeau* action listed on Schedule A to the District of South Carolina for inclusion in MDL No. 2873.  Defendants Ahlstrom Rhinelander LLC and Ahlstrom NA Specialty Solutions LLC take no position on the motion.  Plaintiffs oppose the motion.

MDL No. 2873 involves allegations that aqueous film-forming foams (AFFFs) used at airports, military bases, or other locations to extinguish liquid fuel fires caused the release of perfluorooctane sulfonate (PFOS) and/or perfluorooctanoic acid (PFOA; collectively, these and other per- or polyfluoroalkyl substances are referred to as PFAS) into local groundwater and contaminated drinking water supplies.  *See In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (J.P.M.L. 2018).  Plaintiffs in *Rougeau* assert that their and other private water wells in Rhinelander, Wisconsin, are contaminated from PFAS stemming from the Rhinelander Paper Mill (which allegedly is operated by the Ahlstrom defendants).  Plaintiffs claim that the mill dumped PFAS-contaminated waste on farmland in Oneida County and seek to represent a putative class of Oneida County property owners.  Defendant 3M is alleged to have supplied the PFAS to the mill.  On its face, plaintiffs' complaint does not involve allegations pertaining to the manufacture, use, or disposal of AFFFs.

In support of its motion to transfer, 3M argues that *Rougeau* involves contamination sites already at issue in the MDL.  Specifically, 3M points to a complaint by the State of Wisconsin seeking to recover for alleged PFAS contamination of Wisconsin's natural resources.  *See Wisconsin v. 3M Co.*, C.A. No. 2:23-00028 (D.S.C.).  Among other sources of PFAS contamination, the State alleges AFFF use at the Rhinelander/Oneida County Airport has caused contamination of "several private wells" in the surrounding community.  *Wisconsin* Compl. ¶ 144(g).  3M also notes that the State alleges PFAS contamination in Rhinelander, Wisconsin, including at or near the addresses of plaintiffs in Rougeau.  Accordingly, 3M argues that there necessarily will be overlapping discovery as between the *Wisconsin* action and *Rougeau*.

---

* Judges Karen K. Caldwell and David C. Norton did not participate in the decision of this matter.

When we centralized this docket, we denied a motion by 3M to extend the scope of the MDL to encompass not just cases involving AFFFs, but all cases relating to 3M's manufacture, management, disposal, and sale of PFAS. *See In re AFFF*, 357 F. Supp. 3d at 1396. We drew this line between "AFFF" and "non-AFFF" cases because of concerns for the manageability of this litigation:

> While a non-AFFF MDL would allow for common discovery and motion practice with respect to 3M—the main producer of PFOA and PFOS—it also would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals (whereas the AFFF actions are limited to PFOA and PFOS contamination). Such an MDL could quickly become unwieldy.

*Id.* Since then, we have endeavored to maintain this distinction. *See, e.g.*, Order Denying Transfer at 2, MDL No. 2873 (J.P.M.L. Dec. 18, 2019), ECF No. 541 ("Given our continued concern about the manageability of this litigation, a party seeking transfer of an action that does not on its face raise AFFF claims bears a significant burden to persuade us that transfer is appropriate and will not undermine the efficient progress of the AFFF MDL.").

3M has not met its "significant burden" of showing that transfer of *Rougeau* is appropriate. Plaintiffs' complaint is wholly focused on the alleged contamination from the Rhinelander Paper Mill. From the very beginning of this litigation, we have excluded actions involving non-AFFF discharges of PFAS from specific industrial locations. *See In re AFFF*, 357 F. Supp. 3d at 1396 (excluding non-AFFF actions involving alleged industrial discharges into the Tennessee River, alleged contamination originating from a shoe manufacturer's industrial waste, and alleged PFAS discharges from factories in Hoosick Falls, New York). *See also, e.g.*, Order Denying Transfer at 1–3, MDL No. 2873 (J.P.M.L. Aug. 3, 2022), ECF No. 1510 (denying transfer of an action involving alleged PFAS discharges from a 3M manufacturing facility in Cordova, Illinois); Order Denying Transfer at 2–3, MDL No. 2873 (J.P.M.L. Apr. 5, 2022), ECF No. 1352 (denying transfer of an action involving PFAS discharges from carpet manufacturers in Dalton, Georgia).

3M relies heavily on the purported overlap with the *Wisconsin* action, but that action is not limited to AFFF contamination.[1] 3M argues that the *Rougeau* plaintiffs and class members' allegations of non-AFFF contamination of their wells will overlap with the State's claims pertaining to AFFF contamination, but these arguments are too speculative. For instance, it is unclear whether any class members in *Rougeau* were exposed to PFAS from alleged AFFF use at Rhinelander airport, which is eleven miles from the named *Rougeau* plaintiffs' home addresses. 3M invites us to presume that some portion of the class must have suffered contamination stemming from the Airport's use of AFFF; however, the mere potential for overlap is not sufficient to justify transfer of an otherwise non-AFFF action. *See* Order Vacating CTO at 2, MDL No. 2873 (Aug. 3, 2022), ECF No. 1511 (declining to transfer putative non-AFFF action based on evidence showing only "the potential for commingling of PFAS from AFFF and non-AFFF sources").

---

[1] Indeed, the State opposed transfer of its action to the MDL, in large part, on the basis that its action was "predominantly not an AFFF case." Transfer Order at 2, MDL No. 2873 (J.P.M.L. Dec. 13, 2022), ECF No. 1646.

- 3 -

3M also argues that the overlap of allegedly non-AFFF-related PFAS contamination claims in the two actions supports transfer. This argument overreaches, as it would mean that *every* PFAS action in Wisconsin, no matter how unrelated to AFFF use or disposal, conceivably should be transferred to the MDL. This would raise raising exactly the management concerns that prompted us to limit the scope of this MDL in the first place.

Accordingly, after considering the parties' arguments, we find that transfer of the action listed on Schedule A under 28 U.S.C. § 1407 will not serve the convenience of the parties and witnesses or promote the just and efficient conduct of the litigation. To be clear, we do not foreclose the possibility that discovery and pretrial practice could demonstrate that an ostensibly non-AFFF action is, in fact, more properly treated as an AFFF case for which transfer to MDL No. 2873 is warranted. But, based upon our consideration of the pleadings and the record before us, 3M has not established a sufficiently substantial and concrete overlap between *Rougeau* and the AFFF claims pending in the MDL to justify transfer to the MDL. Should *Rougeau* evolve into a more obvious AFFF action, the parties or the court may re-notice *Rougeau* as a potential tag-along in MDL No. 2873 at that time. At present, however, whether and how AFFF plays a role in plaintiffs' injuries in *Rougeau* remains too uncertain to warrant transfer.

IT IS THEREFORE ORDERED that the motion to transfer the action listed on Schedule A to MDL No. 2873 is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____
Nathaniel M. Gorton
Acting Chair

Matthew F. Kennelly          Roger T. Benitez
Dale A. Kimball              Madeline Cox Arleo

**IN RE: AQUEOUS FILM-FORMING FOAMS**
**PRODUCTS LIABILITY LITIGATION**                                  MDL No. 2873

## SCHEDULE A

<u>Western District of Wisconsin</u>

ROUGEAU, ET AL. v. AHLSTROM RHINELANDER, LLC, ET AL.,
    C.A. No. 3:23−00546