**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

---

LUCAS ROUGEAU; ALISHA ROUGEAU;
CARRIE BRENTON; KERRY BRENTON;
TIMOTHY GERDMANN; AND MELISSA
GERDMANN,

        Plaintiffs,

        v.

3M COMPANY (f/k/a MINNESOTA MINING
AND MANUFACTURING, CO.); AHLSTROM
RHINELANDER LLC; AHLSTROM-
MUNKSJO SPECIALTY SOLUTIONS
ACQUISITION LLC; AHLSTROM NA
SPECIALTY SOLUTIONS LLC; AND JOHN
DOE DEFENDANTS 1-49,

        Defendants.

Case No. 3:23-cv-546

Judge William M. Conley

---

**BRIEF IN SUPPORT OF 3M COMPANY'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

BACKGROUND ........................................................................................................ 3

LEGAL STANDARD ................................................................................................. 7

ARGUMENT ............................................................................................................ 7

    I.    Each Claim Against 3M Should Be Dismissed Because Plaintiffs Fail To Plead That 3M Caused Their Alleged Injuries. .................................................. 7

    II.    The Strict-Liability And Negligence Claims Against 3M Fail Because The Complaint Does Not Allege That Harm To Plaintiffs Was Foreseeable To 3M. ... 11

    III.    The Strict-Liability Claims Fail For Additional Reasons. ....................................... 12

        A.    The Strict-Liability Claims Are Barred By The Statute of Repose. ............... 12

        B.    The Design-Defect Claim Should Be Dismissed Because The Complaint Fails To Allege A Reasonable Alternative Design. ................................................. 14

        C.    The Failure-To-Warn Claim Should Be Dismissed For The Additional Reason That A Warning Would Have Been Futile. .................................................... 15

    IV.    The Trespass And Private-Nuisance Claims Against 3M Fail For Additional Reasons. .................................................................................................. 17

CONCLUSION .......................................................................................................... 21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abelesz v. Magyar Nemzeti Bank*,
   692 F.3d 661 (7th Cir. 2012) ................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................7, 11, 13, 14

*Below v. Yokohama Tire Corp.*,
   2017 WL 679153 (W.D. Wis. Feb. 21, 2017)..........................................14

*Borello v. U.S. Oil Co.*,
   130 Wis. 2d 397, 388 N.W.2d 140 (1986)..........................................12, 13

*Bowen v. Lumbermens Mut. Cas. Co.*,
   183 Wis. 2d 627, 517 N.W.2d 432 (1994) ...............................................7

*City of Bloomington v. Westinghouse Elec. Corp.*,
   891 F.2d 611 (7th Cir. 1989) ............................................18, 20

*City of Milwaukee v. NL Indus.*,
   2008 WI App 181, 315 Wis. 2d 443, 762 N.W.2d 757 ...........................19

*Coffey v. City of Milwaukee*,
   74 Wis. 2d 526, 247 N.W.2d 132 (1976)...........................................8, 10

*Collins v. Eli Lilly & Co.*,
   116 Wis. 2d 166, 342 N.W.2d 37 (1984)................................................7

*Commonwealth v. Monsanto Co.*,
   269 A.3d 623 (Pa. Commw. Ct. 2021) ...................................................19

*Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*,
   2004 WI 62, 272 Wis. 2d 46, 680 N.W.2d 345 ......................................8

*Crook v. Kaneb Pipe Line Operating P'ship, L.P.*,
   231 F.3d 1098 (8th Cir. 2000) ...........................................................17

*In re Dicamba Herbicides Litig.*,
   359 F. Supp. 3d 711 (E.D. Mo. 2019)...................................................20

*Eichstedt v. Lakefield Arms Ltd.*,
   849 F. Supp. 1287 (E.D. Wis. 1994)...................................................10

*Fiumefreddo v. McLean,*
 174 Wis. 2d 10, 496 N.W.2d 226 (Ct. App. 1993) ................................................7

*Fortier v. Flambeau Plastics Co.,*
 164 Wis. 2d 639, 476 N.W.2d 593 (Ct. App. 1991) .............................................18

*Giebel v. Richards,*
 224 Wis. 2d 468, 591 N.W.2d 901 (Ct. App. 1999) ......................................8, 9, 10

*Grygiel v. Monches Fish & Game Club, Inc.,*
 2010 WI 93, 328 Wis. 2d 436, 787 N.W.2d 6 ..............................................7, 17

*Hansen v. A.H. Robins, Inc.,*
 113 Wis. 2d 550, 335 N.W.2d 578 (1983) ....................................................13

*Hastings Mut. Ins. Co. v. Omega Flex, Inc.,*
 2022 WL 4103934 (W.D. Wis. Sept. 8, 2022) ..............................................12

*Horst v. Deere & Co.,*
 2009 WI 75, 319 Wis. 2d 147, 769 N.W.2d 536 .......................................10, 16

*Jordan v. S. Wood Piedmont Co.,*
 805 F. Supp. 1575 (S.D. Ga. 1992) ..........................................................20

*Kidd v. Allaway,*
 2011 WI App 161, 338 Wis. 2d 129, 807 N.W.2d 700 ......................................10

*Kurer v. Parke, Davis & Co.,*
 2004 WI App 74, 272 Wis. 2d 390, 679 N.W.2d 867 ..................................16, 17

*McMahon v. St. Croix Falls Sch. Dist.,*
 228 Wis. 2d 215, 596 N.W.2d 875 (Ct. App. 1999) .......................................8, 9

*Menominee Indian Tribe of Wis. v. Thompson,*
 161 F.3d 449 (7th Cir. 1998) ................................................................5

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee,*
 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658 .......................................7, 17, 18

*Morden v. Continental AG,*
 2000 WI 51, 235 Wis. 2d 325, 611 N.W.2d 659 ...........................................7, 11

*Munger v. Seehafer,*
 2016 WI App 89, 372 Wis. 2d 749, 890 N.W.2d 22 ..........................................19

*Murphy v. Columbus McKinnon Corp.,*
 2022 WI 109, 405 Wis. 2d 157, 982 N.W.2d 898 ...........................................14

*Nelson v. Johnson & Johnson*,
    428 F. Supp. 3d 1 (E.D. Wis. 2019) ................................................................. 14

*Nieuwendorp v. Am. Fam. Ins. Co.*,
    191 Wis. 2d 462, 529 N.W.2d 594 (1995) ........................................................ 7

*Parks Hiway Enters., LLC v. CEM Leasing, Inc.*,
    995 P.2d 657 (Alaska 2000) ............................................................................ 20

*In re Paulsboro Derailment Cases*,
    2013 WL 5530046 (D.N.J. Oct. 4, 2013) ......................................................... 19

*Pollack v. Rsrv. Life Ins. Co.*,
    15 Wis. 2d 336, 112 N.W.2d 907 (1962) ......................................................... 13

*Robert E. Lee & Assocs. v. Peters*,
    206 Wis. 2d 509, 557 N.W.2d 457 (Ct. App. 1996) ......................................... 19

*Ryan v. Greif, Inc.*,
    2023 WL 5979711 (D. Mass Sept. 1, 2023) .................................................... 15

*Strasser v. Transtech Mobile Fleet Serv., Inc.*,
    2000 WI 87, 236 Wis. 2d 435, 613 N.W.2d 142 .............................................. 11

*Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*,
    617 F. Supp. 126 (D.N.H. 1984) ...................................................................... 20

*United States v. Union Corp.*,
    277 F. Supp. 2d 478 (E.D. Pa. 2003) ............................................................... 19

*Wis. Power & Light Co. v. Columbia Cnty.*,
    18 Wis. 2d 39, 117 N.W.2d 597 (1962) ........................................................... 18

*Wis. Power & Light Co. v. Columbia Cnty.*,
    3 Wis. 2d 1, 87 N.W.2d 279 (1958) ................................................................. 17

*In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*,
    884 F.3d 746 (7th Cir. 2018) ...................................................................... 15, 17

**Statute**

Wis. Stat. § 895.047 ............................................................... 3, 7, 11, 12, 13, 14, 15

**Rule**

Fed. R. Civ. P. 12 .................................................................................................. 7

**Other Authorities**

EPA, *Perflurooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg. 18,626 (Apr. 16, 2003)........................................................................................................5, 12

Testimony of Dr. Denise Rutherford, Senior Vice President of Corporate Affairs, 3M Company, Before the H. Comm. on Oversight & Reform, Subcomm. on the Env't, 116th Cong. 9 (2019) ...............................................................................5

Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Stella* ...................................5, 6, 13

## INTRODUCTION

Lucas and Alisha Rougeau and several other property owners in or near Rhinelander, Wisconsin ("Plaintiffs"), claim they have contaminated well water.  The crux of their Amended Complaint ("Complaint"), ECF No. 29, is that the current and former owners of the nearby Rhinelander Paper Mill (the "Mill")—the Ahlstrom Defendants (Ahlstrom Rhinelander LLC, Ahlstrom-Munksjo Specialty Solutions Acquisition LLC, and Ahlstrom NA Special Solutions LLC), the Wausau Paper Defendants (Wausau Paper Corp., Wausau Paper Mills LLC, Essity North America Inc., and Essity Aktiebolag), and their predecessors (collectively, "Ahlstrom and Wausau Paper")—improperly disposed of toxic chemical waste on farmland via a process called land application.  The waste allegedly contained perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"), chemicals contained in products that Ahlstrom and Wausau Paper used at the Mill.  The Complaint alleges that PFOS and PFOA seeped into the groundwater and eventually entered private wells on Plaintiffs' properties, damaging the properties and, in a few instances, leading to personal injury.

The Complaint makes serious allegations against Ahlstrom and Wausau Paper.  They allegedly dumped "millions of pounds of waste" from the Mill onto farmland.  Compl. ¶ 2.  According to the Complaint, land application of the waste was "improper[]," *id.* ¶¶ 34, 38, "inappropriate," *id.* ¶ 144, and "not a common practice," *id.* ¶ 146.  The Complaint alleges that, although Ahlstrom and Wausau Paper knew that land application of the waste would contaminate water supplies, the companies nonetheless disposed of the waste in that manner.  *Id.* ¶¶ 59, 150.  The Complaint further asserts that the disposal of the waste was "extremely hazardous" and that Ahlstrom and Wausau Paper are liable for the consequences.  *Id.* ¶ 142.

Plaintiffs have also sued 3M Company ("3M").  For several decades, 3M lawfully manufactured PFOS and PFOA (and products containing PFOS and PFOA), two chemicals that

1

are part of a larger family referred to collectively as per- and polyfluoroalkyl substances ("PFAS"). 3M allegedly manufactured some of the PFOS and PFOA contained in products that Ahlstrom and Wausau Paper used in their operations at the Mill. In addition to their claims against Ahlstrom and Wausau Paper, Plaintiffs assert five claims against 3M: strict-liability design defect, strict-liability failure to warn, negligence, private nuisance, and trespass. The Court should dismiss the claims against 3M for multiple reasons.

*First*, the Complaint does not plausibly allege that 3M was the cause of any of Plaintiffs' injuries. This pleading failure requires dismissal of every claim against 3M. According to the Complaint, Ahlstrom and Wausau Paper "improperly" and "inappropriate[ly]" disposed of millions of pounds of waste on open farmland, which was "not a common practice." Compl. ¶¶ 34, 38, 144–46. The Complaint does not plausibly allege that, when it allegedly sold PFOS- and PFOA-containing products to Ahlstrom and Wausau Paper, 3M had any reason to foresee these allegedly improper, intervening actions by third parties. Ahlstrom and Wausau Paper's alleged actions were thus a superseding cause that severs any potential connection to 3M and absolves 3M of any liability for Plaintiffs' alleged injuries.

*Second*, for similar reasons, Plaintiffs' strict-liability and negligence claims against 3M fail because 3M had no duty to predict and warn against Ahlstrom and Wausau Paper's allegedly hazardous conduct. A manufacturer's duties to design reasonably safe products, to adequately warn others of dangers from those products, and to act reasonably extend only to foreseeable risks of the products. Plaintiffs do not plausibly allege that their asserted injuries—caused by Ahlstrom and Wausau Paper's allegedly improper dumping—were foreseeable to 3M.

*Third*, the strict-liability claims fail for additional reasons. They are barred by Wisconsin's 15-year statute of repose. Under that provision, the manufacturer of a product cannot be held liable

for injuries allegedly caused by the product if the product was manufactured at least 15 years before the claim accrued. Wis. Stat. § 895.047(5). 3M announced the phase-out of manufacturing of PFOS and PFOA in 2000 and ceased manufacturing the relevant products by 2002, but Plaintiffs' claims did not accrue until 2022 at the earliest. These claims are thus untimely. Further, the design-defect claim is legally deficient because the Complaint does not adequately plead the existence of a reasonable alternative design; its boilerplate recitation of that statutory element is insufficient to state a claim. And the failure-to-warn claim should be dismissed because Plaintiffs do not allege that an adequate warning from 3M would have prevented Ahlstrom and Wausau Paper from allegedly improperly dumping their waste onto open farmland.

*Finally*, the trespass and private-nuisance claims against 3M should also be dismissed for additional, independent reasons. Plaintiffs fail to allege that 3M intended that any PFOS or PFOA (or waste stream containing them) enter Plaintiffs' properties. Further, Plaintiffs cannot recover for any alleged damage to land or resources that they do not exclusively own or possess. And a trespass claim cannot be maintained against 3M, which did not control the PFOS and PFOA at the time that the chemicals allegedly invaded Plaintiffs' properties.

The Court should dismiss all claims against 3M.

## BACKGROUND

According to the Complaint, Plaintiffs are residents of Wisconsin who own property in Oneida County, near the city of Rhinelander. Compl. ¶¶ 1, 7–30. Plaintiffs all receive their water supplies from private wells on their properties. *Id.* ¶ 1. Plaintiffs allege that their wells were contaminated with PFOS and PFOA after the operators of the nearby Rhinelander Paper Mill

spread "millions of pounds of waste" from the Mill onto open farmland in the County, especially near the Town of Stella. *Id.* ¶¶ 2, 58, 62, 64.[1]

According to the Complaint, the Rhinelander Paper Mill was established in 1903. Compl. ¶ 57. The Complaint alleges that Wausau Paper acquired the Mill in 1997 and that Wausau Paper is responsible for "liability for the prior ownership and operation of the" Mill. *Id.* ¶¶ 35, 57. In 2013, Wausau Paper allegedly sold the Mill to Ahlstrom, which continues to own and operate the Mill today. *Id.* ¶¶ 3, 36, 57. "For decades until the present," the Complaint alleges, "Ahlstrom, Wausau Paper, and their predecessors" (which this motion refers to collectively as "Ahlstrom and Wausau Paper") have disposed of "millions of pounds" of waste containing PFOS and PFOA on "farmland" in the area. *Id.* ¶ 58. The Complaint asserts that land application of such waste is "improper[]," *id.* ¶¶ 34, 38, "inappropriate," *id.* ¶ 144, "extremely hazardous," *id.* ¶ 142, and "not a common practice," *id.* ¶ 146.

According to the Complaint, Ahlstrom and Wausau Paper purchased some of the PFOS- and PFOA-containing products that they used at the Mill (and then allegedly improperly disposed of) from 3M. Compl. ¶ 39. The Complaint alleges that 3M "manufactured, marketed, promoted, distributed, and/or sold" PFOS and PFOA. *Id.* ¶ 39.

---

[1] At various points, the Complaint alleges that Plaintiffs' wells are contaminated by "PFAS" generally, "including, but not limited to, [PFOA] and [PFOS]." Compl. ¶ 1; *see id.* ¶¶ 106, 127, 128(a), 135. But the clear focus of Plaintiffs' allegations is solely on PFOS and PFOA. *See id.* ¶ 62 ("Plaintiffs' Properties have been contaminated, and will continue to be contaminated, with PFOA and PFOS."); *id.* ¶ 63 ("Defendants moreover breached their duty to minimize the environmental harm caused by PFOA and PFOS."); *id.* ¶ 64 ("As discussed above, Plaintiffs own real properties and private drinking wells contaminated with PFOA and PFOS. Plaintiffs have been regularly exposed to dangerously high levels [of] PFOS and PFOA compounds."); *see also id.* ¶¶ 42–46 (discussing alleged characteristics of PFOS and PFOA); *id.* ¶¶ 51–55 (allegations about knowledge of risks relating only to PFOS and PFOA); *id.* ¶¶ 65–68 (alleging contamination from PFOS and PFOA).

The Complaint suggests that 3M and Ahlstrom and Wausau Paper knew of the dangers of PFOS and PFOA but nevertheless manufactured and sold (3M) or used and disposed of (Ahlstrom and Wausau Paper) the chemicals.  *See*, *e.g.*, Compl. ¶¶ 5, 59, 150.  The Complaint recognizes, however, that knowledge of PFOS and PFOA changed over time, and does not assert any specific, nonconclusory factual allegation about what 3M knew regarding PFOS or PFOA until 1980.  *Id.* ¶ 53.

3M announced a voluntary phase-out of the manufacture of PFOS and PFOA in 2000.  *See* EPA, *Perfluorooctanoic Acid (PFOA), Fluorinated Telomers; Request for Comment, Solicitation of Interested Parties for Enforceable Consent Agreement Development, and Notice of Public Meeting*, 68 Fed. Reg. 18,626, 18,628 (Apr. 16, 2003).[2]  In 2000, 3M stopped manufacturing PFOS in the United States and phased out production of any relevant products containing PFOS or PFOA by 2002.  *See* Compl. ¶ 143; 68 Fed. Reg. at 18,628.[3]  (Given the phase-out, no disposal actions attributed to Ahlstrom could have involved waste containing 3M PFOS or PFOA.)

About 20 years later, in the summer of 2022, the Wisconsin Department of Natural Resources "launched a project" to test water in the State for the presence of PFAS.  Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Stella*, https://dnr.wisconsin.gov/topic/PFAS/

---

[2] "Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper."  *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998).  The Court should therefore take judicial notice of the governmental statements and reports cited in this section.

[3] 3M has acknowledged that it continued to use PFOA in the manufacturing process of some commercial products until 2008.  *See* Testimony of Dr. Denise Rutherford, Senior Vice President of Corporate Affairs, 3M Company, Before the H. Comm. on Oversight & Reform, Subcomm. on the Env't, 116th Cong. 9 (2019), https://docs.house.gov/meetings/GO/GO28/20190910/109902/ HHRG-116-GO28-20190910-QFR017.pdf.

Stella.html (last visited Mar. 21, 2024). That testing project led to the discovery of the presence of PFOS and PFOA in some private wells near the Rhinelander Paper Mill. *Id.*

In August 2023, Plaintiffs filed this putative class action against Ahlstrom, 3M, and 49 John Doe Defendants and later added the Wausau Paper Defendants.[4] In the Complaint, Plaintiffs allege that, as a result of Ahlstrom and Wausau Paper's dumping of waste containing PFOS and PFOA on farmland, "Plaintiffs' Properties have been contaminated, and will continue to be contaminated, with PFOA and PFOS." Compl. ¶ 62. Plaintiffs allege that they "were exposed to" those chemicals "through their ordinary use of contaminated water for drinking, cooking, bathing, and cleaning." *Id.* ¶ 92(b). A few Plaintiffs—although far from a majority—also assert that they suffer from various medical conditions, ranging from high cholesterol to kidney cancer, which they attribute (in part) to exposure to PFOS and PFOA. *Id.* ¶¶ 8(c), 9(c), 15(c), 18(c), 27(c), 28(c)–(d), 30(c). Plaintiffs seek to recover for remediation of their properties and drinking water, and—as relevant—for their alleged personal injuries. *Id.* ¶¶ 62, 69, 92(c).

The Complaint alleges two strict-liability claims (design defect and failure to warn) against 3M and the John Doe Defendants; negligence, private-nuisance, and trespass claims against all Defendants; and an abnormally-dangerous-activity claim against only Ahlstrom and Wausau Paper based on their "inappropriate" and "extremely hazardous" waste-disposal practices. Compl. ¶¶ 142, 144.

---

[4] The Complaint contains no allegations specific to the John Doe Defendants, although they are alleged to have "designed, manufactured, formulated, promoted, marketed, distributed, exchanged, and/or sold" PFOS and PFOA, like 3M, and had the same knowledge as 3M regarding the risks of those products. Compl. ¶¶ 82–87. Given 3M's phase-out and the fact that other entities manufactured products containing PFOS and PFOA during the time period at issue, it seems likely that other entities may have sold products that are relevant to this case.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), Plaintiffs' Complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In other words, Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A pleading "'will not do'" if it offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

**ARGUMENT**

**I.    Each Claim Against 3M Should Be Dismissed Because Plaintiffs Fail To Plead That 3M Caused Their Alleged Injuries.**

Causation "is, of course, a critical element of any tort claim."  *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 496 N.W.2d 226, 230 (Ct. App. 1993).  Each of Plaintiffs' claims requires them to plead and prove causation.  *See* Wis. Stat. § 895.047(1)(e) (strict-liability design defect and failure to warn); *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 517 N.W.2d 432, 442 (1994) (negligence); *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 32, 277 Wis. 2d 635, 691 N.W.2d 658 (private nuisance); *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 40, 328 Wis. 2d 436, 787 N.W.2d 6 (trespass).  Plaintiffs' failure to plead causation is thus an "insurmountable obstacle" to recovery.  *Collins v. Eli Lilly & Co.*, 116 Wis. 2d 166, 342 N.W.2d 37, 45 (1984).

Causation has two elements: cause-in-fact and legal, or proximate, cause.  *Morden v. Continental AG*, 2000 WI 51, ¶ 60, 235 Wis. 2d 325, 611 N.W.2d 659.  An action is a cause-in-fact if it is a "substantial factor in producing the injury."  *Nieuwendorp v. Am. Fam. Ins. Co.*, 191

Wis. 2d 462, 529 N.W.2d 594, 599 (1995) (citation omitted).  Legal or "[p]roximate cause," by contrast, "involves public policy considerations for the court that may preclude the imposition of liability"—a "cause-in-fact of the injury" may be "legally insufficient to allow recovery." *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶¶ 12–15, 272 Wis. 2d 46, 680 N.W.2d 345 (citation omitted).  One such circumstance is where there is a superseding cause, which is "an intervening force that relieves an actor from liability for harm" even if "his negligence was a substantial factor in producing" it.  *McMahon v. St. Croix Falls Sch. Dist.*, 228 Wis. 2d 215, 596 N.W.2d 875, 879–80 (Ct. App. 1999).  The Court should dismiss each claim against 3M because— taking the allegations in the Complaint as true—Ahlstrom and Wausau Paper's alleged misconduct in improperly disposing of their waste is a superseding cause of Plaintiffs' alleged injuries.

"[U]nder the doctrine of superseding cause, [courts] must examine the public policy considerations articulated in *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 541, 247 N.W.2d 132, 140 (1976)."  *Giebel v. Richards*, 224 Wis. 2d 468, 591 N.W.2d 901, 903 (Ct. App. 1999).  If "any one" of those six factors "is satisfied," the defendant is not liable, even if its conduct was a cause-in-fact of the plaintiff's injury.  *Id.*  The *Coffey* factors are:  "(1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden on the negligent tort-feasor; or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point."  247 N.W.2d at 140.

The "act of a third person in committing an intentional tort . . . is a superseding cause of harm" that satisfies at least some (if not all) of the *Coffey* factors unless the defendant "realized or

should have realized *the likelihood* that such a situation might be created, and that a third person might avail himself [or herself] of the opportunity to commit such a tort." *Giebel*, 591 N.W.2d at 904 (alteration in original) (quoting Restatement (Second) of Torts § 448 (1964)). "As a general rule," the inquiry is whether the intervening act was foreseeable. *McMahon*, 596 N.W.2d at 880 (quoting *Bogust v. Iverson*, 10 Wis. 2d 129, 102 N.W.2d 228, 233 (1960)).

Here, even if 3M's conduct were a cause-in-fact of Plaintiffs' alleged injuries, 3M still would not be liable as a matter of law because Ahlstrom and Wausau Paper's alleged decisions to intentionally and "improperly dispose[] of PFAS-containing waste . . . on farms in the Rhinelander area" constitute a superseding cause. Compl. ¶¶ 34, 38; *see id.* ¶ 118. The Complaint fails plausibly to allege that it was reasonably foreseeable that Ahlstrom and Wausau Paper would dump millions of pounds of waste in this way. On the contrary, the Complaint asserts that "[s]preading solids and waste containing high levels of [PFOS and PFOA] on farmland near residential drinking water sources is *not* a common practice, and is *not* in common usage." *Id.* ¶ 146 (emphases added). Moreover, the Complaint adds that such disposal "was inappropriate for any location where there was a potential pathway to groundwater." *Id.* ¶ 144. The Complaint thus contains no allegation that would plausibly indicate that 3M knew or should have known of Ahlstrom and Wausau Paper's allegedly unusual and improper practice. At most, the Complaint alleges that 3M had an arm's length business relationship with Ahlstrom and Wausau Paper in which Ahlstrom and Wausau Paper purchased products containing PFOS and PFOA from 3M for use at the Rhinelander Paper Mill. *Id.* ¶ 39. To the extent that Plaintiffs' injuries are the result of PFOS and PFOA exposure, they were caused by Ahlstrom and Wausau Paper's allegedly unforeseeable and inappropriate acts—and they are too remote from, wholly disproportionate to, and highly extraordinary in comparison with any alleged conduct by 3M. *See Giebel*, 591 N.W.2d at 904;

*Kidd v. Allaway*, 2011 WI App 161, ¶ 14, 338 Wis. 2d 129, 807 N.W.2d 700 (an "'intervening or superseding cause'" means that plaintiff's "injury is too removed or separated from" the defendant's conduct) (citation omitted).

This case is similar to *Eichstedt v. Lakefield Arms Ltd.*, 849 F. Supp. 1287 (E.D. Wis. 1994), where the plaintiff was shot in the eye by his friend who thought a gun was unloaded. The plaintiff sued the gun manufacturer, who argued that the friend's conduct was a superseding cause of the injury. The court agreed that the friend's "intentional, reckless actions" "constituted a superseding cause" under Wisconsin law and that the gun manufacturer's conduct was therefore not a proximate cause. *Id.* at 1292; *see also Giebel*, 591 N.W.2d at 902–04 (apartment building was not the legal cause of any harm when a third party set fire to garbage and old furniture that the building's tenants left outside against the plaintiff's garage).

If recovery were permitted here, there would be "no sensible or just stopping point" to liability. *Coffey*, 247 N.W.2d at 140. Plaintiffs are asking this Court to create an open-ended rule that a manufacturer who sells a product with an alleged defect can be held liable for intentional torts committed by customers who allegedly misuse the manufacturer's product, no matter how uncommon or inappropriate the customers' conduct. That boundless rule would contravene the Wisconsin Supreme Court's clear view that manufacturers should not be held "liable for every injury involving their products." *Horst v. Deere & Co.*, 2009 WI 75, ¶ 27, 319 Wis. 2d 147, 769 N.W.2d 536.

Plaintiffs' conclusory allegation that 3M "knew, or reasonably should have known, that . . . Ahlstrom and/or Wausau Paper, and its predecessors[,] disposed of PFAS-laden waste sludge from the Rhinelander Paper Mill by spreading it onto farmland," Compl. ¶ 117, is not sufficient to salvage their claims. That bare assertion is not supported by any well-pleaded factual allegations

in the Complaint.  In fact, the Complaint's other allegations undermine it.  As noted earlier, the Complaint asserts that Ahlstrom and Wausau Paper's disposal was improper, inappropriate, and uncommon.  *Id.* ¶¶ 34, 38, 144, 146.  Given those allegations, it is not "plausible" that 3M knew about, or should have foreseen, Ahlstrom and Wausau Paper's allegedly "extremely hazardous" conduct.  *Id.* ¶ 142; *see Iqbal*, 556 U.S. at 678.  Their allegedly intentional intervening actions therefore sever any causal connection to 3M in this case.

## II.    The Strict-Liability And Negligence Claims Against 3M Fail Because The Complaint Does Not Allege That Harm To Plaintiffs Was Foreseeable To 3M.

The strict-liability and negligence claims against 3M should be dismissed for the additional reason that 3M had no duty to guard against unforeseeable harm.

"Duty pivots on foreseeability."  *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 51, 236 Wis. 2d 435, 613 N.W.2d 142.  Wisconsin's products-liability statute thus makes clear that a manufacturer need consider only "foreseeable risks of harm" when designing products and issuing warnings.  Wis. Stat. § 895.047(1)(a).  The same is true for negligence:  A duty extends to "reasonable uses and misuses" of a product and "the consequent foreseeable dangers"—looking at what "'is normal for the use of [the] product.'"  *Morden*, 611 N.W.2d at 674 (citation omitted).  Plaintiffs' strict-liability and negligence claims against 3M therefore fail to state a claim.

As explained above, Ahlstrom and Wausau Paper's alleged decisions to dispose of waste containing PFOS and PFOA in open farmland near groundwater were not foreseeable.  Instead, the Complaint makes clear that this practice was allegedly "improper[]," "inappropriate for any location where there was a potential pathway to groundwater," and "not . . . common."  Compl. ¶¶ 34, 38, 144, 146; *see supra* at 9–10.  Plaintiffs' conclusory assertion to the contrary—that 3M "knew, or reasonably should have known, that . . . Ahlstrom and/or Wausau Paper, and its predecessors[,] disposed of PFAS-laden waste sludge from the Rhinelander Paper Mill by

spreading it onto farmland," Compl. ¶ 117—is not plausible.  *See supra* at 10–11 (addressing this allegation).  3M therefore had no duty to design a product, provide warnings, or take any other measures to account for Ahlstrom and Wausau Paper's allegedly "extremely hazardous" actions. *Id.* ¶ 142.

## III.   The Strict-Liability Claims Fail For Additional Reasons.

Plaintiffs' strict-liability claims against 3M require dismissal for multiple additional reasons.

### A.   The Strict-Liability Claims Are Barred By The Statute of Repose.

Plaintiffs' strict-liability claims are barred by Wisconsin's 15-year statute of repose.  That statute provides:  "In any [action for damages caused by a manufactured product based on a claim of strict liability], a defendant is not liable to a claimant for damages if the product alleged to have caused the damage was manufactured 15 years or more before the claim accrues, unless the manufacturer makes a specific representation that the product will last for a period beyond 15 years."  Wis. Stat. § 895.047(5).  A tort claim accrues when "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product."  *Borello v. U.S. Oil Co.*, 130 Wis. 2d 397, 388 N.W.2d 140, 146 (1986); *see Hastings Mut. Ins. Co. v. Omega Flex, Inc.*, 2022 WL 4103934, at *3 (W.D. Wis. Sept. 8, 2022) (holding that the term "accrue" in § 895.047(5) has that same meaning).

As noted, 3M announced a voluntary phase-out of the manufacture of PFOS and PFOA in 2000.  *See* 68 Fed. Reg. at 18,628.  3M stopped manufacturing PFOS in the United States that same year and phased out production of any relevant products containing PFOS or PFOA by 2002. *See* Compl. ¶ 143; 68 Fed. Reg. at 18,628.

For Plaintiffs' strict-liability claims to escape the statute of repose, then, those claims must have accrued by 2017 at the latest. For any damage allegedly caused by PFOS or PFOA manufactured before 2002—the majority of 3M's PFOS and PFOA products at issue, given the phase-out beginning in 2000—the claims must have accrued even earlier. Yet the Wisconsin Department of Natural Resources has stated that it did not begin sampling well water in the State until "the summer of 2022," a process that led to the discovery of the presence of PFOS and PFOA in wells near the Rhinelander Paper Mill. Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Stella*, *supra*. This means that Plaintiffs' strict-liability claims accrued in 2022 or 2023—when Plaintiffs discovered their alleged injuries and that they might have been caused by PFOS or PFOA manufactured by 3M, *Borello*, 388 N.W.2d at 146—more than 15 years after 3M ceased manufacturing any relevant products containing PFOS and PFOA.[5]

In an apparent attempt to evade the statute of repose, the Complaint alleges that "Defendants specifically represented that their PFAS products had significant periods of useful life, spanning beyond 15 years." Compl. ¶ 89. But that conclusory assertion—which merely restates the language of § 895.047(5) without any supporting facts—does not suffice. *Iqbal*, 556 U.S. at 678. Plaintiffs' boilerplate addition that their assertion is based on "information and belief," Compl. ¶ 89, makes no difference. *See Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 686 (7th

---

[5] The statute of repose does contain an exception for "damages caused by a latent disease." Wis. Stat. § 895.047(5). But Plaintiffs have failed to plead that the personal injuries at issue here— mainly high cholesterol—were latent. The Wisconsin Supreme Court has discussed latent injuries as those that exist or occur at a particular time but do not "manifest[ ]" until a later date. *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 335 N.W.2d 578, 580–81 (1983) (discussing a case where injury from surgery that left four-year-old sterile was not discovered for 20 years); *see Pollack v. Rsrv. Life Ins. Co.*, 15 Wis. 2d 336, 112 N.W.2d 907, 910 (1962). There are no allegations in the Complaint that those Plaintiffs who seek recovery for alleged personal injuries were injured on some date before their alleged injuries manifested.

Cir. 2012) (the "addition of 'upon information and belief'" to the bare recital "of the statutory language" is "insufficient") (citation omitted).[6]

### B. The Design-Defect Claim Should Be Dismissed Because The Complaint Fails To Allege A Reasonable Alternative Design.

Plaintiffs' design-defect claim (and any design-defect aspect of their negligence claim) should be dismissed for the additional reason that Plaintiffs have failed to allege that "the foreseeable risks of harm posed by the product could have been reduced or avoided by the adoption of a *reasonable alternative design* by the manufacturer." Wis. Stat. § 895.047(1)(a) (emphasis added); *see Below v. Yokohama Tire Corp.*, 2017 WL 679153, at *3 (W.D. Wis. Feb. 21, 2017) (for negligent-design-defect claims, "the reasonableness of a product's design turns essentially on whether the seller could have come up with a less dangerous design") (citation omitted). The alternative design Plaintiffs identify must be both reasonable and "more safe" than the actual design. *Murphy v. Columbus McKinnon Corp.*, 2022 WI 109, ¶ 52, 405 Wis. 2d 157, 982 N.W.2d 898. "Where there are no safer alternatives," a plaintiff is "deprive[d] of her right to recover, even [if] the product is unreasonably dangerous." *Nelson v. Johnson & Johnson*, 428 F. Supp. 3d 1, 5 (E.D. Wis. 2019).

Plaintiffs have not plausibly alleged that 3M could have manufactured a reasonable, safer substitute for PFOS and PFOA in any relevant product. The Complaint states only that "the foreseeable risks of harm posed by Defendants' products could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer." Compl. ¶ 84. That mere recitation of the statutory element does not suffice. *Iqbal*, 556 U.S. at 678. The Complaint does

---

[6] As explained above, the majority of the allegations in the Complaint—and the only allegations supported by any factual detail—are about alleged contamination by, knowledge of, and injury from PFOS and PFOA. *See supra* at 4 n.1. Plaintiffs therefore cannot seek to recover for any potential damages from any other type of PFAS chemical.

not, for example, identify any actual alternatives or attempt to explain which, if any, features of PFOS and PFOA in any relevant product could have been made "more safe" by a different design.

In *Ryan v. Greif, Inc.*, a court dismissed a nearly identical claim brought against 3M. 2023 WL 5979711, at *30 (D. Mass. Sept. 1, 2023), report and recommendation adopted in relevant part, -- F. Supp. 3d --, 2023 WL 8828220, at *10 (D. Mass. Dec. 21, 2023). There, landowners alleged that chemicals produced by 3M contaminated their wells and brought a design-defect claim, alleging that 3M "should have known about reasonably safer and feasible alternatives to PFAS." *Id.* The court held that plaintiffs "plainly fail[ed] to allege the existence of any alternative design"; if that conclusory allegation were sufficient, the court reasoned, "it would render the pleading requirement a nullity" because "any plaintiff" could make the same barebones allegation. *Id.* This Court should reach the same conclusion here.

### C. The Failure-To-Warn Claim Should Be Dismissed For The Additional Reason That A Warning Would Have Been Futile.

Plaintiffs' failure-to-warn claim (and any failure-to-warn aspect of their negligence claim) also fails because Plaintiffs do not allege cause-in-fact—to the contrary, the Complaint makes clear that the alleged lack of a warning made no difference to Ahlstrom and Wausau Paper.

A plaintiff can prevail on a failure-to-warn claim only if he alleges that the "foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a). To demonstrate that "reasonable instructions" could have reduced the risks of harm posed by a product, a plaintiff who brings a claim against a manufacturer for failing to warn a third party of the dangers of a product must show that the third party "would have heeded a different warning." *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 754 (7th Cir. 2018) (citation omitted)

15

(applying Wisconsin law).  In other words, the allegations "must support a reasonable inference that the existence of an adequate warning may have prevented the injury."  *Kurer v. Parke, Davis & Co.*, 2004 WI App 74, ¶ 25, 272 Wis. 2d 390, 679 N.W.2d 867.  "[W]arnings are not required when the danger, or potentiality of danger, is generally known and recognized."  *Horst*, 769 N.W.2d at 543 (internal quotation marks omitted).

Plaintiffs' failure-to-warn claim should be dismissed because the Complaint does not sufficiently allege that an adequate warning by 3M would have stopped Ahlstrom and Wausau Paper from allegedly improperly disposing of PFAS on nearby farmland.  Although Plaintiffs make the conclusory allegation that the "harm posed by [3M's and the John Doe Defendants'] PFAS products could have been reduced or avoided by the provision of reasonable instructions or warnings," Compl. ¶ 103, that assertion is contradicted by more specific allegations in the Complaint.  In particular, Plaintiffs allege that Ahlstrom and Wausau Paper "knew," even without an allegedly adequate warning, "that disposal of PFAS-containing waste on farmlands could lead to groundwater contamination."  *Id.* ¶ 59.  Plaintiffs further allege that despite the purported lack of a warning from 3M, Ahlstrom and Wausau Paper "knew that it was substantially certain" that "[s]preading solids and waste containing high levels of PFOA, PFOS, and other PFAS on farmland near residential drinking water sources" would "threaten public health and cause extensive contamination of property and drinking water supplies."  *Id.* ¶¶ 146, 150.  In sum, Plaintiffs allege that Ahlstrom and Wausau Paper already knew that disposing of sludge containing PFOS or PFOA on open farmland was dangerous.

Accordingly, Plaintiffs' conclusory allegation that a warning from 3M would have changed matters is not plausible.  Because the Complaint makes clear that any warning from 3M would have been superfluous, 3M's alleged failure to warn was not the cause-in-fact of Plaintiffs' alleged

16

injuries. *See Zimmer*, 884 F.3d at 753–54; *Kurer*, 679 N.W.2d at 880; *see also Crook v. Kaneb Pipe Line Operating P'ship, L.P.*, 231 F.3d 1098, 1102 (8th Cir. 2000) ("no warnings of any kind are required in these circumstances because the defendants already knew or reasonably should have known of the dangers").

## IV.     The Trespass And Private-Nuisance Claims Against 3M Fail For Additional Reasons.

Plaintiffs' trespass and private-nuisance claims against 3M also fail for other, independent reasons. Both claims should be dismissed because the Complaint fails to allege that 3M had the requisite intent and to the extent that Plaintiffs seek to recover for alleged groundwater contamination. The trespass claim also fails because the Complaint does not allege that 3M had control over the PFOS or PFOA that allegedly entered Plaintiffs' properties.

*Intent.* There is no allegation that 3M intended for Ahlstrom and Wausau Paper to dump waste containing PFOS and PFOA onto open farmland and for PFOS and PFOA thereby to leach onto Plaintiffs' properties. Because intent is an element of both trespass and private-nuisance claims (at least under the traditional intentional-tort theory of those claims), those claims therefore fail.

To state a claim for intentional trespass, a plaintiff must allege that the defendant "intentionally . . . cause[d] a thing" to enter the plaintiff's land. *Grygiel*, 787 N.W.2d at 18 (citation omitted). The plaintiff must allege "not merely an intention to do the act which brings about the injury, but rather an intent to act with reference to" the property in question. *Wis. Power & Light Co. v. Columbia Cnty.*, 3 Wis. 2d 1, 87 N.W.2d 279, 282 (1958). The dispositive inquiry is whether the defendant committed the supposedly tortious act "for the purpose of interfering with" the plaintiff's property rights. *Milwaukee Metro.*, 691 N.W.2d at 673. Likewise for nuisance: A

17

defendant can be liable for an intentional private nuisance only if it causes an invasion that is "intentional and unreasonable." *Id.* at 671.[7]

The intentional-tort theory of Plaintiffs' trespass and nuisance claims fails because the Complaint does not allege that 3M intended for PFOS and PFOA disposed of in Ahlstrom and Wausau Paper's waste to contaminate Plaintiffs' properties. At most, Plaintiffs make conclusory assertions that 3M knew that PFOS and PFOA could contaminate water supplies and cause serious health risks when others dispose of those products in "foreseeable and intended" ways. *E.g.*, Compl. ¶ 87(d). But they do not adequately allege that 3M knew or should have known that Ahlstrom and Wausau Paper would allegedly dispose of PFOS and PFOA by dumping it onto open farmland, let alone that 3M *intended* to pollute Plaintiffs' wells or otherwise interfere with Plaintiffs' enjoyment of their properties. As noted, the Complaint makes clear that Ahlstrom and Wausau Paper's choice of land-application disposal, which is the only alleged source of harm in this case, was allegedly "inappropriate" and unusual—not something that 3M intended or had any role in whatsoever. *Id.* ¶¶ 144, 146.

Applying Indiana law, the Seventh Circuit dismissed a materially identical trespass claim for lack of intent. *See City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611 (7th Cir. 1989). Monsanto, a chemical manufacturer, sold PCBs to Westinghouse, which used the

---

[7] In addition, trespass and private-nuisance claims "can be actionable" under a negligence theory. *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 476 N.W.2d 593, 608 (Ct. App. 1991) (trespass); *Milwaukee Metro.*, 691 N.W.2d at 671 (nuisance). Plaintiffs have alleged both intentional and negligence theories of their trespass and private-nuisance claims against 3M. Compl. ¶¶ 127, 135. The negligence theories of these claims fail for the same reasons that Plaintiffs' negligence claim fails. *See supra* Parts I & II; *see also Milwaukee Metro.*, 691 N.W.2d at 680 ("a claim of nuisance based on negligence" requires the plaintiff to plead and prove, among other things, that the "defendant's conduct is otherwise actionable under the rules governing liability for negligent conduct"); *Wis. Power & Light Co. v. Columbia Cnty.*, 18 Wis. 2d 39, 117 N.W.2d 597, 601 (1962) ("The defendant not having been negligent, its conduct cannot constitute a negligent trespass.").

chemicals at its factory. After the factory's chemical-contaminated waste entered city sewers, the city sued Monsanto for trespass. *Id.* at 613–14. The Seventh Circuit rejected the claim. "When Monsanto sold the PCBs to Westinghouse, Monsanto did not know that Westinghouse would deposit harmful waste on City property, and Monsanto certainly did not command, request, or coerce Westinghouse into doing so. Monsanto thus lacked any kind of trespassory intent." *Id.* at 615; *see also United States v. Union Corp.*, 277 F. Supp. 2d 478, 495–96 (E.D. Pa. 2003) (dismissing a trespass claim against Monsanto under similar circumstances); *Commonwealth v. Monsanto Co.*, 269 A.3d 623, 654–55 (Pa. Commw. Ct. 2021) (same); *In re Paulsboro Derailment Cases*, 2013 WL 5530046, at *6–7 (D.N.J. Oct. 4, 2013) (dismissing a trespass claim where the "entry of chemicals" onto plaintiffs' land was not intentional). The Court should reach the same outcome here.

**Ownership.** Plaintiffs' trespass and nuisance claims also fail to the extent Plaintiffs seek recovery for groundwater contamination. Compl. ¶ 134; *see Munger v. Seehafer*, 2016 WI App 89, ¶ 38, 372 Wis. 2d 749, 890 N.W.2d 22 ("the interest in a trespass action is the exclusive possession of land") (citation omitted); *City of Milwaukee v. NL Indus.*, 2008 WI App 181, ¶ 43, 315 Wis. 2d 443, 762 N.W.2d 757 ("*private nuisance* . . . requires an interference with a person's use or enjoyment of private property"). Plaintiffs do not own the groundwater. On the contrary, "[g]roundwater contamination is damage to public property rather than property owned by an individual." *Robert E. Lee & Assocs. v. Peters*, 206 Wis. 2d 509, 557 N.W.2d 457, 462 (Ct. App. 1996). Plaintiffs therefore cannot recover for any alleged harm to groundwater under their trespass and private-nuisance claims.

**Control.** A defendant can be held liable in trespass only if it controlled the thing that invaded the plaintiff's property at the time of the trespass. Although Wisconsin courts do not

19

appear to have addressed the issue directly, the "general consensus" is that "ownership or control of the intruding instrumentality is dispositive of an actor's trespass liability." *Parks Hiway Enters., LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 664 (Alaska 2000); *see, e.g.*, *City of Bloomington*, 891 F.2d at 615; *In re Dicamba Herbicides Litig.*, 359 F. Supp. 3d 711, 727–28 (E.D. Mo. 2019); *Town of Hooksett Sch. Dist. v. W.R. Grace & Co.*, 617 F. Supp. 126, 133 (D.N.H. 1984). So manufacturers are not liable in trespass "for injuries caused by their product" after sale. *Parks Hiway*, 995 P.2d at 664.

In *Parks Hiway*, for example, a plaintiff's "groundwater was contaminated by fuel leaking from an adjacent service station." *Id.* at 659. The plaintiff sued the service station's gas supplier for trespass, and the Alaska Supreme Court affirmed dismissal because the supplier's "ownership and control over the fuel terminated upon the product's transfer into [the station's] tanks." *Id.* at 664. Likewise, in *Jordan v. Southern Wood Piedmont Co.*, 805 F. Supp. 1575 (S.D. Ga. 1992), landowners' properties were polluted after a nearby wood-treatment facility released chemicals. The plaintiffs sued the chemical manufacturer for trespass, and the court dismissed the claim. The alleged trespass "relate[d] to the handling and disposal of chemicals," but the manufacturer's "involvement with the . . . facility [was] not enough to associate it with [the] handling and disposal activities so as to render it liable." *Id.* at 1582.

3M did not control the PFOS or PFOA (or the waste from which they allegedly leached) when they allegedly contaminated Plaintiffs' properties. Any alleged invasion occurred here after (1) 3M sold PFOS and PFOA (or products containing them) to Ahlstrom and Wausau Paper, (2) Ahlstrom and Wausau Paper used those chemicals in their operations, generating certain waste, (3) Ahlstrom and Wausau Paper allegedly improperly disposed of the waste on open farmland, and (4) PFOS and PFOA allegedly leached onto Plaintiffs' properties. Compl. ¶¶ 39, 135. Indeed,

Plaintiffs concede that 3M had no ownership or control of the PFOS or PFOA at issue. *See id.* ¶ 88 (the products "left the control of the manufacturer" when they were "sold"). 3M therefore cannot be liable for any trespass.

## CONCLUSION

For these reasons, this Court should dismiss all claims against 3M.

Dated:  March 22, 2024                                   Respectfully Submitted,

/s/ Lauren R. Goldman

Lauren R. Goldman (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166
P: (212) 351-4000

Zachary Tyree (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue NW
Washington, DC 20036
P: (202) 955-8500

Christopher B. Essig (*pro hac vice*)
Eric White (*pro hac vice*)
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
P: (312) 558-5600

Derek J. Waterstreet, SBN 1090730
VON BRIESEN & ROPER, S.C.
411 East Wisconsin Avenue, Suite 1000
Milwaukee, WI 53202
P: (414) 287-1519

*Counsel for Defendant 3M Company*