**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

LUCAS ROUGEAU, *et al.*,

       Plaintiffs,

vs.

                             Case No. 3:23-CV-546

3M COMPANY, *et al.*,

       Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
AHLSTROM RHINELANDER LLC, AHLSTROM NA SPECIALTY SOLUTIONS LLC,
AND AHLSTROM NA SPECIALTY SOLUTIONS HOLDINGS INC.'S
PARTIAL MOTION TO DISMISS**

---

Pursuant to Federal Rule of Civil Procedure 12, Defendants Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions Holdings Inc., and Ahlstrom NA Specialty Solutions LLC (collectively, "Ahlstrom") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Complaint's ("Complaint") (Docket No. 29) strict liability claim for purportedly abnormally dangerous activity (Count Six), and to dismiss Defendant Ahlstrom NA Specialty Solutions Holdings Inc. for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

Plaintiffs, forty-three residents of Rhinelander in Oneida County, allege that their well water contains widely used per- and polyfluoroalkyl substances ("PFAS"), including in particular perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), from land application of waste from the Rhinelander Paper Mill ("Mill") on farmland throughout Oneida County.  Am. Compl. ¶¶ 2, 72.  Plaintiffs assert various common law claims against the alleged current and former owners and/or operators of the Mill, including Ahlstrom and the Wausau

Paper Defendants,[1] and against Defendant 3M, which allegedly sold and supplied PFAS chemicals to the Mill. *Id.* ¶¶ 2–3. Established in approximately 1903, the Rhinelander Paper Mill was acquired by Ahlstrom in 2018, more than 15 years after Plaintiffs allege that 3M phased out production of PFOS, *id.* ¶ 143, and several years after the 2015 PFOA phase-out in the United States, *see* Ex. 1,[2] Wisconsin Department of Natural Resources ("WDNR"), *Interim Strategy for Land Application of Biosolids and Industrial Sludges Containing PFAS* ("Interim Strategy") § 2.3 (Mar. 1, 2024).[3]

As the Complaint acknowledges, PFOA and PFOS are synthetic chemicals developed decades ago, before the 1970s, *see* Am. Compl. ¶¶ 43, 51, and "have been found <u>globally</u> in water, soil, and air," *id.* ¶ 44 (emphasis added), due to the substances' widespread use in various consumer, commercial and industrial products for their water-repellant and grease-, oil- and stain-resistant properties. Among other things, PFAS chemicals have been used to make nonstick cookware, water-repellent clothing, and stain resistant fabrics and carpets. *See* Ex. 2, ATSDR, *Per- and Polyfluoroalkyl Substances and Your Health* (website cited in Am. Compl. ¶ 44)[4]; *see also* Ex. 1, WDNR, *Interim Strategy* § 2.3. Indeed, the WDNR has stated that "[w]idespread use of PFAS in consumer products and manufacturing/industrial processes" and the chemical's resistance to degradation "have resulted in the presence of PFAS in municipal wastewater and biosolids." Ex. 1, WDNR, *Interim Strategy* § 2.4.

---

[1] For ease of reference, the term "Wausau Paper Defendants" refers collectively in this motion to Wausau Paper Corp., Wausau Paper Mills, LLC, Essity North America Inc., and Essity Aktiebolag.

[2] Citations in this Motion to Exhibits refer to the Exhibits attached to the March 22, 2024 Declaration of Elissa J. Preheim.

[3] Available at https://dnr.wisconsin.gov/sites/default/files/topic/PFAS/PFAS_BiosolidsInterim Strategy.pdf (last visited Mar. 19, 2024).

[4] Available at https://www.atsdr.cdc.gov/pfas/health-effects/overview.html (last visited Mar. 19, 2024).

Under WDNR's Wisconsin Pollutant Discharge Elimination System ("WPDES") permit program, WDNR issues permits for the application of residual papermaking waste, sometimes known as "sludge" or "fibercake," as a soil conditioner on agricultural land—a practice known as "land application" or "landspreading." The WPDES program requires the submission of "Annual Land Application Reports," Am. Compl. ¶ 58, and regulates the types of fibercake and locations permissible under the program. Only fibercake that has "been shown to have beneficial properties as a soil conditioner or fertilizer and not have detrimental effects on the soil, crops or groundwater may be spread on the land." Wis. Admin. Code ch. NR 214.18. The law also designates several criteria for the locations where land applying may occur, including that it may not occur within 500 feet of any residence (or, when affected owners and occupants consent, within 200 feet of any residence), within 1000 feet of a public water supply well, or within 250 feet of any other potable water source; and that WDNR must approve each land application site. Wis. Admin. Code ch. NR 214.18(2)(a)–(e).

The WDNR issued in 2021, and revised in 2024, interim guidance for the land application in Wisconsin of biosolids and industrial sludges containing PFAS, setting forth certain recommended actions if the sum of PFOA and PFOS concentrations in such materials exceeds certain thresholds. If the sum of PFOA and PFOS is "below 20 µg/kg," the interim guidance instructs to "land apply per normal approach," consistent with state regulations. Ex. 1, WDNR, *Interim Strategy* § 5.4.

WDNR recently announced that its sampling of residual solids removed from the Rhinelander Paper Mill's wastewater treatment process showed PFOS levels "significantly below the median and average" for municipal biosolids. *See* Ex. 3, The Northwoods River News, *DNR: PFOS levels in Ahlstrom sludge "significantly below the median and average"*

3

(Sept. 19, 2023).[5]  Indeed, the sum of the reported, trace levels of PFOA and PFOS was well below the 20 µg/kg (or 20 ng/g) level at which WDNR's interim guidance for land application of biosolids or industrial sludges containing PFAS recommends "land apply[ing] per normal approach."  *See* Ex. 1, WDNR, *Interim Strategy* § 5.4; Ex. 4, WDNR, Ahlstrom Laboratory Report (reporting PFOA at 0.342 ng/g and PFOS at 1.67 ng/g).[6]

In the Complaint, among negligence and other common law claims, Plaintiffs claim that land application of the Mill's papermaking waste is an "abnormally dangerous activity" giving rise to strict liability against Ahlstrom.  Am. Compl. ¶¶ 141–51 (Count Six).  This claim fails as a matter of law.

Plaintiffs offer only a conclusory recitation of the factors necessary to support a strict liability claim under Wisconsin law.  The Complaint does not contain factual allegations to show that land application of papermaking fibercake qualifies as an abnormally dangerous or ultrahazardous activity, as required to support a strict liability claim under Wisconsin law.  To the contrary, based on the Restatement factors adopted by the Wisconsin courts, there is a critical difference between Ahlstrom's alleged conduct and the limited types of activities that courts have found abnormally dangerous or ultrahazardous to justify imposition of liability without proof of fault.  For example, the Complaint does not (and cannot) allege facts demonstrating that land application of papermaking fibercake is an uncommon activity in Wisconsin; to the contrary, state regulations and facts alleged in the Complaint show that land application is regulated and permitted by the State.  Nor does the Complaint allege facts showing that land

---

[5] Available at https://rivernewsonline.com/news/2023/sep/19/dnr-pfos-levels-in-ahlstrom-sludge-significantly-below-the-median-and-average/ (last visited Mar. 19, 2024).
[6] Available at http://dnr.wisconsin.gov/sites/default/files/topic/PFAS/stella/AhlstromMunksjo_PFASSludgeResults.pdf (last visited Mar. 19, 2024).

application presents risks that cannot be eliminated through reasonable care, as required under the narrow doctrine of abnormally dangerous activity reserved for inherently dangerous activities such as the use of explosives, blasting, and pile driving.  The Complaint's Sixth Cause of Action should be dismissed.

In addition, because the Complaint alleges no facts showing personal jurisdiction against Defendant Ahlstrom NA Specialty Solutions Holdings Inc., the Complaint should be dismissed in its entirety against it.

### STATEMENT OF ALLEGED FACTS[7]

Plaintiffs allege that the PFAS detected in their well water is the result of "the land application of PFAS-containing waste from the Rhinelander Paper Mill."  Am. Compl. ¶ 72. They assert claims against Ahlstrom as the current owner and operator of the Mill; Wausau Paper as the prior owner and operator of the Mill; and 3M, which allegedly sold and supplied PFAS chemicals and PFAS products to the Mill.  *Id.* ¶¶ 2–3, 33.

The Rhinelander Paper Mill was established in approximately 1903 and was acquired by Expera Specialty Solutions, LLC ("Expera"), Ahlstrom's alleged "successors in interest," in August 2013.  *Id.* ¶¶ 36, 57.  In approximately 2002, more than ten years before Expera acquired the Rhinelander Paper Mill, 3M phased out the production of PFOS.  *Id.* ¶ 143.  The Complaint alleges that Ahlstrom plans to completely phase out PFAS use by the end of 2023.  *Id.*  The Complaint does not (and cannot) allege that Ahlstrom used PFOA or PFOS at the Mill.

PFOA and PFOS fall within a class of man-made chemicals known as PFAS, Am. Compl. ¶¶ 42–43, that were developed before the 1970s, *id.* ¶ 51, and were used and present in

---

[7] The facts taken from allegations in the Complaint are assumed to be true solely for the purpose of this motion to dismiss.  Defendants do not waive their right to dispute any factual allegations in the Complaint.

various products, *id.* ¶ 56.  Because of their longstanding and widespread use, PFOA and PFOS "have been found globally in water, soil, and air," as well as in human blood serum.  *Id.* ¶ 44.

Plaintiffs allege that over decades and until the present, Wausau Paper, Ahlstrom and its predecessors have applied to farmland in the Rhinelander area "millions of pounds" of waste (i.e., fibercake) from the Rhinelander Paper Mill's papermaking process, as reflected in "Annual Land Application Reports," *id.* ¶ 58, submitted to the State.  Plaintiffs allege "[u]pon information and belief" that this fibercake contained "high levels" of PFOA, PFOS, and other PFAS, *id.* ¶ 2, and that Wausau Paper, Ahlstrom and its predecessors knew or should have known that applying PFAS-containing material on farmlands could lead to groundwater contamination.  *Id.* ¶ 59.  The Complaint alleges that the risks of PFAS Products[8] and PFAS "are well documented," and that land application of waste containing PFAS is hazardous and presents risks to the environment and human health.  *Id.* ¶¶ 142–43.  The Complaint does not (and cannot) allege that land application of papermaking fibercake is prohibited by or unregulated under state law, or even that the Mill engaged in land application of fibercake without a permit issued by the State.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Plaintiffs' Complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must establish that its claims have "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915–17 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

---

[8] The Complaint does not define "PFAS Products."

statements, do not suffice," and the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678; *see also Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. 2015) ("[A] formulaic recitation of the elements of a cause of action will not do." (quoting *Iqbal*)). Instead, a plaintiff must plead "specific allegations that, if true, make plaintiff's claim for relief more than speculative." *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 991–92 (W.D. Wis. 2010); *see also, e.g.*, *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 639–40 (N.D. Ohio 2014) (granting motion to dismiss strict liability claim because plaintiffs failed to allege why defendant's manufacturing process was an ultrahazardous activity).

Further, to survive a Rule 12(b)(2) motion to dismiss, Plaintiff "has the burden of establishing personal jurisdiction, *see Estate of Winnig v. Bank of Am., N.A.*, No. 18-cv-816-wmc, 2019 WL 1676012, at *1 (W.D. Wis. Apr. 17, 2019) (citing *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010)), and must "make a prima facie showing that personal jurisdiction exists," *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 664 (W.D. Wis. 1998).

## ARGUMENT

### I.    The Complaint Fails to State a Strict Liability Claim for Abnormally Dangerous Activity (Count Six).

Plaintiffs' strict liability claim against Ahlstrom fails as a matter of law because the Complaint fails to plausibly allege that land application of papermaking fibercake meets the high bar to qualify as an abnormally dangerous activity under Wisconsin law. As an initial matter, the doctrine applies only when an *activity* itself is abnormally dangerous. Under Wisconsin law, the fact that an activity may involve potentially dangerous *materials* does not suffice. Further, based on the Restatement factors adopted by Wisconsin courts with respect to common law claims for strict liability, there is a critical difference between Ahlstrom's alleged land application activity and the limited types of activities courts have found abnormally dangerous or ultrahazardous to

justify imposition of liability without proof of fault.  Plaintiffs offer only a conclusory recitation of the factors necessary to support a strict liability claim under Wisconsin law, including conclusory allegations contradicted by the State's land application program and regulations. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to avoid dismissal.  *Iqbal*, 556 U.S. at 678; *see also Fagan v. Superior Ref. Co.*, 471 F. Supp. 3d 888, 894 (W.D. Wis. 2020) (Conley, J.) (dismissing strict liability claim for ultrahazardous activity where plaintiffs "provided only a conclusory statement of law" and "failed to *plead facts* to support that conclusion") (emphasis in original).

A.    Strict Liability for Abnormally Dangerous Activity Applies Narrowly Under Wisconsin Law.

Under Wisconsin law, the doctrine of strict liability for harm caused by "abnormally dangerous activity" is narrow.  *See Grube v. Daun*, 570 N.W.2d 851, 857 (Wis. 1997) (observing that the doctrine is "reserved for selected *uncommon and extraordinarily dangerous* activities for which negligence is an inadequate deterrent or remedy" (emphasis added) (internal quotation marks and citation omitted)); *Harrington v. Simms*, No. 21-cv-1182-SCD, 2023 WL 4034422, at *4 (E.D. Wis. June 15, 2023) (acknowledging the lack of case law "in which a Wisconsin court has determined that an activity *was* an abnormally dangerous one as a matter of law" (emphasis in original)).  Courts "apply the doctrine cautiously," *Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 521 n.7 (7th Cir. 1997) (Coffey, J., concurring in part and dissenting in part), recognizing that its application should not swallow negligence as the "baseline common law regime of tort liability," *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir. 1990) (Posner, J.); *see also Fagan*, 471 F. Supp. 3d at 894; *Grube*, 570 N.W.2d at 857.

When deciding whether an activity is abnormally dangerous, Wisconsin courts apply the multi-factor test under the Second Restatement of Torts.  *See Grube*, 570 N.W.2d at 856–57.

8

The factors include the "[a] Existence of a high degree of risk of some harm to the person, land, or chattels of others"; the "[b] Likelihood that the harm that results from it will be great;" the "[c] Inability to eliminate the risk by the exercise of reasonable care"; the "[d] Extent to which the activity is not a matter of common usage"; the "[e] Inappropriateness of the activity to the place where it is carried on"; and the "[f] Extent to which its value to the community is outweighed by its dangerous attributes."  Restatement (Second) of Torts § 520 (1977).  Whether an activity qualifies as abnormally dangerous is a question for the Court to decide as a matter of law. Restatement (Second) of Torts § 520 cmt. l.

Because strict liability is only imposed if the negligence regime is not "adequate to remedy and deter" dangerous accidents, *Ind. Harbor Belt*, 916 F.2d at 1777, 1179, strict liability for abnormally dangerous activities generally has been reserved for activities such as storage of explosives, pile driving, blasting, and drilling oil wells or operating refineries in densely populated areas, *see* Restatement (Second) of Torts § 520, reporter's note.

B.    Strict Liability for Abnormally Dangerous Activity Applies Under Wisconsin Law to Activities, and Not to Materials.

Allegations regarding allegedly dangerous *materials* cannot state a strict liability claim for abnormally dangerous *activity* under Wisconsin law.  Consistent with its narrow scope under Wisconsin law, a strict liability claim for abnormally dangerous activity cannot be premised on the alleged "resulting harm" or allegedly dangerous *materials*, but rather only on the *activity* itself.  For example, the Wisconsin Supreme Court in *Grube* rejected the plaintiffs' argument that leakage and contamination from an underground storage tank was an abnormally dangerous activity.  *See* 570 N.W.2d at 857.  The Court distinguished the activity—the use of an underground storage tank—from the alleged resulting harm of leakage and contamination, and

concluded that using an underground storage tank on a farm in the 1970s was not abnormally dangerous. *Id.* (affirming trial court's dismissal of strict liability claim).

As Judge Posner underscored, "abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities." *See Ind. Harbor Belt*, 916 F.2d at 1181. Thus, in *G.J. Leasing Co. v. Union Elec. Co.*, 854 F. Supp. 539, 568–69 (S.D. Ill. 1994), the court declined to hold the seller of a powerplant strictly liable for harm allegedly caused by the hazardous substances on the property because selling property, even when it contains hazardous substances, is not an abnormally dangerous activity. The court admonished that, "[i]f the rule were otherwise, virtually any commercial activity involving substances which are dangerous in the abstract automatically would be deemed as abnormally dangerous," which would be an "intolerable" result. *See id.* (quoting *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615–17 (7th Cir. 1989)).

Here, contrary to Wisconsin law, Plaintiffs' entire theory of liability in this case rests on the *materials* allegedly contained in the papermaking fibercake at issue—PFOS and PFOA—*not on the premise that the activity of land application is inherently dangerous.* The Complaint does not (and cannot) allege that the *activity* of land application itself is abnormally dangerous. Rather, Plaintiffs' strict liability claim (Am. Compl. ¶¶ 141–51) is premised on the allegedly dangerous *materials* of PFOA, PFOS, and certain other PFAS; Plaintiffs claim that land application of any fibercake or biosolids containing these materials is therefore abnormally dangerous. *See* Am. Compl. ¶ 142 (alleging in the opening sentence of Count Six that "[t]he dangers and hazards of PFAS Products and PFAS are well documented"); *see also id.* at 15 (Section A allegations entitled "The PFAS Contaminants at Issue: PFOA and PFOS, Among Others"); *id.* at 17 (Section B allegations entitled "Defendants' Knowledge and Concealment of

PFOA/PFOS Hazards"); *id.* at 21 (Section C allegations entitled "The Impact of PFOA and PFOS on Plaintiffs and Class Members").

Just two months ago, a court dismissed a strict liability claim for abnormally dangerous activity premised on the disposal and land application of papermaking waste that contained PFAS. *See* Ex. 5, *Saunders v. Sappi N. Am., Inc.*, No. BCD-CIV-2023-00033 (Me. Bus. & Consumer Ct. Jan. 2, 2024). Like the Amended Complaint here, the "gist of the Complaint" in *Saunders* was "that PFAS is dangerous, but [PFAS] is a substance, not an activity." *Id.* at 13. Because the *Saunders* plaintiffs had not alleged that papermaking "separate and apart from the presence of PFAS" was a dangerous activity, the court dismissed their strict liability claim. *Id.* at 12–13 (applying Restatement (Second) Torts).

Further, courts routinely hold that the disposal or application of even allegedly hazardous substances is not an abnormally dangerous activity giving rise to strict liability. *See, e.g.*, *Bennett v. Larsen Co.*, 348 N.W.2d 540 (Wis. 1984); *Grube*, 570 N.W.2d 851; *Ind. Harbor Belt*, 916 F.2d at 1181 (reversing grant of summary judgment to plaintiff on abnormally dangerous activities strict liability claim); *Winley v. Int'l Paper Co.*, No. 2:09-2030-CWH, 2012 WL 13047989, at *11 (D.S.C. Oct. 23, 2012) (granting motion to dismiss abnormally dangerous activity strict liability claim for paper mill's alleged release of hazardous substances); *Read v. Corning Inc.*, 351 F. Supp. 3d 342, 358 (W.D.N.Y. 2018) (granting motion to dismiss strict liability for disposal of "substances that were outwardly ordinary" but later found to contain hazardous chemicals); *Outlet City, Inc. v. W. Chem. Prods., Inc.*, 60 F. App'x. 922 (3d Cir. 2003) (finding use and storage of toxic chemicals was not an abnormally dangerous activity); *Modern Holdings, LLC v. Corning Inc.*, Civ. No. 13-405-GFVT, 2015 WL 1481457, at *9 (E.D. Ky. Mar. 31, 2015) (finding use, treatment, and disposal of hazardous substances was not an

abnormally dangerous activity); *Adkisson v. Jacobs Eng'g Group, Inc.*, 342 F. Supp. 3d 791, 809 & n.16 (E.D. Tenn. 2018) (noting "courts appear to agree that hazardous waste disposal or removal is not ultrahazardous or abnormally dangerous").

Especially given Plaintiffs' allegations that PFOA and PFOS "have been found globally in water, soil, and air," Am. Compl. ¶ 44, due to their widespread use, Plaintiffs' assertion of strict liability for the alleged presence of these materials in land-applied papermaking fibercake runs counter to the narrow scope of strict liability claims for allegedly dangerous activity and would create precisely the "intolerable" result in which "virtually any commercial activity involving [PFAS] substances which are [allegedly] dangerous in the abstract automatically would be deemed as abnormally dangerous." *G.J. Leasing*, 854 F. Supp. at 568–69.

C.    The Complaint Fails to Plausibly Allege that Land Application of Fibercake from Papermaking Qualifies as an Abnormally Dangerous Activity.

The activity alleged in Plaintiffs' Complaint of land applying papermaking fibercake fails to meet the high bar required to qualify as an activity so "abnormally dangerous" as to justify strict liability without proof of fault under Wisconsin law.  Unlike the kinds of activities that courts have found to be abnormally dangerous, such as storing explosives, pile driving or blasting, Plaintiffs fail to allege facts showing any unusual danger from the common activity of land applying papermaking fibercake as soil conditioner for farmland.  *See* Restatement (Second) of Torts § 520.  Instead, the Complaint does little more than recite the Restatement factors and assert in conclusory fashion that they support a strict liability claim.  *See Wesbrook*, 90 F. Supp. 3d at 806; *see also Iqbal*, 556 U.S. at 678 (holding that "[t]hreadbare recitals" of the standards "supported by mere conclusory statements" do not suffice to state a claim); *Brown*, 996 F. Supp. 2d at 639–40 (granting motion to dismiss strict liability claim because plaintiffs failed to allege why defendant's manufacturing process was an ultrahazardous activity).  Furthermore, the

12

Complaint's allegations ignore Wisconsin's regulations regarding land application, which further undermine Plaintiffs' conclusory allegations.

### 1. The Complaint Makes Clear that Land Application Is a Common Activity.

Although the Complaint includes a conclusory assertion that Ahlstrom's alleged activity "is not a common practice, and is not in common usage," Am. Compl. ¶ 146, that conclusory assertion is contradicted by factual allegations in the Complaint showing that land application of papermaking waste is a commonplace activity for which Wausau Paper and Ahlstrom and its predecessors submitted "Annual Land Application Reports" to WDNR, *id*. ¶ 58 ("As reflected in Annual Land Application Reports, Ahlstrom and Wausau Paper spread millions of pounds of this waste sludge over thousands of acres of farmland."). Annual Land Application Reports, which are submitted to maintain a Wisconsin Pollutant Discharge Elimination System ("WPDES") Permit, are due to the WDNR following each year in which biosolids or sludge is land-applied, and the reporting is mandatory under state environmental laws. *See, e.g.*, Wis. Admin. Code chs. NR 113.11, 214.[9]

This Court may take judicial notice of the fact that the WDNR has issued guidance entitled "Interim Strategy for Land Application of Biosolids and Industrial Sludges Containing PFAS."[10] *See* Ex. 1, WDNR, *Interim Strategy*. Notably, the WDNR guidance states that "*[c]ommonly*, industrial sludges permitted to be landspread include . . . pulp and papermill sludges . . .." *Id.* § 2.2 (emphasis added). That the State of Wisconsin has issued guidance for

---

[9] *See* WDNR, Help With Online Monitoring Report Forms: Annual Land Application Report (3400-55), at https://dnr.wisconsin.gov/topic/Wastewater/eReporting.html (last visited Mar. 20, 2024); WNDR, Lamp 52/55 e-Reporting Instructions: Annual Land Application Report (3400-055), at https://dnr.wisconsin.gov/sites/default/files/topic/Wastewater/3400-055instructions.pdf (last visited Mar. 20, 2024).

[10] *See, e.g.*, *Menominee Indian Tribe of Wis. v. Thompson*, 161 F.3d 449, 455–56 (7th Cir. 1998) (holding that judicial notice of documents in the public record and reports of administrative bodies is proper).

land application of papermaking fibercake, and requires "Annual Land Application Reports," Am. Compl. ¶ 58, consistent with its oversight of land application activity, refutes Plaintiffs' conclusory allegations that land application is not a common activity and demonstrates that such conclusory pleading is insufficient to maintain a strict liability claim.

2. *The Complaint Fails to Allege Facts That Risks of Land Application Cannot Be Eliminated by Reasonable Care or that They Exceed the Utility of Land Application.*

Plaintiffs' failure to include supporting factual allegations is particularly evident on the "elimination of risk" Restatement factor. Under Wisconsin law, the inability to eliminate the risk by the exercise of reasonable care is the most important factor when deciding if an activity qualifies as abnormally dangerous. *See Harrington*, 2023 WL 4034422, at *5 (citing *Bennett*, 348 N.W.2d 540) (observing that ability to eliminate risk "appears to be the most important factor . . . under Wisconsin law").[11] The Wisconsin Supreme Court has held that activities such as spraying pesticides on agricultural land are <u>not</u> abnormally dangerous activities because the risk of harm from the respective activities could be reduced. *See, e.g.*, *Bennett*, 348 N.W.2d at 553 (holding, in spite of high risk of great harm to honeybees, that spraying pesticides was not abnormally dangerous because the risk of harm could be reduced); *see also Harrington*, 2023 WL 4034422, at *5 (reasoning that defendants could have taken precautions, including obtaining a permit and following label instructions, to minimize risk of lighting fireworks).

Here, Plaintiffs allege only the conclusion, without any supporting facts, that the "risks of land application of PFAS (including through disposal of PFAS-waste on farmland) cannot be acceptably mitigated or eliminated where there is a potential pathway of PFAS to groundwater."

---

[11] This factor reflects the key difference between strict liability and negligence, ensuring that strict liability is not stretched so far that it swallows negligence. *Ind. Harbor Belt*, 916 F.2d at 1181.

Am. Compl. ¶ 145.  This type of conclusory pleading does not suffice to state a claim.  *See Wesbrook*, 90 F. Supp. 3d at 806; *see also Brown*, 996 F. Supp. 2d at 639–40.  Moreover, courts routinely find that the existence of a regulatory scheme that permits an allegedly abnormally dangerous activity—like the Wisconsin regulations regarding land application—is evidence that the risk can be eliminated by reasonable care.  *See Ind. Harbor Belt*, 916 F.2d at 1183 (holding regulations were "relevant to showing that the [activity] in question [was] not abnormally dangerous"); *Bennett*, 348 N.W.2d at 553 (noting that pesticide label directions "are designed to reduce the risk of harm").

Even if the court were to consider the alleged presence of PFAS *material* in the land-applied fibercake, rather than the common *activity* of land application, the WDNR has issued specific, interim guidance for "Land Application of Biosolids and Industrial Sludges **Containing PFAS**."  *See* Ex. 1, WDNR, *Interim Strategy* (emphasis added).  This regulatory guidance and the WDNR permitting program further undermine Plaintiffs' conclusory allegations that the risk of land application of materials containing PFAS cannot be mitigated through the exercise of reasonable care.  *See Ind. Harbor Belt*, 916 F.2d at 1183.

The state regulatory scheme permitting land application of materials "shown to have beneficial properties as a soil conditioner or fertilizer," Wis. Admin. Code ch. NR 214.18(1); *see also* Ex. 1, WDNR, *Interim Strategy* § 2.2 (noting that "pulp and papermill sludges" are among the land-applied materials "applied to provide beneficial use to the soils through nutrient, carbon, and lime additions"), and the regulatory guidance for normal land application of materials containing certain levels PFOA and PFOS, *see id.* § 5.4, also undermine Plaintiffs' conclusory allegations that the purported "risks" of certain PFAS "grossly exceed[s] the[] utility" of land application, Am. Compl. ¶ 143.  *See* Restatement (Second) of Torts § 520(f); *see generally*

15

*Bennett*, 348 N.W.2d at 553 (holding that spraying pesticides on farmland was not an abnormally dangerous activity where the benefit of ensuring healthy crop growth outweighed the "significant degree of harm" to bees that could be caused by spraying pesticides, and the harm could be mitigated by the exercise of reasonable care).

> 3.    The Complaint Fails to Allege Facts Supporting the Remaining Restatement Factors.

The Complaint's allegations regarding the remaining Restatement factors regarding the degree and likelihood of harm from the activity and the propriety of the activity's location are likewise conclusory and improperly premised on the allegedly resulting harm of PFAS *materials*, rather than the common *activity* of land application on agricultural land.  *See generally* Am. Compl. ¶¶ 141–51.  For example, the Complaint baldly alleges that "[l]and application of PFAS-containing products and waste is extremely hazardous and present a high degree of risk," *id.* ¶ 142, and that "[l]and application of PFAS (including through disposal of PFAS-waste on farmland) was inappropriate for any location where there was a potential pathway to groundwater that could be used for domestic purposes." *Id.* ¶ 144.  Both conclusory allegations focus on the presence of PFAS materials in the land-applied fibercake, rather than the activity of land application itself.  Further, the bald allegations ignore (i) the Wisconsin state regulatory guidance regarding "Land Application of Biosolids and Industrial Sludges Containing PFAS"; (ii) the WDNR's permitting program that designates several criteria for the locations where any land applying may occur, including specifying distances from any residence, public water supply well, or other potable water source; and (iii) the requirement that WDNR must approve the land application location.  *See* Ex. 1, WDNR, *Interim Strategy*; Wis. Admin. Code ch. NR 214.18(2)(a)–(c).

16

In short, Plaintiffs' strict liability claim for abnormally dangerous activity based on threadbare and conclusory allegations regarding Ahlstrom's alleged land application activities—and despite the State's permitting program and regulatory guidance for land application of pulp and papermill waste containing PFAS—fails to state a claim pursuant to the rigorous standard for imposing this "narrow" doctrine of strict liability without proof of fault.  *See Wis. Power & Light v. Columbia Cty.*, 87 N.W.2d 279, 284 (Wis. 1958); *see also, e.g.*, *Bennett*, 348 N.W.2d at 553; *Ind. Harbor Belt*, 916 F.2d at 1179, 1182 (applying Restatement Section 520 and reversing grant of motion for summary judgment to plaintiff on abnormally dangerous activities strict liability claim); *Fagan*, 471 F. Supp. 3d at 894–95 (granting motion to dismiss claim of strict liability for ultrahazardous activity brought by plaintiffs injured by explosion at oil refinery).  Indeed, the Complaint seeks to significantly expand this doctrine to encompass the use and handling of any materials alleged to be hazardous, contrary to Wisconsin law holding that spraying pesticides on agricultural fields, disposing of carcinogenic volatile organic compounds ("VOCs") in a landfill, storing gasoline in an underground storage tank, and lighting commercial-grade fireworks are <u>not</u> abnormally dangerous activities.  *See Harrington*, 2023 WL 4034422, at *5 (fireworks); *Grube*, 570 N.W.2d at 856–57 (gasoline in underground storage tank); *Bennett*, 348 N.W.2d at 553 (pesticide application); *Fortier v. Flambeau Plastics Co.*, 476 N.W.2d 593 (Wis. Ct. App. 1991) (VOCs).

## II.    The Complaint Fails to Allege a Basis for Personal Jurisdiction Over Defendant Ahlstrom NA Specialty Solutions Holdings Inc.

In order to sufficiently plead that this Court has jurisdiction over a defendant, Plaintiffs must "make a prima facie showing that personal jurisdiction exists."  *Insolia v. Philip Morris Inc.*, 31 F. Supp. 2d 660, 664 (W.D. Wis. 1998) (noting that, "[o]n a motion to dismiss for lack of personal jurisdiction, the burden of proof rests on the party asserting jurisdiction").  Here,

Plaintiffs allege only that "Defendants Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions Holding[s] Inc., **and/or** Ahlstrom NA Specialty Solutions LLC ('Ahlstrom') own and/or operate [the Rhinelander Paper Mill] at 515 West Davenport Street, Rhinelander, Wisconsin 54501." Am. Compl. ¶ 32 (emphasis added). The Amended Complaint pleads only in the alternative ("and/or"), and it does not allege any supporting facts that Ahlstrom NA Specialty Solutions Holdings Inc. owns or operates the Rhinelander Paper Mill or otherwise has sufficient contacts with the State of Wisconsin to confer personal jurisdiction. Further, "[n]ormally, a holding company is not subject to personal jurisdiction within a state based solely on alleged contacts with the forum state by one of its subsidiaries." *See Opie v. Country Home Prods., Inc.*, No. CIV 08-1716-PHX-DKD, 2009 WL 10672918, at *2 (D. Ariz. Sept. 3, 2009) (citing *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007)); *see also Insolia*, 31 F. Supp. 2d at 663–64 (granting motion to dismiss holding company, which was a corporate parent of another named defendant, for lack of personal jurisdiction). Because it fails to allege any facts "showing that personal jurisdiction exists," *Insolia*, 31 F. Supp. 2d at 663–64, the Amended Complaint must be dismissed as against Defendant Ahlstrom NA Specialty Solutions Holdings Inc.

## CONCLUSION

For the foregoing reasons, the Complaint's Sixth Cause of Action should be dismissed with prejudice, and the Complaint should be dismissed in its entirety as to Defendant Ahlstrom NA Specialty Solutions Holdings Inc.

Dated:  March 22, 2024

By: /s/ *Elissa J. Preheim*
    Michael D. Daneker (admitted *pro hac vice*)
    Elissa J. Preheim (admitted *pro hac vice*)
    **ARNOLD & PORTER KAYE SCHOLER LLP**
    601 Massachusetts Avenue, NW
    Washington, DC 20001
    Telephone: (202) 942-5000
    Facsimile: (202) 942-5999
    Michael.Daneker@arnoldporter.com
    Elissa.Preheim@arnoldporter.com

    Joseph L. Olson
    Paul E. Benson
    **MICHAEL BEST & FRIEDRICH LLP**
    790 North Water Street, Suite 2500
    Milwaukee, WI 53202
    Telephone: (414) 271-6560
    Facsimile: (414) 277-0656
    jlolson@michaelbest.com
    pebenson@michaelbest.com

    *Attorneys for Defendants Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions LLC, and Ahlstrom NA Specialty Solutions Holdings Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that, on March 22, 2024, this document was filed through the Electronic Case Filing System of the United States District Court for the Western District of Wisconsin and was thereby served electronically on all attorneys of record.

<u>/s/ *Elissa J. Preheim*</u>