**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

---

LUCAS ROUGEAU; ALISHA
ROUGEAU; CARRIE BRENTON;
KERRY BRENTON; TIMOTHY
GERDMANN; AND MELISSA
GERDMANN,

      Plaintiffs,

      v.

3M COMPANY (f/k/a
MINNESOTA MINING AND
MANUFACTURING, CO.);
AHLSTROM RHINELANDER
LLC; AHLSTROM-MUNKSJO
SPECIALTY SOLUTIONS
ACQUISITION LLC; AHLSTROM
NA SPECIALTY SOLUTIONS
LLC; AND JOHN DOE
DEFENDANTS 1–49,

      Defendants.

Case No. 3:23-CV-546

Judge William M. Conley

---

**MEMORANDUM OF LAW IN SUPPORT OF PARTIAL MOTION TO DISMISS BY
DEFENDANTS WAUSAU PAPER CORP., WAUSAU PAPER MILLS, LLC, AND
ESSITY NORTH AMERICA INC.**

---

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF ALLEGED FACTS ........................................................................ 3

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT ................................................................................................................... 7

I.     PLAINTIFFS DO NOT ALLEGE FACTS STATING A STRICT
LIABILITY CLAIM FOR ABNORMALLY DANGEROUS ACTIVITY
(COUNT SIX) ........................................................................................................ 7

     A.    Strict Liability for Abnormally Dangerous Activities Applies to
*Activities*, Not Substances ................................................................... 9

     B.    Plaintiffs Do Not Allege Any Facts Showing Land Application Is an
Abnormally Dangerous Activity ........................................................ 11

          1.    Plaintiffs Do Not Allege That Risk of Land Application Cannot Be
Mitigated by Reasonable Care (Restatement Section 520, factor
(c)) ........................................................................................... 11

          2.    Plaintiffs' Allegations Demonstrate That Land Application Is a
Common Activity Regulated by the WDNR (Restatement Section
520, Factor (d)) ........................................................................ 13

          3.    Plaintiffs' Allegations and Wisconsin's Regulations Demonstrate
That Land Application Occurred at Appropriate Location
(Restatement Section 520, factor (e)) ...................................... 14

          4.    Plaintiffs Do Not Allege Facts Demonstrating That There Is No
Benefit to Land Application That Could Outweigh Any Potential
Harm (Restatement Section 520, factor (f)) ............................ 15

          5.    Plaintiffs Do Not Allege the Existence of a High Degree of Risk or
the Likelihood of Great Harm as a Result of Land Application
(Restatement Section 520, Factors (a) & (b)) .......................... 16

II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR
INTENTIONAL TRESPASS AND PRIVATE NUSIANCE (COUNTS FOUR
AND FIVE) ......................................................................................................... 18

III.   PLAINTIFFS DO NOT ESTABLISH PERSONAL JURISDICTION OVER
ESSITY NORTH AMERICA ............................................................................ 19

     A.    Plaintiffs Do Not State Facts to Establish General Jurisdiction Over
Essity North America ........................................................................... 20

     B.    Plaintiffs Do Not State Facts to Establish Specific Jurisdiction Over
Essity North America ........................................................................... 22

CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adkisson v. Jacobs Eng'g Grp., Inc.*,
  342 F. Supp. 3d 791 (E.D. Tenn. 2018)................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................6

*Bennett v. Larsen Co.*,
  348 N.W.2d 540 (1984).......................................................................................13

*Bernbach v. Timex Corp.*,
  989 F. Supp. 403 (D. Conn. 1996).....................................................................10

*BHK Realty, LLC v. Narragansett Elec. Co.*,
  542 F. Supp. 3d 133 (D.R.I. June 2, 2021) .........................................................9

*Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.*,
  582 U.S. 255 (2017)...........................................................................................22

*Brown v. Whirlpool Corp.*,
  996 F. Supp. 2d 623 (N.D. Ohio 2014)...............................................................11

*Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*,
  230 F.3d 934 (7th Cir. 2000) ....................................................................3, 21, 22

*Consumer's Co-op. of Walworth Cty. v. Olsen*,
  142 Wis. 2d 465, 419 N.W.2d 211 (Wis. 1988) ............................................21, 22

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)........................................................................................7, 21

*Fagan v. Superior Ref. Co. LLC*,
  471 F. Supp. 3d 888 (W.D. Wis. 2020) ...................................................11, 12, 14

*Fortier v. Flambeau Plastics Co.*,
  476 N.W.2d 593 (Wis. Ct. App. 1991) ...........................................................14, 19

*Friemuth v. Fiskars Brands, Inc.*,
  681 F. Supp. 2d 985 (W.D. Wis. 2010) ...............................................................6

*Grube v. Daun*,
  570 N.W.2d 851 (Wis. 1997)....................................................................... *passim*

*Grygiel v. Monches Fish & Game Club, Inc.*,
  2010 WI App 93, 328 Wis. 2d 436, 787 N.W.2d 6 (Wis. 2010) ...........................................18

*Harrington v. Simms*,
  No. 21-cv-1182-SCD, 2023 WL 4034422 (E.D. Wis. June 15, 2023) ........................7, 11, 12

*Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*,
  916 F.2d 1174 (7th Cir. 1990) ...................................................................................8, 9, 13

*Invitroatgen Corp. v. Oxford Biomedical Rsch., Inc.*,
  No. 08-CV-599-SLC, 2008 WL 5423207 (W.D. Wis. Dec. 30, 2008) ...................................20

*Jansen v. Packaging Corp. of Am.*,
  123 F.3d 490 (7th Cir. 1997) ..................................................................................................7

*Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*,
  938 F.3d 874 (7th Cir. 2019) ...........................................................................................7, 22

*Matlin v. Spin Master Corp.*,
  921 F.3d 701 (7th Cir. 2019) .........................................................................................20, 22

*Meier v. Wright Med. Tech., Inc.*,
  No. 14–cv–505–wmc, 2015 WL 1486688 (W.D. Wis. Mar. 31, 2015) .................................23

*Menominee Indian Tribe of Wis. v. Thompson*,
  161 F.3d 449 (7th Cir.1998) ...................................................................................................1

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*,
  691 N.W.2d 658 (2005) ................................................................................................18, 19

*Modern Holdings, LLC v. Corning Inc.*,
  Civ. No. 13-405, 2015 WL 1481457 (E.D. Ky. Mar. 31, 2015).............................................9

*Nielsen v. Sioux Tools, Inc.*,
  870 F. Supp. 435 (D. Conn. 1994).......................................................................................10

*In re Paulsboro Derailment Cases*,
  Civil Nos. 13–784, 12–7586, 13–410, 13–721, 13–761, 2013 WL 5530046
  (D.N.J. Oct. 4, 2013)...........................................................................................................19

*Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ..........................................................................................6, 20

*Rasmussen v. Gen. Motors Corp.*,
  2011 WI 52, 3335 Wis.2d 1, 803 N.W.2d 623 (Wis. 2011) ................................................21

*Read v. Corning Inc.*,
  351 F. Supp. 3d 342 (W.D.N.Y. 2018)............................................................................9, 18

*Roemer v. Board of Pub. Works*,
   426 U.S. 736 (1976) ................................................................................................5

*Saunders v. Sappi N. Am. Inc.*,
   No. BCD-CIV-2023-00033 (Me. B.C.D. Jan. 2, 2024) ....................................10, 11

*Schwartzman, Inc. v. Gen. Elec. Co.*,
   848 F. Supp. 942 (D.N.M. 1993) .....................................................................10, 12

*Sonic Foundry, Inc. v. Astute Tech., LLC*,
   No. 13–CV–00087, 2013 WL 6148111 (W.D. Wis. Nov. 22, 2013) ....................20

*Toney v. Burris*,
   829 F.2d 622 (7th Cir. 1987) ........................................................................2, 4, 5

*Wesbrook v. Ulrich*,
   90 F. Supp. 3d 803 (W.D. Wis. 2015) ...................................................................6

*Winley v. Int'l Paper Co.*,
   No. 2:09-2030-CWH, 2012 WL 13047989 (D.S.C. Oct. 23, 2012) ...................9, 17

*Estate of Winnig v. Bank of Am.*,
   No. 18-cv-816-wmc, 2019 WL 1676012 (W.D. Wis. Apr. 7, 2019) ......................6

*Wis. Power & Light Co. v. Columbia Cnty.*,
   87 N.W.2d 279 (Wis. 1958) .................................................................................18

*Yeftich v. Navistar, Inc.*,
   722 F.3d 911 (7th Cir. 2013) ................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) ....................................................1, 2, 6, 24

Federal Rule of Civil Procedure 12(b)(6) ..............................................................1, 24

Wis. Admin. Code ch. NR 214 ..................................................................4, 13, 14

Wis. Admin. Code § NR 214.18 .......................................................4, 5, 13 15, 17

## INTRODUCTION

Defendants Wausau Paper Corp., Wausau Paper Mills, LLC, (collectively, "Wausau Paper" or the "Wausau Paper Entities") and Essity North America Inc. ("Essity North America") respectfully move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims against them.  Essity North America also moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction.

Plaintiffs are property owners in broadly dispersed and differently situated locations who allege that various operators of the Rhinelander Paper Mill applied paper waste as a fertilizer onto farmland at unspecified locations in Oneida County over an unspecified course of time.  Plaintiffs do not claim that any paper waste, called fibercake, was placed on their properties.  Plaintiffs allege that the fibercake contained per- and polyfluoroalkyl substances ("PFAS"), which is a large group of chemicals.  Plaintiffs allege that these PFAS compounds originated from products sold by codefendant 3M Company.

Plaintiffs' claims are not based on the presence of chemicals that are rare or come from only a few readily discernable sources.  To the contrary, Plaintiffs state that PFAS compounds "have been found *globally* in water, soil, and air."  (ECF No. 29 (Am. Compl.) ¶ 44 (emphasis added).)  Consistent with Plaintiffs' allegations, the Wisconsin Department of Health Services recognizes that PFAS are present in everyday consumer and industrial products, ranging from shampoo and dental floss to carpet, furniture, and cookware.[1]  Plaintiffs allege that some of these

---

[1] *Chemicals: Perfluoroalkyl and Polyfluoroalkyl (PFAS) Substances*, Wisconsin Dep't of Health Services (Mar. 6, 2024), https://www.dhs.wisconsin.gov/chemical/pfas.htm (April 5, 2024 Declaration of Manda M. Sertich ("Sertich Decl.") Ex. 1). The Court may take judicial notice of public records.  *See* Fed. R. Evid. 201; *Menominee Indian Tribe of Wis. v. Thompson,* 161 F.3d 449, 456 (7th Cir.1998) ("A court may consider judicially noticed documents without converting a motion to dismiss into a motion for summary judgment. . . . Judicial notice of historical

ubiquitous compounds are now present in their wells in unspecified quantities. Thus, though PFAS compounds may have come from common sources, Plaintiffs instead attribute the PFAS to fibercake that was deposited in a general area at unidentified times.

Plaintiffs' allegations regarding Wausau Paper Entities and Essity North America exhibit legal defects that render several of the claims non-cognizable. As acknowledged in the Amended Complaint, Wausau Paper's land application process was actively regulated and monitored by the Wisconsin Department of Natural Resources ("WDNR"). Far from being "abnormal" or any abnormally dangerous activity, land application was a disclosed and regulated activity done for the salutary benefit of farm soil and cannot be a basis for strict liability under Wisconsin law. Further, Plaintiffs do not allege facts to plausibly show that Wausau Paper knew or should have known that its fibercake contained PFAS that could travel to Plaintiffs' properties. Plaintiffs allege to the contrary: that Wausau Paper was *not* informed about risks associated with the use of PFAS compounds. (*See id.* ¶¶ 56, 98-102.) Because Plaintiffs have not alleged that Wausau Paper intended to cause PFAS to enter Plaintiffs' properties, their intentional trespass and private nuisance claims should also be dismissed.

The claims against Essity North America should be dismissed under Rule 12(b)(2) because Plaintiffs do not meet their burden to establish personal jurisdiction. Plaintiffs do not allege, for example, that Essity North America is incorporated or principally operates in Wisconsin. Nor do Plaintiffs allege any facts regarding any business operations by Essity North America in connection with the paper mill. The only alleged connection is that Essity North America "retains or contractually acquired liability for the *prior* ownership and operation" of the paper mill. (*Id.* ¶

documents, documents contained in the public record, and reports of administrative bodies is proper."); *Toney v. Burris*, 829 F.2d 622, 626–27 (7th Cir. 1987).

2

35 (emphasis added).)  Yet it is settled law that "corporate affiliation or stock ownership alone" cannot establish personal jurisdiction as a matter of due process.  *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000).

The Court should accordingly dismiss the claims against Essity North America and the Wausau Paper Entities for strict liability and intentional torts and should further dismiss all claims against Essity North America for lack of personal jurisdiction.

## STATEMENT OF ALLEGED FACTS

Plaintiffs allege that per- and polyfluoroalkyl substances ("PFAS") are chemicals that were developed before the 1970s, (*see* Am. Compl. ¶¶ 43, 51), and "have been found *globally* in water, soil, and air," (*id.* ¶ 44 (emphasis added)), due to the widespread use of these compounds in various consumer, commercial and industrial products.  (*See id.* at ¶ 44 fn. 2 (citing Agency for Toxic Substances and Disease Registry ("ATSDR"), "Per- and Polyfluoroalkyl Substances and Your Health," ("*PFAS and Your Health*")).[2])  Wisconsin regulators have recognized the numerous "everyday" products that contain PFAS, such as cleaning products, personal care products like shampoo and dental floss, water-resistant fabrics, stain-resistant coatings used on carpets and other fabrics, and others.[3]  The WDNR has explained, for example, that "[w]idespread use of PFAS in consumer products and manufacturing/industrial processes have resulted in the presence of PFAS in municipal wastewater and biosolids."  (ECF No. 52-1 at 4 (WDNR, *Interim Strategy* § 2.4).)

---

[2]  Available at https://www.atsdr.cdc.gov/pfas/health-effects/overview.html (last visited Apr. 5, 2024); *see also* ECF No. 52-2 (Mar. 22, 2024 Decl. of Elissa Preheim ("Preheim Decl."), Ex. 2 (record of the *PFAS and Your Health* website). As noted above, the Court may take judicial notice of public records.

[3] Sertich Decl., Ex. 1, *Chemicals: Perfluoroalkyl and Polyfluoroalkyl (PFAS) Substances*, Wis. Dep't of Health Servs., (Mar. 6, 2024), https://www.dhs.wisconsin.gov/chemical/pfas.htm.

According to the Amended Complaint, Plaintiffs are residents of Wisconsin who own dispersed properties in Oneida County. (Am. Compl. ¶¶ 1, 7–30.) Plaintiffs allege that they receive their water supplies from private wells on their properties. (*Id.* ¶ 1.) Plaintiffs also allege that PFAS are present in their well water and allege that this is the result of "the land application of PFAS-containing waste" onto unspecified farmland in Oneida County, the Town of Stella, and the "Rhinelander area." (*Id.*¶¶ 2, 38, 72.) They assert claims against Wausau Paper as a prior owner and operator of the mill and refer obliquely to Essity North America as a corporate affiliate. (*Id.* ¶ 35.) Plaintiffs acknowledge that land application of fibercake from the mill was reported and disclosed to state environmental regulators in "Annual Land Application Reports," but Plaintiffs do not attach, quote, or refer to any locations, times, or other particulars from those reports. (*Id.* ¶ 58); *see also Reporting Instructions Annual Land Application Report*, WDNR (Form 3400-055) ("Completion and submission of the 3400-055 form and the 3400-052 form is mandatory under 283.55, Wis. Stats., and ch. NR 204 or 214, Wis. Adm. Code or s. 281.48(3)(b), Wis. Stats., and ch. NR 113, Wis. Adm. Code.").[4] In other words, implicit in Plaintiffs' Amended Complaint is an allegation that the Wausau Paper Entities were land spreading within the confines of the WDNR's programs.

The State of Wisconsin regulates land application of fibercake waste. WDNR issues permits for the land application of fibercake as a soil conditioner on agricultural land. *See* Wis. Admin. Code § NR 214.18; Wis. Admin. Code § NR 214.03(34).[5] This program requires the

---

[4] The full instructions are available at https://dnr.wisconsin.gov/sites/default/files/topic/ Wastewater/3400-055instructions.pdf (last visited April 5, 2024) (Sertich Decl., Ex. 3).

[5] This Court should take judicial notice of Wisconsin's regulatory scheme relating to the disposal of paper mill waste. "Federal courts must take judicial notice of the statutory and common law of any state of the union without pleading or proof." *Toney v. Burris*, 829 F.2d 622, 626–27 (7th Cir. 1987) (citations omitted). This rule is especially true of the state laws in which a district court sits. *Id.* at 627. This rule of judicial notice also applies to "matters of public record such as

submission of "Annual Land Application Reports," (*see* Am. Compl. ¶ 58), and regulates the types of fibercake and locations permissible under the program. Wis. Admin. Code § NR 214.18. Wisconsin law also designates criteria for locations where land application may occur, including that it may not occur within 500 feet of any residence (or 200 feet of any residence with the consent of the owners and occupants), within 1,000 feet of a public water supply well, or within 250 feet of any other potable water source. *Id.* § NR 214.18(2). Importantly, before any fibercake can be applied, "[a]ll sites shall be approved" by WDNR. *Id.* § NR 214.18(2)(a). Furthermore, only fibercake that has "been shown to have beneficial properties as a soil conditioner or fertilizer and not have detrimental effects on the soil, crops or groundwater may be spread on the land." *Id.* § NR 214.18(1).

Plaintiffs do not allege that Wausau Paper or Essity North America deviated from any of these regulations or that any land application of fibercake violated any guidelines or restrictions set forth by environmental regulators who oversee and approve this activity. Nor do Plaintiffs allege that any land application occurred in an unauthorized location, in any unauthorized manner, or without the knowledge and consent of the farmland owners and occupants.

Plaintiffs allege that Wausau Paper applied fibercake that contained PFAS, including two specific PFAS substances: perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). (Am. Compl. ¶¶ 1, 127, 134–35, 142–43.) In 2021, the WDNR issued interim guidance for the land application of biosolids and industrial sludges containing PFAS and recommended actions if the combined PFOA and PFOS concentrations exceeds certain thresholds. (ECF No. 52-

---

state statutes, city charters, and city ordinances." *Id.* (quoting *Newcomb v. Brennan*, 558 F.2d 825, 829 (7th Cir. 1977), *cert. denied*, 434 U.S. 968 (1977)); *see also Roemer v. Board of Pub. Works*, 426 U.S. 736, 742 n. 4 (1976).

2 at 8 (*Interim Strategy* § 5.4).)  The guidance was revised in 2024.  (*Id*.[6]) In both the original and recently-revised guidance, the WDNR advised that if the sum of PFOA and PFOS contained in biosolids and industrial sludges is "below 20 µg/kg," those engaged in land application should "land apply per normal approach," consistent with state regulations.  (*Id*.)  Plaintiffs do not allege any facts about the quantity of PFAS purportedly contained in any land application at issue.

## <u>LEGAL STANDARD</u>

The Amended Complaint must allege sufficient facts that, accepted as true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A plaintiff must go beyond mere possibility in making factual allegations and must instead establish that the claims have "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915–17 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court need not accept legal conclusions as true.  *Iqbal*, 556 U.S. at 678; *see also Wesbrook v. Ulrich*, 90 F. Supp. 3d 803, 806 (W.D. Wis. 2015).  Instead, a plaintiff must plead "specific allegations that, if true, make plaintiff's claim for relief more than speculative."  *Friemuth v. Fiskars Brands, Inc.*, 681 F. Supp. 2d 985, 991–92 (W.D. Wis. 2010).

With respect to personal jurisdiction, "once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction."  *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *accord Estate of Winnig v. Bank of Am.*, No.

---

[6]    Available    at    https://dnr.wisconsin.gov/sites/default/files/topic/PFAS/PFAS_Bio solidsInterimStrategy.pdf (last visited April 1, 2024).

18-cv-816-wmc, 2019 WL 1676012, at *1 (W.D. Wis. Apr. 7, 2019). There are two types of personal jurisdiction: general and specific. *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019). For general jurisdiction, plaintiffs must state facts that establish a defendant's forum contacts "are so constant and pervasive as to render it essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (cleaned up). For specific jurisdiction, plaintiffs must state facts that establish three requirements: (i) that the defendant purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the forum state; (ii) that plaintiffs' injuries arose out of or relate to a defendant's forum related activities; and (iii) that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Lexington Ins. Co.*, 938 F.3d at 878.

## ARGUMENT

### I.  PLAINTIFFS DO NOT ALLEGE FACTS STATING A STRICT LIABILITY CLAIM FOR ABNORMALLY DANGEROUS ACTIVITY (COUNT SIX)

Plaintiffs' claims stem from allegations about applying fibercake to farmland at unspecified locations, times, and quantities, and Plaintiffs allege this land application was abnormally dangerous conduct subjecting Wausau Paper and Essity North America to strict liability. (Am. Compl ¶¶ 41–44.) Under Wisconsin law, the doctrine of strict liability is narrow and is reserved for uncommon and extraordinarily dangerous activities for which negligence is an inadequate deterrent or remedy. *Grube v. Daun*, 570 N.W.2d 851, 857 (Wis. 1997); *Harrington v. Simms*, No. 21-cv-1182-SCD, 2023 WL 4034422, at *4 (E.D. Wis. June 15, 2023) (acknowledging the lack of case law "in which a Wisconsin court has determined that an activity *was* an abnormally dangerous one as a matter of law") (emphasis in original). Courts "apply the doctrine cautiously," *Jansen v. Packaging Corp. of Am.*, 123 F.3d 490, 521 n.7 (7th Cir. 1997) (Coffey, J., concurring in part and dissenting in part), recognizing that its application should not swallow negligence as

the "baseline common law regime of tort liability," *Ind. Harbor Belt R.R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1177 (7th Cir. 1990).

When deciding whether an activity is abnormally dangerous, Wisconsin courts apply a multi-factor test pursuant to the Second Restatement of Torts Section 520. *See Grube*, 570 N.W.2d at 856–57. The Restatement's six factors in determining whether an activity is abnormally dangerous are:

> (a) existence of a high degree of risk of some harm to the person, land or chattels of others;
>
> (b) likelihood that the harm that results from it will be great;
>
> (c) inability to eliminate the risk by the exercise of reasonable care;
>
> (d) extent to which the activity is not a matter of common usage;
>
> (e) inappropriateness of the activity to the place where it is carried on; and
>
> (f) extent to which its value to the community is outweighed by its dangerous attributes.

*Grube*, 570 N.W.2d at 856–57 (quoting Restatement (Second) of Torts § 520). "These factors are interrelated and should be considered as a whole, with weight being apportioned by the court in accordance with the facts in evidence." *Id.* at 857 (citing Restatement (Second) of Torts, § 520 cmt. l). "[W]here the facts are undisputed, whether an activity is abnormally dangerous '*is to be determined by the court,* upon consideration of all the factors listed in sec. 520. . . .'" *Grube*, 570 N.W.2d at 856 (quoting *Fortier v. Flambeau Plastics Co*., 476 N.W.2d 593 (Wis. Ct. App. 1991)).

Here, Plaintiffs fail to allege both that their harms resulted from an *activity* and that the *activity* was abnormally dangerous.

A.    **Strict Liability for Abnormally Dangerous Activities Applies to *Activities*, Not Substances**

Plaintiffs' strict liability claim runs contrary to Wisconsin law that limits strict liability to abnormally dangerous *activities* rather than *substances.*  For example, in *Grube*, purchasers of a small parcel including farm buildings sued the previous owners after learning that the defendant installed an underground gasoline storage tank that leaked, resulting in groundwater contamination.  570 N.W.2d at 853–54.  The Wisconsin Supreme Court affirmed the dismissal of the plaintiffs' strict liability claims based on abnormal dangerousness and rejected the plaintiffs' claim that the "leakage and resulting contamination attributable to" the use of the underground storage tank was the "appropriate activity to be analyzed under the Restatement."  *Id.* at 857.  Rather, the Court held that the appropriate activity for analysis under the six Restatement factors was the use of an underground gasoline storage tank on a farm.  *Id.*  The Court held that the use of an underground storage tank ("UST") on a farm was not abnormally dangerous.  *Id.*  ("USTs, while admittedly disfavored under today's environmental laws, are not inherently dangerous.")[7]

---

[7] Courts around the country have also concluded that the activity, and not the chemical substance is the proper focus when analyzing whether an activity is abnormally dangerous.  *See, e.g., Ind. Harbor Belt*, 916 F.2d at 1181 ("[A]bnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities."); *BHK Realty, LLC v. Narragansett Elec. Co.*, 542 F. Supp. 3d 133, 138–39 (D.R.I. June 2, 2021) (noting that strict liability "attaches only to ultrahazardous or abnormally dangerous activities and not to ultrahazardous or abnormally dangerous *materials*" (emphasis in original) (citation and internal quotation marks omitted)); *Modern Holdings, LLC v. Corning Inc.*, Civ. No. 13-405, 2015 WL 1481457, at *9–*10 (E.D. Ky. Mar. 31, 2015) ("[U]ltrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities.").

Moreover, to the extent that disposal of hazardous waste is an activity, courts routinely conclude that it is not abnormally dangerous.  *Adkisson v. Jacobs Eng'g Grp., Inc.*, 342 F. Supp. 3d 791, 809 & n.16 (E.D. Tenn. 2018) ("courts appear to agree that hazardous waste disposal or removal is not ultrahazardous or abnormally dangerous"); *Winley v. Int'l Paper Co.*, No. 2:09-2030-CWH, 2012 WL 13047989 (D.S.C. Oct. 23, 2012) (granting motion to dismiss abnormally dangerous activity strict liability claim due to release of hazardous chemicals from papermill because plaintiffs "failed to allege facts to support their notion that the operation of a paper mill is an ultra-hazardous, or abnormally dangerous activity"); *Read v. Corning Inc.*, 351 F. Supp. 3d 342,

9

A Maine court recently addressed this same issue in the context of PFAS contamination via land application and reached the same result as the *Grube* court. In *Saunders v. Sappi N. Am. Inc.,* No. BCD-CIV-2023-00033 (Me. B.C.D. Jan. 2, 2024), the plaintiff homeowners sought to impose strict liability on owners and operators of paper mills that engaged in land application of their waste, which was contaminated with PFAS. *Id.* at 8–10 (available at ECF No. 52-5 (Preheim Decl., Ex. 5).). In assessing the plaintiff's strict liability claims based on an abnormal dangerousness theory, the court noted that "the predicate for applying the Second Restatement's approach is to start with an activity for which there is some precedent establishing it as 'inherently dangerous.'" *Id.* at 12. The court noted that the complaint was "devoid of any allegations that [papermaking or operating a landfill]—separate and apart from the presence of PFAS—are inherently dangerous" and dismissed the plaintiffs' strict liability claims because "the gist of the Complaint" was that "PFAS is dangerous, but this is a substance, not an activity." *Id.* at 12–13.

Like the plaintiffs in *Grube* and *Saunders*, Plaintiffs here do not claim that papermaking or land application itself is abnormally dangerous. Instead, they allege that the part of land application that was allegedly abnormally dangerous was that the fibercake contained some quantity of PFAS compounds, not that land application itself was abnormally dangerous. (Am.

---

358 (W.D.N.Y. 2018) (granting motion to dismiss strict liability for disposal of "substances that were outwardly ordinary" but later found to contain hazardous chemicals because "Courts have repeatedly held that the disposal of such substances, even if they do contain hazardous chemicals, is not so inherently dangerous as to give rise to strict liability"); *Nielsen v. Sioux Tools, Inc.,* 870 F. Supp. 435, 437 & 442 (D. Conn. 1994) (declining to extend strict liability to manufacturer's use, generation, and disposal of chemicals, where the waste was deposited in an underground storage tank and on the ground); *Schwartzman, Inc. v. Gen. Elec. Co.,* 848 F. Supp. 942, 945 (D.N.M. 1993) (holding that New Mexico Supreme Court would decline to apply strict liability to handling, storage, and disposal of petroleum products and hazardous waste in unlined ditches); *Bernbach v. Timex Corp.,* 989 F. Supp. 403, 407–08 (D. Conn. 1996) (dismissing strict liability claims based on soil and groundwater contamination resulting from a manufacturing facility's disposal of various hazardous substances).

Compl. ¶¶ 4–5, 42–50, 64–69, & 144–46.)  This Court, like the courts in *Grube* and *Saunders*, should reject that framework and, instead, assess whether Plaintiffs have alleged sufficient facts to state a claim that land application is an abnormally dangerous activity.  As discussed below, Plaintiffs do not allege facts to state such a claim.

### B.   Plaintiffs Do Not Allege Any Facts Showing Land Application Is an Abnormally Dangerous Activity

Plaintiffs do not allege facts that would plausibly show that the Wausau Paper Entities' land application was abnormally dangerous activity.  At the motion to dismiss stage, the Court is not required to undertake to balance the six Restatement factors to determine whether land application constitutes an abnormally dangerous activity.  Rather, the Court should determine, considering the six Restatement factors, whether the Plaintiffs have made the requisite factual allegations to support a strict liability claim against Wausau Paper.  *See Fagan v. Superior Ref. Co. LLC*, 471 F. Supp. 3d 888, 894 (W.D. Wis. 2020) (dismissing strict liability claim for ultrahazardous activity where plaintiffs "provided only a conclusory statement of law" and "failed to *plead facts* to support that conclusion") (emphasis in original); *see also, e.g.*, *Brown v. Whirlpool Corp.*, 996 F. Supp. 2d 623, 639–40 (N.D. Ohio 2014) (dismissing strict liability claim because plaintiffs failed to allege why a manufacturing process necessitates an ultrahazardous activity).

### 1.   Plaintiffs Do Not Allege That Risk of Land Application Cannot Be Mitigated by Reasonable Care (Restatement Section 520, factor (c))

Under Wisconsin law, an activity is abnormally dangerous where "the risk of harm remains unreasonably high *no matter how carefully it is undertaken*."  *Harrington*, 2023 WL 4034422, at *5 (emphasis in original) (quoting *Wagner v. Continental Cas. Co.*, 421 N.W.2d 835, 840 (Wisc. 1988)).  While the Restatement deems an activity more likely to be abnormally dangerous if *elimination* of risk is not possible, under Wisconsin law, the issue is "whether the risk of injury could have been minimized with reasonable care."  *Id.* (citing *Estate of Thompson v. Jump River*

*Elec. Coop.,* 593 N.W.2d 901, 905–06 (Wis. Ct. App. 1999) (holding that "the risk of injury need not be eliminated, just minimized")).  Wisconsin courts recognize that this factor is the most important factor a court should consider in determining whether conduct rises to an "abnormally dangerous" level.  *See id.*, at *5 ("The ability to take steps to minimize the risk of harm appears to be the most important factor in determining whether an activity is abnormally dangerous under Wisconsin law.").

Here, Plaintiffs assert, with *no* factual allegations in support, that "the risk of land application of PFAS (including through disposal of PFAS-waste on farmland) cannot be acceptably mitigated or eliminated where there is a potential pathway of PFAS to groundwater, such as existed near Plaintiff's [sic] properties."  (Am. Compl. ¶ 145.)  This is nothing more than a bare recitation of a necessary element of a claim.  Plaintiffs provide nothing more than this conclusory, general statement, which is not enough to move the claim from possible to plausible— as is necessary for the claim to be viable.  *See Fagan*, 471 F. Supp. 3d at 894.

While Plaintiffs do not allege any facts supporting their conclusory allegation that the risks of land application cannot be mitigated, the Wisconsin reporting requirements referenced in the Amended Complaint and the Wisconsin law regulating land application from paper mill waste undermine Plaintiffs' conclusory assertion that the risk of land application from paper mills cannot be mitigated through the exercise of reasonable care.  *Harrington*, 2023 WL 4034422, at *5; *see, e.g.*, *Schwartzman, Inc. v. Gen. Elec. Co.*, 848 F. Supp. 942, 945 (D.N.M. 1993) ("[T]he premise of many environmental laws . . . is that proper handling and disposal of [environmental hazards] minimizes or eliminates the risk of their use.").  The fact that Wisconsin regulators permitted and set forth requirements for land application is a strong indicator that land application risk is tolerable and can be reduced.  *See Ind. Harbor Belt*, 916 F.2d at 1183 (holding regulations were "relevant

to showing that the [activity] in question [was] not abnormally dangerous, and so support our rejection of strict liability").

> 2. <u>Plaintiffs' Allegations Demonstrate That Land Application Is a Common Activity Regulated by the WDNR (Restatement Section 520, Factor (d))</u>

If an activity is a matter of common usage, Wisconsin courts weigh that fact against a finding that an activity is abnormally dangerous. *See Bennett v. Larsen Co.,* 348 N.W.2d 540, 553 (1984) (finding that strict liability did not apply because, in part, "pesticide application to control severe pest infestations is a common activity"). In an attempt to make sufficient allegations with respect to the Restatement factors, Plaintiffs make a single, purely speculative allegation that Wausau Paper's alleged activity is "not a common practice, and is not in common usage." (Am. Compl. ¶ 146.) This, again, amounts to a bare recitation of an essential element, not pleading facts to show that element is plausible.

Indeed, Plaintiffs' factual allegations demonstrate that the activity of land application to dispose of paper mill waste is commonplace to the point where the State of Wisconsin requires the submission of annual paperwork documenting such disposal and sets limits for proximity to drinking water sources. *See* Wis. Admin. Code § 214.18(2). Plaintiffs acknowledge that WDNR required "Annual Land Application Reports" to be submitted describing land application of fibercake on farmland. (*See* Am. Compl. ¶ 58.) As detailed *supra*, Annual Land Application Reports are required to maintain a permit, and reporting to the WDNR is mandatory following each year in which biosolids or sludge are land-applied. *See generally* Wis. Admin. Code ch. NR 214.

Further, this Court may take judicial notice of the publicly available information from the WDNR issuing guidance entitled "Interim Strategy for Land Application of Biosolids and

13

Industrial Sludges Containing PFAS."  (*See* ECF No. 52-1.)  Notably, the WDNR guidance states that:

> *Commonly*, industrial sludges permitted to be landspread include food processing sludges, pulp and *papermill sludges*, and various other sludges from processes that often have minimal metal and/or other pollutants. These industrial sludges are land applied to provide beneficial use to the soils through nutrient, carbon, and lime additions.

(*Id.* at § 2.2 (emphasis added).)  Plaintiffs' conclusory allegations regarding the uncommon nature of land application are insufficient to state a viable claim.  *See Fagan*, 471 F. Supp. 3d at 894.

### 3.  Plaintiffs' Allegations and Wisconsin's Regulations Demonstrate That Land Application Occurred at Appropriate Location (Restatement Section 520, factor (e))

In determining whether an activity is abnormally dangerous, Wisconsin courts consider whether the activity occurred at an inappropriate place.  *See Fortier*, 476 N.W.2d at 608 (finding that strict liability did not apply as a matter of law, in part, because the DNR did not disapprove of disposing chemical waste at a landfill in 1969).  On this point, Plaintiffs merely recite the element in conclusory fashion, alleging that land application of PFAS "was inappropriate for any location where there was a potential pathway to groundwater that could be used for domestic purposes." (Am. Compl. ¶ 144.)  In addition to mistaking PFAS for the activity of land application, Plaintiffs do not allege any facts to plausibly show that the locations of the land applications were inappropriate.

As described *supra*, the WDNR's regulations require approval of the location of land application, *see, e.g.*, Wis. Admin. Code ch. NR 214,[8] and contain detailed instructions regarding

---

[8] *See also* Sertich Decl., Ex. 4, *Help with Online Monitoring Report Forms*, WDNR https://dnr.wisconsin.gov/topic/Wastewater/eReporting.html (last visited Apr. 5, 2024); Sertich Decl., Ex. 3, *Reporting Instructions for Annual Land Application Report* (3400-055)

*where* land application may occur in relation to residential property, *see id.* § NR 214.18(2). Plaintiffs do not allege that any of these regulations were not followed regarding the appropriate locations for land application.  As such, Plaintiffs have also failed to sufficiently plead facts supporting the "inappropriate location" factor.

### 4. Plaintiffs Do Not Allege Facts Demonstrating That There Is No Benefit to Land Application That Could Outweigh Any Potential Harm (Restatement Section 520, factor (f))

In assessing abnormal dangerousness, Wisconsin courts also consider whether there is a benefit to the community that could outweigh any dangerousness.  *See Grube*, 570 N.W.2d at 857. On this factor, Plaintiffs make the purely speculative assertion that the "risks" of certain PFAS "grossly exceed the[] utility" of land application.  (Am. Compl. ¶ 143.)  This, again, is a bare recitation of a required element, not a statement of facts that plausibly establish that element.

Moreover, this unsupported assertion is refuted by Wisconsin's regulatory scheme and guidance.  The state regulatory scheme permitting land application allows sludges from papermills to be spread on farmland in part because they have been "shown to have beneficial properties as a soil conditioner or fertilizer."  Wis. Admin. Code § NR 214.18; (*see also* ECF No. 52-1 at 3 (*Interim Strategy* at § 2.2) (noting that "pulp and papermill sludges" are among the land-applied materials "applied to provide beneficial use to the soils through nutrient, carbon, and lime additions")).  Further, the WDNR's regulatory guidance advises that land application should proceed as normal where certain prescribed levels of PFOA and PFOS exist in the waste.  (*See id.* at 8 (§ 5.4).)

---

https://dnr.wisconsin.gov/sites/default/files/topic/Wastewater/3400-055instructions.pdf        (last visited Apr. 5, 2024). As noted above, it is proper to take judicial notice of public records.

Wisconsin case law also indicates that this analysis is retroactive; in other words, in considering whether the benefits outweigh the risks, courts should consider whether the perceived benefit at the time of the conduct outweighs the perceived risk. In *Grube*, the Wisconsin Supreme Court dismissed a claim for strict liability for the contamination of groundwater because, in part, at the time the allegedly hazardous activity took place in the 1970s, the value to the community of chemicals that were later deemed unpopular was believed to outweigh any danger from their use. 570 N.W.2d at 857. The Court acknowledged that, at the time of the alleged dangerous conduct, "[b]oth the general community and the DNR were operating under the mistaken impression that the introduction of petroleum products into soil presented no threat." *Id.* Although "in hindsight" the likelihood of harm "may today in certain circumstances outweigh the utility" of engaging in the alleged dangerous activity, that still does not establish that the utility was outweighed at the time of the activity. *Id.*

Here, Plaintiffs do not identify the timing of any land application for any of their claims, much less establish that the utility at the time was outweighed by the risks. Plaintiffs assert that the land application occurred over the course of "decades," (Am. Compl. ¶ 2), and imply—as in *Grube*—that views and practices surrounding PFAS have changed over those decades. *Id.* ¶¶ 46–48, 143. Moreover, even today, the WDNR acknowledges the benefits of land application of fibercake to farmland soil and still permits and regulates that activity accordingly, notwithstanding the potential presence of PFAS.

5.    Plaintiffs Do Not Allege the Existence of a High Degree of Risk or the Likelihood of Great Harm as a Result of Land Application (Restatement Section 520, Factors (a) & (b))

Finally, in determining whether Wausau Paper's land application was abnormally dangerous, Plaintiffs must allege facts demonstrating that the land application created a high degree of risk to people or property and that great harm was likely to result. First, under Wisconsin

law, the assessment of dangerousness applies to the *activity* of land application, not to whether PFAS *material* is abnormally dangerous. Plaintiffs make no allegations that land application presents a high degree of risk or is likely to cause great harm. Rather, the Amended Complaint merely alleges that "[l]and application of PFAS-containing products and waste is extremely hazardous and present [sic] a high degree of risk," (Am. Compl. ¶ 142), and that "[l]and application of PFAS (including through disposal of PFAS-waste on farmland) was inappropriate for any location where there was a potential pathway to groundwater that could be used for domestic purposes." (*Id.* ¶ 144.) Again, Plaintiffs' conclusory allegations center only on the presence of PFAS materials in the land-applied sludge, rather than the activity of land application itself. And again, these conclusory allegations are contradicted by publicly available guidance from the WDNR including: (i) the Wisconsin state interim guidance regarding "Land Application of Biosolids and Industrial Sludges Containing PFAS"; (ii) the WDNR's permitting program that controls where land applying may occur, including specifying required distances from residences, public water supplies, or other potable water sources; and (iii) the requirement that WDNR must approve the land application location. (*See* ECF No. 52-2 (*Interim Strategy*)); Wis. Admin. Code § NR 214.18(2)(a)-(c).

Because the Complaint is devoid of factual allegations to plausibly show any factor used to determine whether land application is an abnormally dangerous activity as defined in the Restatement and Wisconsin law, the Court should dismiss Plaintiffs' claim for strict liability against Wausau Paper. *See Int'l Paper Co.*, 2012 WL 13047989, at *11 (dismissing strict liability claim due to release of hazardous chemicals from papermill because plaintiffs "failed to allege facts to support their notion that the operation of a paper mill is an ultra-hazardous, or abnormally dangerous activity"); *Read,* 351 F. Supp. 3d at 358 (dismissing claim for strict liability because

"there is no support in the case law, or in the factual allegations of the complaint, to support an inference that [Defendant's] disposal of [] industrial wastes was "abnormally dangerous").

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR INTENTIONAL TRESPASS AND PRIVATE NUSIANCE (COUNTS FOUR AND FIVE)

Plaintiffs allege intentional and negligence theories of their trespass and private nuisance claims against Wausau Paper and Essity North America.  (Am. Compl. ¶¶ 127, 135.[9])  Plaintiffs make one purely speculative and conclusory allegation relating to the Wausau Paper Entities' intent—that the Wausau Paper Entities "knew that it was substantially certain that the acts and omissions described above would threaten public health and cause extensive contamination of property and drinking water supplies."  (*Id.* ¶ 95.)  Plaintiffs' allegation is insufficient to state a cognizable claim.

To state a claim for intentional trespass, a plaintiff must allege facts showing that the defendant "intentionally . . . cause[d] a thing" to enter the plaintiff's land.  *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI App 93, ¶ 40, 328 Wis. 2d 436, 461, 787 N.W.2d 6, 18 (Wis. 2010) (citation omitted).  The plaintiff must allege "not merely an intention to do the act which brings about the injury, but rather an intent to act with reference to" the property in question.  *Wis. Power & Light Co. v. Columbia Cnty.*, 87 N.W.2d 279, 282 (Wis. 1958).  Likewise for nuisance: a defendant can only be liable for an intentional private nuisance if it causes an invasion that is "intentional and unreasonable."  *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 691 N.W.2d 658, 671 (2005).  The key inquiry is whether the defendant committed the supposedly tortious act "for the purpose of interfering with" the plaintiff's property rights.  *Id.* at 673.

---

[9] Wausau Paper disputes the allegations in the negligence theories but does not move to dismiss them at this time.

Here, Plaintiffs do not make a single, supportive factual allegation that Wausau Paper had any knowledge of PFAS in their fibercake, let alone any allegation that they understood that PFAS could travel in groundwater miles away and arrive at Plaintiffs' wells.  In an analogous case, the Supreme Court of Wisconsin held that plaintiffs claiming that underground chemicals transported from a landfill to their wells could not sustain a claim for intentional trespass.  *Fortier*, 476 N.W.2d at 608.  Since the plaintiffs did not show that the defendants "intentionally intruded upon the plaintiffs' lands" via underground seepage, an intentional trespass claim was not permissible.  *Id.*; *cf. id.* at 608 n.18 (questioning whether "subsurface invasion" was "nontrespassory" and reserving ruling); *see also In re Paulsboro Derailment Cases*, Civil Nos. 13–784, 12–7586, 13–410, 13–721, 13–761 (RBK/KMW), 2013 WL 5530046, at *6–7 (D.N.J. Oct. 4, 2013) (dismissing trespass claim when the "entry of chemicals" onto plaintiffs' land was not intentional).  In fact, Plaintiffs allege that the Wausau Paper Entities were *not* informed of the existence of PFAS in materials they used in their manufacturing, nor of the potential dangerousness of the PFAS.  (Am. Compl. ¶¶ 85, 98–102.)  As such, Plaintiffs did not and cannot allege any facts supporting the assertions that Wausau Paper intentionally caused PFAS to enter their land, that Wausau Paper intentionally acted with reference to their property at all, or that they conducted land application on farmland with the intended purpose of interfering with Plaintiffs' property rights.

For these reasons, the portions of Counts Four and Five alleging intentional conduct by the Wausau Paper Entities and Essity North America should be dismissed.

## III.    PLAINTIFFS DO NOT ESTABLISH PERSONAL JURISDICTION OVER ESSITY NORTH AMERICA

In the forty-six page Amended Complaint, Plaintiffs make a single reference to Essity North America, having acquired liability for the *prior* ownership and operation of the paper mill:

> Defendants, Wausau Paper Corp., Wausau Paper Mills, LLC, Essity
> North America, Inc. and Essity Aktiebolag, (collectively "Wausau

Paper") which formerly owned and operated the Rhinelander Paper
Mill and/or retains or contractually acquired liability for the prior
ownership and operation of the Rhinelander Paper Mill.

(Am. Compl. ¶ 35.)  Plaintiffs do not allege any facts that Essity North America is incorporated or

principally operated in Wisconsin, nor any facts that Essity North America operated the paper mill.

Plaintiffs do not state any facts that could make even a prima facia showing of personal jurisdiction

over Essity North America.

Plaintiffs have the burden to state facts demonstrating that there is personal jurisdiction in

Wisconsin over Essity North America, a Delaware corporation.  *Purdue Rsch. Found*, 338 F.3d at

782 & n. 11.  A court need not consider a state's long arm statute where the exercise of personal

jurisdiction is barred by the federal guaranty of due process.  *See Matlin v. Spin Master Corp.*, 921

F.3d 701, 705 (7th Cir. 2019); *Purdue Rsch. Found.*, 338 F.3d at 780; *Invitroatgen Corp. v. Oxford

Biomedical Rsch., Inc.*, No. 08-CV-599-SLC, 2008 WL 5423207, at *2 (W.D. Wis. Dec. 30, 2008).

Plaintiffs here do not plead facts that establish general or specific jurisdiction over Essity North

America.

A.   **Plaintiffs Do Not State Facts to Establish General Jurisdiction Over Essity
     North America**

"'The standard for general jurisdiction is demanding . . . .'"  *Sonic Foundry, Inc. v. Astute

Tech.*, *LLC*, No. 13–CV–00087, 2013 WL 6148111, at *1 (W.D. Wis. Nov. 22, 2013) (citation

omitted).  General jurisdiction permits suit as to any and all of the defendant's activities, provided

the defendant's forum contacts "are so constant and pervasive as to render it essentially at home

in the forum State."  *Daimler*, 571 U.S. at 122 (cleaned up).  Plaintiffs cannot establish general

jurisdiction over Essity North America in Wisconsin based on the Supreme Court's test in *Daimler*.

There, the Supreme Court confronted an attempt to subject a foreign corporation "to a court's

general jurisdiction based on the contacts of its in-state subsidiary."  571 U.S. at 134.  The Supreme

20

Court rejected that attempt, explaining that "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id*. at 137. An entity defendant is subject to general jurisdiction only where it is "at home," which, in all but exceptional cases, will be "where it is incorporated or has its principal place of business." *Id*.

Plaintiffs do not make even a *prima facia* showing for personal jurisdiction. Plaintiffs do not allege any facts regarding any business operations of Essity North America in Wisconsin. Essity North America's only arguable, alleged connection to the case, which is alleged only by inference, is that it is a separate parent company to certain Wausau Paper Entities whom Plaintiffs claim operated the paper mill at certain times. (*See* Am. Compl. ¶¶ 35, 57–61, 117–19.) Yet even these inferences are insufficient as a matter of law to establish personal jurisdiction.

In Wisconsin, corporations are separate entities, such that one corporation cannot be held liable for the debts of another except in extraordinary circumstances. *See Consumer's Co-op. of Walworth Cty. v. Olsen*, 142 Wis. 2d 465, 474, 419 N.W.2d 211, 213 (Wis. 1988). Both the Court of Appeals for the Seventh Circuit and the Supreme Court of Wisconsin have squarely rejected general jurisdiction premised on nothing more than a parent-subsidiary relationship. "[C]onstitutional due process requires that personal jurisdiction cannot be premised on corporate affiliation or stock ownership alone." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp*., 230 F.3d 934, 946 (7th Cir. 2000). *Accord Rasmussen v. Gen. Motors Corp*., 2011 WI 52, ¶ 2, 3335 Wis.2d 1, 6, 803 N.W.2d 623, 634 (Wis. 2011) ("[T]he activities of the subsidiary corporation are insufficient to subject its nonresident parent corporation to general personal jurisdiction.")

**B.    Plaintiffs Do Not State Facts to Establish Specific Jurisdiction Over Essity North America**

The second type of personal jurisdiction—specific jurisdiction—authorizes personal jurisdiction for cases that "arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal.,* 582 U.S. 255, 263 (2017) (cleaned up). Specific jurisdiction has three requirements. First, the defendant must have purposefully availed itself of the privilege of conducting business in the forum state or purposefully directed its activities at the forum state. Second, the plaintiff's injury must have arisen out of or relate to the defendant's forum related activities. Third, the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Lexington Ins. Co*., 938 F.3d at 878. Plaintiffs do not allege facts to establish any one of these requirements.

Initially, the Amended Complaint lacks any allegations of relevant, purposeful conduct by Essity North America in the State of Wisconsin. Nor do Plaintiffs allege a constitutionally sufficient nexus between Essity North America and their alleged injuries. The second element— the nexus element—is "crucial." *Matlin*, 921 F.3d at 706. A court "cannot simply aggregate all of a defendant's contacts with a state—no matter how dissimilar in terms of geography, time, or substance—as evidence of the constitutionally-required minimum contacts." *Id.* (quotation marks omitted). As explained above, Wisconsin respects corporate distinctiveness, *Consumer's Co-op. of Walworth Cty.,* 419 N.W.2d at 214, and alleging corporate affiliation is not sufficient to establish jurisdiction. *Cent. States, Se. & Sw. Areas Pension Fund*, 230 F.3d at 946. Nor do Plaintiffs allege facts to plausibly support disregarding corporate distinctiveness or showing any principle-agent relationship between Essity North America and Wausau Paper Entities. As this Court has held, "the mere existence of a parent-subsidiary relationship between two entities is *not* enough by itself

22

to establish an agency relationship." *Meier v. Wright Med. Tech., Inc.*, No. 14–cv–505–wmc, 2015 WL 1486688, at *7 (W.D. Wis. Mar. 31, 2015) (emphasis in original).

The constitutionally required nexus between Essity North America and Plaintiffs' alleged injuries is absent in this case for the further reason that Essity North America did not acquire interest in any Wausau Paper Entity until 2016, which is years *after* the time that Plaintiffs allege that ownership and operation of the paper mill was transferred to co-defendant Ahlstrom's predecessor. (Am. Compl. ¶ 36 (alleging transfer of mill on August 12, 2013).) The Court can take judicial notice of the public record that Essity North America's predecessor, SCA Americas Inc., acquired Wausau Paper Corp. in 2016.[10] That any corporate affiliation between Essity North America and Wausau Paper Entity did not arise until years after the alleged period that any Wausau Paper Entity owned or operated the mill undercuts Plaintiffs' ability to establish constitutionally sufficient contacts for personal jurisdiction.

Because Plaintiffs do not (and cannot) allege facts that meet the due process requirements for personal jurisdiction over Essity North America, the claims against Essity North America should be dismissed.

## CONCLUSION

For the foregoing reasons, the strict liability claims and the intentional trespass and private nuisance claims against Wausau Paper Corp., Wausau Paper Mills, LLC, and Essity North

---

[10] U.S. Securities & Exch. Comm'n, Wausau Paper Corp. Form 8-K (Jan. 22, 2016) (Sertich Decl., Ex. 5), *available at* https://www.sec.gov/Archives/edgar/data/105076/000091648016000118/wp8k.htm; *see also, e.g.*, Sertich Decl., Ex. 6, *SCA's Hygiene Business Becomes Essity Following Listing on NASDAQ* (Jun. 15, 2017) https://www.prnewswire.com/news-releases/scas-hygiene-business-becomes-essity-following-listing-on-nasdaq-300474749.html. As noted above, it is proper to take judicial notice of public records.

America Inc. should be dismissed under Fed. R. Civ. P. 12(b)(6), and the claims against Essity

North American Inc. should be dismissed under Fed. R. Civ. P. 12(b)(2).

Respectfully submitted,

Dated: April 5, 2024

*s/Manda Sertich*

Manda M. Sertich (MN Bar 0504328) (admitted *pro hac vice*)
Richard D. Snyder (MN Bar 0191292) (admitted *pro hac vice*)
**Fredrikson & Byron, P.A.**
60 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Phone: (608) 453-4260
msertich@fredlaw.com
rsnyder@fredlaw.com

Delanie M. Breuer (WI Bar 1085023)
**Fredrikson & Byron, P.A.**
44 East Mifflin Street, Suite 1000
Madison, WI 53703
Phone: (608) 453-4260
dbreuer@fredlaw.com

***Attorneys for Wausau Paper Corp., Wausau Paper Mills, LLC, and Essity North America Inc.***

24