IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LUCAS ROUGEAU, *et al.*,

         Plaintiffs,         OPINION AND ORDER

   v.

                   23-cv-546-wmc

AHLSTROM RHINELANDER, LLC, *et al.*,

         Defendants.

This individual and putative class action stems from the manufacture and sale of per- and polyfluoroalkyl substances ("PFAS")[1] by defendants 3M Company and BASF Corporation, and the alleged mishandling of waste containing PFAS by the entities that owned and operated the Rhinelander Paper Mill in Oneida County, Wisconsin. Specifically, plaintiffs allege that Wausau Paper Corp. and Wausau Paper Mills, LLC, (collectively, "Wausau Paper"), as well as Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions Holdings Inc, and/or Ahlstrom NA Specialty Solutions LLC (collectively, "Ahlstrom"), improperly disposed of waste by spreading it on farmland where it could leach onto plaintiffs' properties and into their drinking water. In response, defendants Ahlstrom, Wausau Paper, and 3M have filed motions to dismiss. (Dkts. ##50, 55, 94.) For the reasons explained below, the court will deny Ahlstrom's and Wausau Paper's motions to dismiss, while granting in part 3M's motion to dismiss plaintiffs' trespass claim against it.

---

[1] Plaintiffs' complaint focuses on two types of PFAS, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"). For ease of reference, the court will generally refer to these chemicals as "PFAS."

ALLEGATIONS OF FACT[2]

All individuals named as plaintiffs, as well as all members of the named plaintiff LLCs, are Wisconsin citizens and own properties in Oneida County, Wisconsin. (Fourth Am. Compl. (dkt. #113) ¶¶ 1, 9-36.) Plaintiffs allege that defendants Wausau Paper Corp. and Wausau Paper Mills, LLC, owned and operated the Rhinelander Paper Mill until August 2013. (*Id.* ¶¶ 41-42.) Plaintiffs allege that Wausau Paper Mills, LLC has a single member, Wausau Paper Corp., a Wisconsin corporation with its principal place of business in Pennsylvania. (*Id.* ¶ 41.) Although this alone defeats complete diversity of citizenship, the court has already found that plaintiffs have adequately alleged class action jurisdiction under 28 U.S.C. § 1332(d). (Dkt. #91.)[3]

Next, plaintiffs allege that Rhinelander Paper Mill was transferred in August 2013 to defendants "Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions Holdings Inc, and/or Ahlstrom NA Specialty Solutions LLC," who now "own and/or operate" the Rhinelander Paper Mill. (*Id.* ¶¶ 38, 42.) Ahlstrom Rhinelander LLC has a single member, Ahlstrom NA Specialty Solutions, LLC, which also has a single member, Ahlstrom Specialty Solutions Holdings, Inc. Plaintiffs allege that Ahlstrom Specialty Solutions Holdings, Inc. is a Delaware corporation with its principal place of business in Connecticut. (*Id.*)

---

[2] In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court takes all factual allegations in the complaint as true and draws all inferences in plaintiffs' favor. *Killingsworth v. HSBC Bank Nev.*, 507 F.3d 614, 618 (7th Cir. 2007).

[3] None of the parties have asserted the applicability of a permissive or mandatory exception under § 1332(d)(3) or (4), respectively, based on a percentage of overall diversity of citizenship, and the court does not have to reach that issue.

Further, at the Rhinelander Paper Mill, both Ahlstrom and Wausau Paper (collectively, the "paper mill defendants") allegedly used PFAS products manufactured by defendants 3M and BASF. (*Id.* ¶ 43.) PFAS are a class of man-made, degradation-resistant chemicals that have been found "globally" in water, soil, air, and human blood serum. (*Id.* ¶¶ 50-51.) Studies suggest that exposure to certain PFAS may result in adverse impacts on human health. (*Id.* ¶ 53.) "For decades until the present," plaintiffs allege that "Annual Land Application Reports" show "Ahlstrom, Wausau Paper and their predecessors" have spread "millions of pounds" of waste sludge on farmlands without warning property owners that it was PFAS-laden nor of the dangers associated with PFAS. (*Id.* ¶¶ 70, 72.) As a result, plaintiffs allege defendants wrongfully caused their properties to be contaminated with PFAS, creating an environmental and public health hazard. (*Id.* ¶ 74.)

## OPINION

The current complaint alleges the following class and individual claims: (1) design defect and/or defective product against defendants 3M and BASF; (2) failure to warn/inadequate instructions or warnings against 3M and BASF; (3) negligence resulting in property damage against all defendants; (4) private nuisance against all defendants; (5) trespass against all defendants; and (6) strict liability for abnormally dangerous activity against defendants Ahlstrom and Wausau Paper.[4]

---

[4] Plaintiffs also allege a subclass claim for unjust enrichment against the paper mill defendants as well as individual claims for negligence resulting in personal injury against all defendants.

Before turning to the other defendants' motions to dismiss for failure to state a claim, the court will first resolve the Ahlstrom defendants' motion to dismiss Ahlstrom NA Specialty Solutions Holdings, Inc. ("Ahlstrom Holdings") for want of personal jurisdiction.[5]  For the reasons explained below, the court will deny the other defendants' motions except for dismissal of plaintiffs' trespass claims against defendant 3M.

## I.  Motion to Dismiss Ahlstrom Holdings for Lack of Personal Jurisdiction

In a perfunctory, one-page motion, Ahlstrom asks the court to dismiss Ahlstrom Holdings for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).  (Dkt. #51, at 17-18.)  Plaintiffs have the burden of making a prima facie showing that the court's exercise of personal jurisdiction is consistent with both state law and the Due Process Clause. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010); *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Since the Wisconsin long-arm statute, Wis. Stat. § 801.05, "is intended to reach to the fullest extent allowed under the due process clause," this inquiry generally collapses into one step. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1217 (7th Cir. 1990).

Plaintiffs correctly note that the court may exercise personal jurisdiction provided "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d

---

[5] Defendant Wausau Paper also moved to dismiss Essity North America Inc. on personal jurisdiction grounds (dkt. #56, at 24-28), but the parties later stipulated to dismiss Essity.  (Dkts. ##71, 72.)

4

693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).  Here, plaintiffs make a prima facie showing of personal jurisdiction by alleging that Ahlstrom Holdings conducted business in Wisconsin by owning and/or operating the Rhinelander Paper Mill, which in turn applied PFAS-laden sludge in this state.  In particular, plaintiffs allege that "Defendants Ahlstrom Rhinelander LLC, Ahlstrom NA Specialty Solutions Holdings Inc, *and/or* Ahlstrom NA Specialty Solutions LLC . . . *own and/or operate*" the Rhinelander Paper Mill, which applied sludge to Wisconsin farmland.    (Fourth Am. Compl. (dkt. #113) ¶¶ 38, 70 (emphases added).)  Ahlstrom makes much of plaintiffs' use of the phrase "and/or," but plaintiffs' pleading in the alternative alone does not do enough work to *preclude* Ahlstrom Holdings from owning or operating the Rhinelander Paper Mill at the pleading stage.  *See* Fed. R. Civ. P. 8(d)(2) (allowing parties to plead alternative statements of claims).

Alternatively, Ahlstrom points out that a holding company is not typically subject to personal jurisdiction solely based on alleged contacts in the forum state by one of its subsidiaries.  *Meier v. Wright Med. Tech., Inc.*, No. 14-CV-505-WMC, 2015 WL 1486688, at *6-7 (W.D. Wis. Mar. 31, 2015) ("the Supreme Court of Wisconsin and the Seventh Circuit have squarely rejected general jurisdiction premised on nothing more than a parent-subsidiary relationship").  As explained above, however, plaintiffs' allegations suggest that Ahlstrom Holdings is not only a parent company to the other Ahlstrom entities, but also owned and operated the Rhinelander Paper Mill.  Importantly, Ahlstrom has submitted *no* evidence disputing plaintiffs' allegation that Ahlstrom Holdings owned or operated the Rhinelander Paper Mill.  *Cf. id.* at *2 (considering declaration that

defendant was a holding company with no employees or contacts with Wisconsin).[6]  Thus, the court must deny Ahlstrom's motion to dismiss defendant Ahlstrom Holdings for lack of personal jurisdiction at this time.

## II. Motions to Dismiss for Failure to State a Claim

As for defendants' remaining motions to dismiss for failure to state a claim, the court will start with defendant 3M's argument to dismiss *all* claims against it, then address defendants' various arguments that individual claims should be dismissed.  A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.*

### A. 3M's Motion to Dismiss All Claims

Each of plaintiffs' claims against 3M requires causation.  *See* Wis. Stat. § 895.047(1)(e) (strict-liability design defect and failure to warn); *Hornback v. Archdiocese of Milwaukee*, 313 Wis. 2d 294, 305, 752 N.W.2d 862 (Wis. 2008) (negligence); *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 32, 277 Wis. 2d 635, 691 N.W.2d

---

[6] Given that Ahlstrom has submitted no evidence in support of its motion to dismiss Ahlstrom Holdings, no dispute of material fact exists to require an evidentiary hearing.  *Hyatt Int'l Corp.*, 302 F.3d at 713 (court must hold hearing to resolve disputes of fact when personal jurisdiction is challenged under Rule 12(b)(2)).

658 (private nuisance); *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 40, 328 Wis. 2d 461, 787 N.W.2d 6 (trespass).

In Wisconsin, causation has two components -- cause-in-fact and proximate cause. *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735, 275 N.W.2d 660 (1979). Although seldom a good candidate for a pleading defect, defendant 3M nevertheless focuses its motion on proximate cause. Specifically, 3M argues that even if its conduct was a cause-in-fact of plaintiffs' alleged injuries, the fourth amended complaint precludes a finding of liability because the paper mill defendants' decision to dispose of PFAS-laden waste on farms was a superseding cause.

Proximate cause is a collection of six public policy factors, including whether the plaintiff's injury is too remote from the defendant's causal negligence and allowing recovery would enter a field that has no sensible or just stopping point. *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 10, 272 Wis. 2d 46, 680 N.W.2d 345; *Cefalu v. Continental Western Ins. Co.*, 2005 WI App 187, ¶¶ 20-21, 285 Wis. 2d 766, 703 N.W.2d 743.[7] "[T]he intervening or superseding cause defense is subsumed within the" remoteness factor. *Allen v. Am. Cyanamid*, 527 F. Supp. 3d 982, 986 (E.D. Wis. Mar. 22, 2021). "A cause is superseding when it is a cause of independent origin that was not foreseeable." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 393 (7th Cir. 2018) (internal quotation marks

---

[7] The other four factors are: (1) the injury is out of proportion to the tortfeasor's culpability; (2) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm; (3) allowing recovery would place too unreasonable a burden on the tortfeasor; and (4) allowing recovery would be too likely to open the way for fraudulent claims. *Cefalu*, 2005 WI App 187, at ¶ 12.

omitted).  On a variety of levels, seeking dismissal based on a plaintiff pleading itself out of court by inferring a superseding cause would be a stretch, especially for claims of design defect, duty to warn, negligence and private nuisance.

As an initial matter, plaintiffs rightly point out that superseding cause is an affirmative defense on which 3M bears the burden of proof.  Wis. Stat. § 802.02(3) (listing affirmative defenses, including superseding cause).  While the doctrines of superseding and intervening cause are subsumed in the public policy analysis of proximate cause, particularly the factor of remoteness, *Allen*, 527 F. Supp. 3d at 986, this is no doubt part of why Wisconsin courts generally defer consideration of superseding cause and other matters requiring a balancing of public policy factors until *after trial*.  *See Thomas ex rel. Gramling v. Mallett*, 2005 WI 129, ¶ 166 n. 54, 285 Wis. 2d 236, 701 N.W.2d 523 ("In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability.")  Thus, 3M's motion to dismiss all claims against it due to a superseding cause is premature at best.

Even considering the merits of 3M's motion, plaintiffs have plausibly pleaded facts allowing not just the possibility that 3M lacks a superseding cause defense, but a reasonable inference that 3M's conduct *was* the proximate cause of their injuries.  Specifically, plaintiffs allege 3M sold PFAS products to Rhinelander Paper Mill when it *knew or should have known* that: (1) using such products would release PFAS; (2) the paper mill defendants would likely dispose of PFAS-laden waste sludge from the Rhinelander Paper Mill by spreading it on farmland; (3) when waste sludge is applied to farmland, PFAS can migrate into soils and water, resist biodegradation, and contaminate groundwater, including

8

drinking water; (4) PFAS are difficult and costly to remove from the water; and (5) if applied, PFAS would also contaminate the farmland and nearby properties, causing human exposure and health risks. (Fourth Am. Compl. (dkt. #113) ¶ 180.) By the 1970s, plaintiffs also allege that 3M knew or should have known that PFOA and PFOS specifically were toxic, migrated through the subsurface, mixed with groundwater, resisted natural degradation, rendered drinking water unsafe and/or non-potable, and could be removed from property and drinking water only at substantial expense. (*Id.* ¶ 59.) Thus, plaintiffs have plausibly alleged facts sufficient to infer that the paper mill defendants' use of its PFAS products in its manufacture of paper would require disposal of PFAS-laden sludge and its escape into the environment was reasonably foreseeable to 3M, whether on farmland or otherwise.

For its part, 3M instead emphasizes plaintiffs' allegations that at least arguably suggest the paper mill defendants' dumping of PFAS-laden sludge on farmland was *not* foreseeable to it. Specifically, 3M points to plaintiffs' allegation that "[s]preading solids and waste containing high levels of PFOA, PFOS, and other PFAS on farmland near residential drinking water sources is *not* a common practice, and is *not* in common usage." (*Id.* ¶ 160 (emphases added).) Moreover, plaintiffs also allege that disposal of PFAS-laden waste was inappropriate where there was a potential pathway to groundwater, and the paper mill defendants further broke the law by not informing the Wisconsin DNR that the sludge contained elevated and dangerous concentrations of PFAS. (*Id.* ¶¶ 69, 158.) Such allegations arguably contradict plaintiffs' other allegations that 3M knew or should have known that the paper mill defendants would spread the PFAS-laden sludge on farmland.

9

Again, however, "a party may state as many separate claims or defenses as it has, regardless of consistency" and allege inconsistent facts. Fed. R. Civ. P. 8(d)(3); *see Consistency in Pleadings Not Demanded*, 5 Fed. Prac. & Proc. Civ. § 1283 (3d ed.) ("a party may include inconsistent allegations in a pleading's statement of facts"). Regardless, at the pleading stage, plaintiffs have certainly not pleaded out 3M on causation grounds and any allocation of legal responsibility will have to await a fact intensive inquiry.

Finally, invoking another public policy factor, 3M argues that "[i]f recovery were permitted here, there would be no sensible or just stopping point to liability" because "a manufacturer who sells a product with an alleged defect can be held liable for intentional torts committed by customers who allegedly misuse the manufacturer's product, no matter how uncommon or inappropriate the customers' conduct." (Dkt. #95, at 16.) However, denying 3M's motion to dismiss is a far cry from deciding whether plaintiffs' recovery against any defendant is consistent with public policy. Hopefully, with the benefit of discovery, an answer to that question will become clear. Right now, however, the court is not remotely able to find as a matter of undisputed fact that land application of PFAS-laden waste was not foreseeable to 3M.

## B. 3M's Motion to Dismiss Strict-Liability and Negligence Claims

In a closely related argument, 3M argues that plaintiffs' strict liability and negligence claims should also be dismissed because it had no duty to guard against unforeseeable harm. To be sure, "[d]uty pivots on foreseeability." *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 51, 236 Wis. 2d 435, 613 N.W.2d 142. However, for the reasons explained in the previous section, plaintiffs have plausibly alleged that the

paper mill defendants' disposal of PFAS-laden sludge on farmland *was* foreseeable.  As a result, 3M's motion to dismiss on this basis is also premature.

### C. 3M's Motion to Dismiss Strict-Liability Claims

In addition, 3M moves to dismiss plaintiffs strict-liability claims because: (1) they are barred by Wisconsin's statute of repose; and (2) plaintiffs have not stated strict liability, design-defect and failure-to-warn claims.  The court addresses these arguments separately below.

#### 1.  Statute of Repose

3M argues that plaintiffs' strict-liability claims are barred by Wisconsin's 15-year statute of repose,[8] which states that "a defendant is not liable to a claimant for damages if the product alleged to have caused the damage was manufactured 15 years or more before the claim accrues, unless the manufacturer makes a specific representation that the product will last for a period beyond 15 years."  Wis. Stat. § 895.047(5).

Here, 3M's argument for dismissal based on Wisconsin's statute of repose is also an affirmative defense, and a motion to dismiss is typically not the appropriate mechanism for presenting such a defense.  *Hastings Mut. Ins. Co. v. Omega Flex, Inc.*, No. 21-CV-713-JDP, 2022 WL 4103934, at *2 (W.D. Wis. Sept. 8, 2022).  Rather, a court can only reach the merits of an affirmative defense under a statute of repose on a motion to dismiss when "the relevant dates that establish the defense are set forth unambiguously in the

---

[8] Here, a statute of repose would bar "any suit that is brought after a specified time since the defendant" designed or manufactured a product.  Statute of Repose, Black's Law Dictionary (12th ed. 2024)

complaint." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (alteration adopted and quotation marks omitted).  In contrast, the relevant dates remain unclear in plaintiffs' fourth amended complaint, which alleges that:  3M phased out PFOS production in 2002; 3M "will exit all PFAS manufacturing by the end of 2025"; and plaintiffs only "recently discovered" that their wells were contaminated. (Fourth Am. Compl. (dkt. #113) ¶¶ 7, 157).  Thus, the dates relevant to 3M's statute of repose defense are not unambiguously established by plaintiffs' fourth amended complaint.

Indeed, 3M relies on sources *outside* of the complaint -- the Federal Register and the Wisconsin DNR's website, which purport to contain the dates that 3M announced phase out of certain PFAS production and the Wisconsin DNR began testing wells for PFAS, respectively.  (Dkt. #95, at 18.)  While "judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment" at the pleading stage, *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012), and it appears appropriate for the court to take judicial notice of the contents of the Federal Register, 44 U.S.C. § 1507; *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003), whether the court can take judicial notice of the contents of the Wisconsin DNR's website is less clear.  *See Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997) (citing Fed. R. Evid. 201(b)) (judicial notice appropriate when fact is "not subject to reasonable dispute," *and* "either 1) 'generally known within the territorial jurisdiction of the trial court' or 2) 'capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned'"). Regardless, the court need not definitively resolve whether it can take judicial notice of such facts because 3M has not established that plaintiffs' claims

are barred by the statute of repose even considering both the Federal Register and Wisconsin DNR website.

First, Wisconsin has adopted the "discovery rule" for determining accrual of claims for tort actions, like product liability claims, which are not governed by a legislatively created discovery rule. *Hansen v. A.H. Robins, Inc.*, 113 Wis. 2d 550, 560, 335 N.W.2d 578 (1983); *see also Hastings Mut.*, No. 21-CV-713-JDP, 2022 WL 4103934, at *3 (applying discovery rule to product liability claim). Under this rule, tort claims "shall accrue on the date the injury is discovered or with reasonable diligence should be discovered." *Id.*

Second, pointing to the Federal Register in particular, 3M asserts that it announced a voluntary phase-out of "perfluorooctanyl chemistries, including PFOS" in May 2000, 68 Fed. Reg. 18626, while plaintiffs allege that 3M phased out production of PFOS in 2002 and will not have exited all PFAS manufacturing until the end of 2025. (Fourth Am. Compl. (dkt. #113) ¶ 157.) At the earliest, therefore, 3M asserts that plaintiffs' strict-liability claims accrued when the Wisconsin DNR began sampling wells for PFAS in the summer of 2022, more than 15 years after 3M had phased out PFOS production. *PFAS Contamination in the Town of Stella*, https://dnr.wisconsin.gov/topic/PFAS/Stella.html (last visited May 27, 2025).

Third, the court will still not grant 3M's motion to dismiss based on Wisconsin's statute of repose for several reasons. Most importantly, plaintiffs allege that "[d]efendants specifically represented that their PFAS products had significant periods of useful life, spanning beyond 15 years," seemingly implicating the statutory exception to the 15-year

13

period of repose.  (Fourth Am. Compl. (dkt. #113) ¶ 102); Wis. Stat. § 895.047(5).  Although 3M argues that this is just a conclusory allegation insufficient to avoid application of the statute of repose, plaintiffs also allege that PFAS persist in the environment, resist degradation, and have a long shelf life (exceeding 20-25 years), which makes plaintiffs' allegation that 3M represented that its PFAS products would last more than 15 years quite plausible, at least at the pleading stage.  (Fourth Am. Compl. (dkt. #113) ¶ 50.)  Moreover, plaintiffs allege that PFOA and PFOS are *types* of PFAS, and that 3M continues to manufacture products containing PFAS to this day, suggesting that there could be *other* types of PFAS that were manufactured and later released into the environment, so 3M having stopped production of certain types of PFAS in 2002 is not determinative of when the statute of repose period would begin for *all* PFAS.[9]  (*Id.* ¶¶ 49, 157.)

Finally, plaintiffs only allege that they "recently" discovered that their wells were contaminated.  While the Wisconsin DNR's website further appears to show "discovery" of PFAS in certain wells as occurring as early as in 2022, it does not actually specify when *plaintiffs* discovered PFAS in their wells.

## 2.    Defective Design

To state a strict-liability defective design claim, plaintiffs must allege, among other things, that:  (a) the design of 3M's PFAS products posed foreseeable risks that could have

---

[9] In fairness, 3M points out that plaintiffs' allegations center on PFOA and PFOS, but even as to this factual question, the court is far more comfortable deciding it on a more robust record, rather than on the pleadings.

been reduced or avoided by adopting a reasonable, alternative design; and (b) the omission of this alternative design stopped the products from being safe.  Wis. Stat. § 895.047(1)(a).

Here, 3M argues that since "PFAS Products" necessarily cannot be made without PFAS, its design of such products was *not* defective on their face.  *See Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶ 37, 319 Wis. 2d 91, 768 N.W.2d 674 ("defective design [claim] cannot be maintained where the presence of lead is the alleged defect in design, and its very presence is a characteristic of the product itself").  While this argument has some force, the court will not dismiss plaintiffs' defective design claim against 3M at this early stage when plaintiffs merely allege that 3M chose to manufacture, design, formulate, distribute, supply, sell, and market "*products containing* PFAS."  (Fourth Am. Compl. (dkt. #113) ¶ 94 (emphasis added).)  Should discovery reveal that PFAS are an *inherent* part of 3M's products, the result may prove fatal to plaintiffs' defective design claim.  *See Town of Westport v. Monsanto Co.*, No. CV 14-12041, 2017 WL 1347671, at *5 (D. Mass. Apr. 7, 2017) (finding at summary judgment that plaintiff's effort to premise its defective design claim on the design of plasticizers and not PCBs was a "distinction without a difference," because the plasticizers "were pure PCBs"), *aff'd*, 877 F.3d 58 (1st Cir. 2017)).  However, absent further development of the record, the court will not dismiss plaintiffs' defective design claim.

As for 3M's criticism of plaintiffs for not plausibly alleging that 3M could have manufactured a reasonable, safer substitute for PFAS -- beyond the conclusory allegation that "the foreseeable risks of harm posed by Defendants' products could have been reduced or avoided by the adoption of a reasonable alternative design by the manufacturer" (Fourth

Am. Compl. (dkt. #113) ¶ 97) -- this, too, is sufficient to state a claim.  As a general principle, a pleading that offers a "formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quotation marks omitted), and plaintiffs' allegation largely mirrors the elements of a defective design claim under Wisconsin law.  *Compare* (Fourth Am. Compl. (dkt. #113) ¶ 97) *with* Wis. Stat. § 895.047(1)(a).  However, plaintiffs also allege that 3M "phased out the production of PFOS in approximately 2002 and will exit all PFAS manufacturing by the end of 2025," which at least arguably supports an inference that reasonable, safer alternative products existed without the use of PFAS. (Fourth Am. Compl. (dkt. #113) ¶ 157.)  *See Cioni v. Samsung Elecs. Co.*, No. 23-CV-302-JDP, 2024 WL 4039788, at *2-3 (W.D. Wis. Sept. 4, 2024) (inferring that defendant Samsung could have adopted a reasonable alternative cellphone design given the ubiquity of its other models that had not caught fire).  3M fairly points out that there are many reasons that it may have phased out PFAS, but at the motion to dismiss stage, the court construes "*any reasonable inferences* in the light most favorable to the plaintiff."  *Jauquet v. Green Bay Area Cath. Educ., Inc.*, 996 F.3d 802, 807 (7th Cir. 2021) (quotation marks omitted and emphasis added).

Of course, other courts *have* dismissed similar, design defect claims.  *E.g., Ryan v. Greif, Inc.*, 708 F. Supp. 3d 148, 168-69 (D. Mass. 2023) (dismissing design defect claim against 3M in PFAS case because "[p]laintiffs have failed to allege the existence of an alternative design"); *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 578 F. Supp. 3d 511, 560 (S.D.N.Y. 2022) (dismissing defective design claim when plaintiffs did not allege that there was a safer alternative design or "that such a design would serve the

same function as the PFAS-containing products"). As explained above, however, having done more than recite the elements of a design defect claim, plaintiffs have plausibly alleged that there was a safer substitute for PFAS.

### 3. Failure to Warn

Finally, to state a failure-to-warn claim against 3M under Wisconsin law, plaintiffs must allege that the "foreseeable risks of harm posed by the product could have been reduced or avoided by the provision of reasonable instructions or warnings by the manufacturer and the omission of the instructions or warnings renders the product not reasonably safe." Wis. Stat. § 895.047(1)(a). In their fourth amended complaint, plaintiffs allege that 3M "knew, or reasonably should have known, of the foreseeable risks and defects of PFAS [p]roducts," but "failed to provide adequate warnings of the known and foreseeable risks of PFAS Products, including contamination of properties and water supplies with PFOA and PFOS." (Fourth Am. Compl. (dkt. #113) ¶ 115.) Plaintiffs further allege that: 3M failed to provide "adequate instructions regarding the use and disposal of its PFAS products"; and the harm posed by 3M's PFAS products could have been reduced or avoided by 3M providing reasonable instructions or warnings to its customers. (*Id.* ¶¶ 115, 116.) Once again, 3M criticizes these allegations for simply tracking the elements of a failure-to-warn claim, but plaintiffs also allege 3M knew or should have known since the 1970s that PFAS were toxic, mixed easily with groundwater, resisted degradation, and rendered drinking water unsafe and/or non-potable. (Fourth Am. Compl. (dkt. #113) ¶ 59.) Moreover, by the 1980s, plaintiffs alleged that 3M had published data showing that humans retained PFOS in their bodies for years, in part by

documenting increasing levels of PFOS in the bodies of its workers. (*Id.* ¶¶ 61, 63.) Despite its growing knowledge of the potential dangers with PFAS products, plaintiffs further allege that 3M failed to warn its customers of the risks and dangers of soil and groundwater contamination resulting from standard use and disposal of PFAS products. (*Id.* ¶ 66.) These allegations alone plausibly state a failure-to-warn claim.

Next, 3M asserts that plaintiffs must show a third party, including the paper mill defendants, "would have heeded a different warning." *In re Zimmer, NexGen Knee Implant Prods. Liab. Litig.*, 884 F.3d 746, 754 (7th Cir. 2018) (applying Wisconsin law) (quotation marks omitted). More specifically, 3M argues that plaintiffs affirmatively allege the *paper mill defendants* knew or should have known that disposing of PFAS-laden sludge on farmland could lead to groundwater contamination, and spreading waste containing PFAS on farmland near residential drinking water sources could threaten public health and cause contamination of property and drinking water supplies. (Fourth Am. Compl. (dkt. #113) ¶¶ 71, 157, 164.) Thus, 3M asserts the paper mill defendants already knew that disposing of PFAS-laden sludge on farmland was dangerous, making it implausible that any warning from 3M would have changed their behavior. *See Kurer v. Parke, Davis & Co.*, 2004 WI App 74, ¶ 25, 272 Wis. 2d 390, 679 N.W.2d 867 ("evidence must support a reasonable inference that the existence of an adequate warning may have prevented the injury") (citation omitted).

To begin, plaintiffs represent in their response brief that they are "legitimately in doubt" as to what the paper mill defendants knew and what (if any) warning 3M provided to them. (Dkt. #96, at 14.) Regardless, as already noted, plaintiffs are permitted to plead

alternative facts.  *See Consistency in Pleadings Not Demanded*, 5 Fed. Prac. & Proc. Civ. § 1283 (3d ed.).  And even if the paper mill defendants independently knew about the dangers of spreading PFAS-laden sludge, that fact alone does not necessarily mean that a reasonable jury could not find a warning *from 3M itself*, as the products' manufacturer, would have been *more* effective.  *See Ryan*, 708 F. Supp. 3d at 170 (explaining that, despite allegations of collusive behavior among paper manufacturing defendants, those defendants may have acted differently with a warning from 3M because such a warning would have been evidence of the paper manufacturers' knowledge of the dangers of PFAS and risks of improper PFAS disposal).  In any event, whether the paper mill defendants would have heeded a warning about the dangers of PFAS from 3M is also best resolved after the benefit of discovery.

### D. Wausau Paper's and 3M's Motions to Dismiss Private Nuisance and Trespass Claims

Plaintiffs further allege that all defendants acted intentionally and negligently in creating a private nuisance and trespassing by causing their properties and wells to become contaminated by PFAS.  In response, defendant Wausau Paper moves to dismiss plaintiffs' intent-based private nuisance and trespass claims, while 3M moves to dismiss plaintiffs' intent- *and* negligence-based private nuisance and trespass claims.  The court will deny Wausau Paper's motion and 3M's motion as to the nuisance claims but will dismiss plaintiffs' trespass claims against 3M.

### 1. Intentional Private Nuisance

Wisconsin has adopted the *Restatement (Second) of Torts'* analysis for claims of private nuisance.  *Prah v. Maretti*, 108 Wis. 2d 223, 231-32, 321 N.W.2d 182 (1982). The *Restatement* provides that:

> One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either
>
> (a) intentional and unreasonable, or
>
> (b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

*Restatement (Second) of Torts* § 822 (A.L.I. 1979).  In particular, interference with another's interest in the use and enjoyment of land is deemed "intentional" if, among other things, the actor "knows that it is resulting or is substantially certain to result from his conduct." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 37, 277 Wis. 2d 635, 691 N.W.2d 658 (quoting *Restatement (Second) of Torts* § 825).  In such a circumstance, "the 'knowledge' requirement refers to knowledge that the condition or activity is causing harm to another's interest in the use and enjoyment of land." *Id.* ¶ 38.

### a. Wausau Paper

Plaintiffs have adequately alleged an intentional private nuisance claim against Wausau Paper.  As for the first element, plaintiffs have pleaded an invasion of their interest in the private use and enjoyment of their land by alleging that defendants caused their properties and water wells to be contaminated by PFAS.  (Fourth Am. Compl. (dkt. #113)

¶ 141.)  Plaintiffs further allege that they: (1) were exposed to chemical substances by using water for drinking, cooking, bathing, and cleaning; (2) have incurred ongoing costs for investigation, remediation, treatment, and monitoring; and (3) have lost use and enjoyment of their property, including an inability to garden, drink or cook with tap water, or bathe without fear.  (*Id.* ¶ 142.)

Turning to the second element, and taking all inferences in plaintiffs' favor, they have also sufficiently pleaded that Wausau Paper's intentional interference with their interest in the use and enjoyment of land, alleging "[d]efendants knew that it was substantially certain" the spreading of "millions of pounds" of papermill sludge containing PFAS on farmland "would threaten public health and cause extensive contamination of property and drinking water supplies."  (*Id.* ¶¶ 70, 145.)  Thus, plaintiffs allege that Wausau Paper knew that its activity (applying papermill sludge containing PFAS to farmland) was causing harm to another's interest in the use and enjoyment of the land by contaminating land and water supplies.  *Milwaukee Metro. Sewerage Dist.,* 2005 WI 8, ¶ 38.

Even so, Wausau Paper argues that plaintiffs have *not* alleged it had any knowledge of PFAS in its byproduct, let alone that it knew that PFAS could travel in the groundwater to plaintiffs' properties.  Wausau Paper also suggests that 3M and BASF did not warn it about the dangers of PFAS because plaintiffs allege that "[d]efendants represented, asserted, claimed and warranted that PFAS Products did not require any special handling or precautions with respect to disposal to prevent PFAS contamination of property and human exposure."  (Fourth Am. Compl. (dkt. #113) ¶ 98.)  Still, plaintiffs also allege that Wausau Paper did not warn "property owners of the dangers associated with PFAS applied

21

to their properties, nor did they warn landowners in communities that could be affected by their waste application" (*id.* ¶ 70), at least implying that Wausau Paper did know and chose not to disclose that its waste contained PFAS and that PFAS were dangerous. Indeed, plaintiffs allege that Wausau Paper knew or should have known that (1) PFAS were dangerous and (2) disposal of PFAS on farmland could lead to groundwater contamination. (*Id.* ¶ 71.) Thus, the court will deny Wausau Paper's motion to dismiss plaintiffs' intentional private nuisance claim.

### b. 3M

3M also argues that plaintiffs' intentional private nuisance claim against it should be dismissed because plaintiffs do not allege that 3M *intended* for the paper mill defendants to dump waste containing PFAS on farmland, which could then leach into the plaintiffs' properties. Although it is a closer question, plaintiffs have adequately alleged that 3M knew since the 1970s, PFAS could "migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable." (*Id.* ¶ 59.) Plaintiffs further allege that PFAS products "cause extensive groundwater contamination when used and disposed of in a foreseeable and intended manner." (*Id.* ¶ 100.) Taken favorably to plaintiffs, those allegations allow a reasonable trier of fact to infer that 3M was substantially certain that its PFAS products sold to the paper mill defendants could contaminate plaintiffs' properties, making drinking water unsafe. While 3M points out that plaintiffs also allege that the paper mill defendants' application of PFAS-laden sludge on farmland was "inappropriate" and "not a common practice" (*id.* ¶¶ 158, 160), once again, plaintiffs are allowed to plead inconsistent facts.

22

Separately, relying on *Robert E. Lee & Assocs., Inc. v. Peters*, 206 Wis. 2d 509, 557 N.W.2d 457 (Ct. App. 1996), 3M asserts that plaintiffs cannot recover damages for alleged contamination of groundwater because that is "damage to public property, rather than private property owned by an individual." *Id*. at 522.   However, *Robert E. Lee* appears distinguishable because the Wisconsin Court of Appeals reached that conclusion in the context of an insurance coverage dispute, without deciding whether a party could recover damages for groundwater contamination in a tort case.  *Id.* at 519-22.  In any event, the court need not determine whether plaintiffs can recover for groundwater contamination at this early stage of litigation.[10]

### 2.  Intentional Trespass

Plaintiffs represent in their opposition brief that they "do not intend to proceed on a theory that 3M intentionally trespassed on their property" (dkt. #96, at 16 n.8), so the court will dismiss that claim against 3M, but this still leaves Wausau Paper's argument that plaintiffs have failed to state an intentional trespass claim against it.

To state a claim for intentional trespass, plaintiffs must allege facts showing that Wausau Paper "intentionally . . . cause[d] a thing" to enter plaintiffs' land.  *Grygiel*, 2010 WI 93, ¶ 40.  "An intent to cause injury exists where the actor subjectively intends to cause injury or where injury is substantially certain to occur from the actor's conduct."  *Gouger v.*

---

[10] 3M's motion to dismiss plaintiffs' negligence-based private nuisance claim appears premised on arguments that this court has already rejected (*e.g.*, plaintiffs did not adequately plead 3M caused their injuries and the harm to plaintiffs was not foreseeable to 3M).   (Dkt. #95, at 25 n.8.) Accordingly, the court will similarly deny 3M's motion to dismiss plaintiffs' negligence-based, private nuisance claim.

*Hardtke*, 167 Wis. 2d 504, 512, 482 N.W.2d 84 (1992); *Wisconsin Power & Light Co. v. Columbia Cnty.*, 18 Wis. 2d 39, 46, 117 N.W.2d 597 (1962) ("invasion of another's interest in land is intentional when the acts are done for the purpose of causing the invasion or when the actor knows that damage is resulting or is substantially certain to result from his conduct").

Plaintiffs have alleged that Wausau Paper caused PFAS to contaminate their properties and wells. (Fourth Am. Compl. (dkt. #113) ¶ 149.) For its part, Wausau Paper argues that plaintiffs did not adequately allege that it intentionally contaminated their properties. More specifically, Wausau Paper points out that "intent required for trespass is not merely an intention to do the act which brings about the injury, but rather an intent to act with reference to the chattel." *Wisconsin Power & Light Co. v. Columbia Cnty.*, 3 Wis. 2d 1, 8, 87 N.W.2d 279 (1958). Thus, by not pleading that Wausau Paper was even aware that PFAS-laden sludge was being applied to plaintiffs' properties, much less intended that application, means their claim of intentionality necessarily falls short. However, like their intentional private nuisance claim, plaintiffs further allege that Wausau Paper "knew that it was substantially certain" that land application of PFAS-laden sludge would "threaten public health and cause extensive contamination of property and drinking water supplies," which appears sufficient to state a claim for intentional trespass. (Fourth Am. Compl (dkt. #113) ¶¶ 70, 153.) Thus, whatever the facts may be, the court must deny Wausau Paper's motion to dismiss plaintiffs' intentional trespass claim on the pleadings.

### 3. Negligent Trespass Claim Against 3M

Defendant 3M maintains that it cannot be held legally responsible for negligent trespass of PFAS or PFAS-laden waste at the time that it contaminated plaintiffs' properties because: (1) it had already sold the PFAS-containing products to the paper mill defendants; (2) it was the paper mill defendants who chose to use those products in manufacturing paper and generating PFAS-laden waste; and (3) the paper mill defendants allegedly, improperly disposed of the waste on farmland before it leached PFAS onto plaintiffs' properties.  Moreover, plaintiffs did not respond to this specific argument, which 3M correctly points out amounts to waiver.  *Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 926 (7th Cir. 2007).  Finally, as the Seventh Circuit has explained, "[i]n accordance with the Restatement principles, courts do not impose trespass liability on sellers for injuries caused by their product after it has left the ownership and possession of the sellers." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615 (7th Cir. 1989).

Here, plaintiffs allege that 3M "manufactured, marketed, promoted, distributed, and/or sold PFAS" to the paper mill defendants, but do *not* allege that 3M owned or possessed the PFAS at the time it was applied to farmland.  (Fourth Am. Compl. (dkt. #113) ¶ 45.)  Thus, the court will dismiss plaintiffs' negligent trespass claim against 3M.

### E. Paper Mill Defendants' Motions to Dismiss Strict Liability Claims for Abnormally Dangerous Activity

Plaintiffs separately allege that defendants Ahlstrom and Wausau Paper are also subject to strict liability for applying sludge containing PFAS to farmland.  (Fourth Am. Compl. (dkt. #113) ¶¶ 155-65.) Wisconsin law imposes strict liability on those engaging

25

in "abnormally dangerous" activities when doing so results in harm to another.  *Fortier v. Flambeau Plastics Co.*, 164 Wis. 2d 639, 667-68, 476 N.W.2d 593 (Ct. App. 1991).

As an initial matter, the paper mill defendants seek dismissal of plaintiffs' strict liability claims for abnormally dangerous activity because those claims hinge on the presence of PFAS in sludge, asserting that strict liability applies to dangerous *activity*, not to dangerous *material*.  To be sure, "ultrahazardousness or abnormal dangerousness is . . . a property not of substances, but of activities."  *Indiana Harbor Belt R. Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1181 (7th Cir. 1990).  However, plaintiffs have alleged that the paper mill defendants engaged in an abnormally dangerous *activity* -- specifically the disposal of sludge containing PFAS on farmland, which they knew or should have known could contaminate the groundwater.  (Fourth Am. Compl. (dkt. #113) ¶¶ 71, 157.)  Thus, even if strict liability only applies to activities, plaintiffs have grounded their complaint on the paper mill defendants' activities:  spreading sludge containing PFAS on farmland, rather than relying solely on the presence of PFAS.  *See Ryan*, 708 F. Supp. 3d at 176 ("even if strict liability only applies to activities and not materials," strict liability claim was based on defendants' "receiving, improperly disposing, and repurposing materials the defendants know or have reason to know is toxic to humans and can migrate into groundwater," not on "the mere presence of PFAS in the materials at issue").

Moreover, the Seventh Circuit has found that the presence of allegedly dangerous substances, like PFAS, is at minimum *relevant* to determining whether an activity is abnormally dangerous.  *See Indiana Harbor Belt R. Co.*, 916 F.2d at 1181 (explaining that abnormal dangerousness is not acrylonitrile (a flammable, toxic chemical), but "the

*transportation* of acrylonitrile by rail through populated areas") (emphasis added). Similarly, the *Restatement (Second) of Torts* explains that "the storage of explosives, necessarily involve major risks unless they are conducted in a remote place or to a very limited extent." *Restatement (Second) of Torts* § 520 cmt. *g* (A.L.I. 1977). These examples suggest that the kind of materials involved in the activity is important, because transportation and storage of materials less dangerous than acrylonitrile and explosives would presumably not be considered abnormally dangerous. The paper mill defendants also point out the Maine Business and Consumer Court's dismissal of a strict liability claim in a case like this one because the complaint was "devoid of any allegations" that papermaking and operating a landfill were "inherently dangerous" aside from the presence of PFAS. *Saunders v. Sappi N. Am., Inc.*, No. BCD-CIV-2023-00033 (Me. Bus. & Consumer Ct. Jan. 2, 2024). In particular, that court found "[t]he gist of the Complaint is that PFAS is dangerous, but this is a substance, not an activity." *Id. Saunders* is obviously not binding on this court, and as already explained above, the court is unpersuaded that the presence of allegedly dangerous substances, like PFAS, is irrelevant to determining whether an activity associated with its disposal is abnormally dangerous.

The paper mill defendants warn that considering land application of material containing PFAS to be an abnormally dangerous activity would create an "intolerable" result, where virtually all commercial activity involving PFAS would automatically be considered abnormally dangerous. In fact, whatever the merit in that outcome as a matter of policy, this case is concerned with a relatively narrow *activity*: the disposal of PFAS-laden sludge by spreading it on farmland. The court having rejected defendants' attempt

27

to isolate that activity from the PFAS material involved in the activity, it remains to be seen if land application of PFAS-laden sludge is an abnormally dangerous activity for other reasons explained below.

Regardless, the court finds that plaintiffs have adequately pleaded a strict liability claim for abnormally dangerous activity.  Whether an activity qualifies as "abnormally dangerous" in the context of strict liability is determined by considering factors listed in the *Restatement (Second) of Torts* § 520 (A.L.I. 1977), including the degree of risk, the likelihood of harm, the ability to eliminate the risk with the exercise of reasonable care, extent to which the activity is uncommon, inappropriateness of the activity to the place where it is carried on, and the value of the activity to the community, among other factors. *Harrington v. Simms*, No. 21-CV-1182-SCD, 2023 WL 4034422, at *3 (E.D. Wis. June 15, 2023) (citing *Grube v. Daun*, 213 Wis. 2d 533, 570 N.W.2d 851, 856-57 (Wis. 1997)). While this determination is to be made by the court as a matter of law, the court must do so "in light of the facts presented to the court." *Ind. Harbor Belt R. Co.*, 916 F.2d at 1176 (citing *Restatement (Second) of Torts* § 520, cmt. *l* (A.L.I. 1977)); *Liebhart v. SPX Corp.*, No. 16-cv-700-jdp, 2017 WL 5054730, at *5 (W.D. Wis. Nov. 2, 2017).  More specifically, the court must consider each factor "and the weight given to each that it merits upon the facts in evidence." *Restatement (Second) of Torts* § 520, cmt. *l* (A.L.I. 1977) (emphasis added).

Here, plaintiffs have alleged that: (1) land application of waste containing PFAS is "extremely hazardous," presenting a high degree of risk to property, groundwater, private water wells, and the health of those served by private wells; (2) once released, PFAS readily

migrate into groundwater; (3) the paper mill defendants disposed of PFAS via land application, presenting "extraordinary risks to the environment due to their persistence, bioaccumulate properties, toxicity and ability to move in their environment"; (4) land application of PFAS was inappropriate where the chemicals could enter groundwater; (5) the risks of land application of PFAS cannot be mitigated where PFAS can enter the groundwater; (6) spreading PFAS-laden waste on farmland near residential drinking water is an uncommon practice; and (7) plaintiffs' water supplies were and continue to be contaminated with PFAS, exposing them to hazardous chemicals and requiring them to incur the costs of remediation.   (Fourth Am. Compl. (dkt. #113) ¶¶ 155-61.)   Thus, applying the *Restatement* factors, plaintiffs have plausibly alleged the application of sludge containing PFAS to farmland was abnormally dangerous, as an uncommon and inappropriate practice posing a high risk of harm to people or land that cannot be mitigated by reasonable care.[11]

In fairness to the paper mill defendants, there is at least some reason to doubt whether the *Restatement* factors support strict liability.  For example, plaintiffs allege that the paper mill defendants disposed of "millions of pounds of waste" by spreading it on Oneida County farmland (*id.* ¶ 2), arguably suggesting that such application was common. Further, the very existence of the Wisconsin DNR's "Interim Strategy for Land Application

---

[11] Plaintiffs also allege that defendants Ahlstrom and Wausau Paper could have used alternative products and methods without involving the use of PFAS at Rhinelander Paper Mill and that any benefits of PFAS use were outweighed by the risks of use. (Fourth Am. Compl. (dkt. #113) ¶ 157.) However, that allegation appears to focus use of PFAS in the papermaking process, instead of the application of PFAS-laden sludge to farmland.

of Biosolids and Industrial Sludges Containing PFAS" (dkt. #52-1) suggests that such an application to the land may have been common.[12]  Finally, the paper mill defendants point to cases where Wisconsin courts have concluded the *Restatement* factors suggest activities involving hazardous materials were *not* abnormally dangerous.  *E.g.*, *Grube*, 213 Wis. 2d at 545-47 (use of an underground storage tank was not an abnormally dangerous activity); *Bennett v. Larsen Co.*, 118 Wis. 2d 681, 703-05, 348 N.W.2d 540, 553 (1984) (pesticide spraying not an "ultrahazardous" activity); *Fortier*, 164 Wis. 2d at 667-75 (depositing volatile organic compounds at landfill not an abnormally dangerous activity).

Thus, while it is certainly possible that applying PFAS-laden sludge to farmland does *not* warrant strict liability under Wisconsin law, the court cannot say for certain absent a more developed evidentiary record.  *See Restatement (Second) of Torts* § 520, cmt. *l* (A.L.I. 1977) (determination of whether an activity triggers strict liability should be based upon the facts in evidence).  Thus, the court must deny the paper mill defendants' motion to dismiss plaintiffs' strict liability claim as well.

---

[12] The parties agree that the court can at least take judicial notice of the existence of the Wisconsin DNR's "Interim Strategy for Land Application of Biosolids and Industrial Sludges Containing PFAS."  (Dkt. #61, at 14.)  *See Doss v. Clearwater Title Co.*, 551 F.3d 634, 640 (7th Cir. 2008) ("narrow exception to the Rule 12(d) instructions that permits a district court to take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a motion for summary judgment").  The parties dispute whether the court can consider the substance of the exhibits that Ahlstrom provided in support of its motion to dismiss.  As explained below, however, the court is not able to resolve this issue absent discovery and further factual development.

ORDER

IT IS ORDERED that:

1) Defendants' Ahlstrom NA Specialty Solutions Holding Inc., Ahlstrom NA Specialty Solutions, LLC, Ahlstrom Rhinelander, LLC motion to dismiss (dkt. #50) is DENIED.

2) Defendants' Wausau Paper Corp. and Wausau Paper Mills, LLC motion to dismiss (dkt. #55) is DENIED.

3) Defendant 3M's motion to dismiss (dkt. #94) is GRANTED IN PART and DENIED IN PART.

Entered this 4th day of June, 2025.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge