IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

Lucas Rougeau, et al.,

        *Plaintiffs,*

      v.                                    Case No. 3:23-cv-00546-wmc

Ahlstrom Rhinelander, LLC, et al.,

        *Defendants.*

---

**MEMORANDUM IN SUPPORT OF DEFENDANT BASF CORPORATION'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STRIKE THE
CLASS ALLEGATIONS**

---

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND ................................................................................................... 3

    A. Factual Background .................................................................................. 3

    B. Procedural History .................................................................................. 6

        1. Plaintiffs file four different complaints ................................................. 6

        2. Defendants move to dismiss ................................................................ 7

        3. On their fifth try, Plaintiffs add BASF as a defendant, but include few allegations against BASF .............................................................. 9

        4. This Court largely denies Defendants' motions to dismiss ................. 10

STANDARD OF REVIEW .................................................................................. 10

ARGUMENT ..................................................................................................... 11

    I. PLAINTIFFS LACK STANDING TO SUE BASF BECAUSE THEY FAIL TO TRACE THEIR HARM TO BASF ............................................................................. 11

        A. The Complaint Does Not Allege How Any Product BASF Sold to the Rhinelander Paper Mill Could Have Reached Plaintiffs' Properties ........ 12

        B. Plaintiffs Improperly Attribute Their Harms to All Defendants Collectively and Thus Fail to Trace Any Harm Specifically to BASF or Its Products .................................................................................... 19

    II. PLAINTIFFS FAIL TO STATE A CLAIM AGAINST BASF, INCLUDING BECAUSE THEY FAIL TO ALLEGE FACTS SUFFICIENT TO TIE BASF TO THEIR ALLEGED HARM ....................................................................................................... 22

        A. Plaintiffs' Claims Trigger But Fail to Satisfy Wis. Stat. § 895.046(4) ...... 22

            1. Section 895.046(4) controls because Plaintiffs fail to identify the specific product that allegedly caused their injuries ........................... 22

            2. Plaintiffs fail the requirements of Section 895.046(4) ........................ 24

        B. Even If Section 895.046(3) Applies, Plaintiffs Fail to Allege Cause-in-Fact ..................................................................................................... 27

        C. Plaintiffs' Trespass Claims Against BASF Should Be Dismissed for the Same Reasons that This Court Dismissed Those Claims Against 3M ...................................................................................................... 32

III. In the Alternative, the Complaint's Class Allegations Should Be Stricken, For Several Independent Reasons ............................................. 33

    A. Plaintiffs Do Not and Cannot Plausibly Allege Typicality, Commonality, Predominance, or Superiority Given That Their Mass-Tort Claims—Alleging Contamination From Numerous Sources, in Multiple Locations, Over Many Years—Are Inherently Individualized ............................................................................. 37

    B. Plaintiffs Do Not and Cannot Qualify as Adequate Class Representatives, Because They Explicitly Have Waived Claims for Personal Injuries ............................................................................. 46

    C. Plaintiffs' Proposed Class Definition Constitutes an Impermissible Failsafe Class That Is Also Vague and Overbroad .................................... 49

CONCLUSION ......................................................................................... 53

## INTRODUCTION

Nearly two years into this litigation—and now on their fifth complaint—Plaintiffs have added BASF Corporation ("BASF") as a defendant. But despite the benefit of ample discovery, including documents that BASF produced in response to a third-party subpoena, Plaintiffs' latest pleading fails to allege even the most basic facts necessary to state a claim, much less to pursue one on behalf of a class, against BASF.

Importantly, the pleading defects that BASF identifies here had not been presented to the Court when it issued its June 4, 2025, opinion and order addressing motions to dismiss filed by the other defendants in this case. *See* Dkt.125. In fact, the arguments presented here are entirely consistent with this Court's June 4 analysis. Granting this motion, therefore, will not require revisiting that order in any respect.[1]

At the outset, Plaintiffs do not allege facts plausibly supporting that they have standing to press their claims against BASF. Applying Article III's "traceability" requirement, courts have consistently rejected standing in environmental cases where plaintiffs fail to allege a concrete geographic nexus between the alleged source of contamination and their property. Here, Plaintiffs offer only generalized allegations that PFAS disposal occurred somewhere in Oneida County—a region spanning over 1,100 square miles. Compounding this defect, Plaintiffs improperly

---

[1] For preservation purposes, BASF states that it agrees with and adopts the arguments set forth in 3M's brief in support of its motion to dismiss at pages 6–11, 13–18, Dkt. 95, but it does not renew those arguments here. BASF accepts them as foreclosed.

lump all Defendants together, a tactic that flies in the face of the requirement that standing be established as to each defendant individually.

Second, even if they could clear this jurisdictional threshold, Plaintiffs fail to state a claim under Wisconsin law. For starters, they ignore Wisconsin's historic tort-reform statute, which imposes heightened pleading requirements on plaintiffs who, as here, fail to identify the specific product that supposedly caused their harm. Plaintiffs fail to meet nearly every one of that law's stringent mandates, including the need to allege that their injury could have been caused only by a chemically and physically identical product, and that BASF's product was indistinguishable from others in the market. Plaintiffs also fail to allege plausibly that BASF's conduct was a substantial factor in causing their injuries.

Finally, and in the alternative to dismissal of the entire Complaint, Plaintiffs' class allegations should be stricken. Courts routinely strike class allegations on the pleadings where, as here, the face of the complaint shows that they are unsuitable for class treatment, including because they are inherently individualized. Plaintiffs' proposed class spans multiple locations, sources of contamination, and time periods, raising individualized questions of liability, causation, and damages that easily overwhelm any purported common issues. Separately, Plaintiffs are not adequate representatives because they are claim splitting, pursuing their own personal-injury claims while forswearing such claims on behalf of the putative class that will be bound by the judgment and barred by the doctrine of *res judicata* from ever raising such claims. Finally, the proposed class is an impermissible failsafe, defined in terms

of the very harm that Plaintiffs must prove to prevail, and is both vague and overbroad. Because no amount of discovery can remedy these fundamental defects, this Court need not—and should not—postpone the inevitable. At this "early practicable time," the Rule 23 gate should be closed. Fed. R. Civ. P. 23(c)(1)(A).

For all of these reasons, the Court should dismiss the claims against BASF with prejudice. In the alternative, the Court should strike Plaintiffs' class allegations with prejudice.

## BACKGROUND

### A. Factual Background

According to the Complaint, Plaintiffs, Lucas Rougeau and others, are residents of Wisconsin who own property in Oneida County, near the City of Rhinelander. Fourth Amended Complaint ("FAC") ¶¶ 1, 9–36. Plaintiffs broadly allege that their properties, including the groundwater and wells, contain widely used per- and polyfluoroalkyl substances ("PFAS Products"), including perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS"), from land application of waste from the Rhinelander Paper Mill ("Mill") onto farmland in Oneida County. *See* FAC ¶¶ 1–2. Plaintiffs assert claims against Ahlstrom, the current owner and operator of the Mill; Wausau Paper, the prior owner and operator of the Mill; and 3M, BASF, and 49 John Doe Defendants, who allegedly sold and supplied PFAS Products to the Mill. *See* FAC ¶¶ 2, 4, 38–39, 41–43, 45–46, 65.[2] The Mill was established in 1903 and was

---

[2] Solely for the sake of simplicity, BASF uses Plaintiffs' abbreviations for Defendants, including the collective abbreviations. *See, e.g.*, FAC ¶¶ 38, 41, 45–46.

acquired by Wausau Paper in 1997. FAC ¶ 67. Wausau Paper sold the Mill to Ahlstrom in 2013, and Ahlstrom operates the Mill today. FAC ¶¶ 38, 67.

The FAC alleges that, in operating the Mill, Defendants Ahlstrom, Wausau Paper, and their predecessors delivered and applied "millions of pounds" of "PFAS-laden waste sludge," "[o]ver the course of decades," on "thousands of acres" of "farmland throughout Oneida County, and specifically in the Town of Stella," in the Rhinelander area. FAC ¶¶ 2, 70. Plaintiffs allege that the Mill's manufacturing process, which involved using PFAS Products, generated the PFAS-laden waste sludge, which the Mill then provided to farms in the area "as a fertilizer for crops." *See* FAC ¶¶ 39–40, 168. Plaintiffs allege that Ahlstrom and Wausau Paper chose to landspread the PFAS-laden waste sludge even though they allegedly knew of the dangers of PFOS and PFOA and "knew that disposal of PFAS-containing waste on farmlands could lead to groundwater contamination." FAC ¶ 71. The Mill allegedly "spread the waste on farmland throughout Oneida County." FAC ¶ 2. Oneida County is nearly 50 miles long and encompasses over one thousand square miles of land (over three-quarter-million acres). *See* Oneida County, Wis., Google Maps[3]; *see also* United States Census Bureau, Oneida County, Wisconsin[4] ("Oneida County, Wisconsin has 1,113.9 square miles of land area").[5] Despite the size of Oneida County, Plaintiffs identify only one

---

[3] https://maps.app.goo.gl/5duxaVrycqfJ2LKb9.

[4] https://data.census.gov/profile/Oneida_County,_Wisconsin?g=050XX00US55085

[5] "On a motion to dismiss, 'a court may consider, in addition to the allegations set forth in the complaint itself, . . . information that is properly subject to judicial notice.'" *Yash Venture Holdings, LLC v. Moca Financial, Inc.*, 116 F.4th 651, 659 n.11

specific property where the sludge was allegedly spread: Jerome Kuczmarski's property at 2777 County Highway C, Rhinelander, Wisconsin. FAC ¶ 33. The Complaint does not identify when the sludge was spread on the Kuczmarski property, how often, or how much. *See generally* FAC.

As Plaintiffs allege, "PFOA and PFOS are stable, man-made chemicals" that are "highly water soluble" and "move easily through soil and groundwater." FAC ¶¶ 5, 50. Both have been "found globally in water, soil, and air." FAC ¶ 51. Plaintiffs allege that because these compounds "are water soluble and do not readily absorb to sediments or soil, they tend to stay in the water column and can be transported long distances." FAC ¶ 50.

According to Plaintiffs, Ahlstrom and Wausau Paper purchased some of the PFAS Products used at the Mill from 3M and BASF. FAC ¶¶ 39, 43. The Complaint alleges that "in or around 2000," 3M stopped selling PFOS-containing products, FAC ¶ 64, and that "BASF sold PFOA-containing fluorochemical products after 3M stopped selling PFOS-containing fluorochemical products to the Rhinelander Mill," FAC ¶ 65. But while the FAC alleges that 3M and BASF "designed, manufactured, marketed, and/or sold PFAS Products containing PFOA and/or PFOS," FAC ¶ 66, it never

---

(7th Cir. 2024) (citation omitted); *see also* Fed. R. Evid. 201 (judicial notice). Maps showing "general distances," including Google Maps, are judicially noticeable on a motion to dismiss for failure to state a claim. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1177 & n.3 (7th Cir. 2013), *overruled in part on other grounds by Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016). The court can also take "judicial notice of . . . government websites" at the motion-to-dismiss stage. *Vang v. Franceschi*, No. 24-CV-609, 2024 WL 4370855, at *3 n.2 (E.D. Wis. Oct. 2, 2024) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011)).

identifies any specific product, PFAS-containing or otherwise, that 3M or BASF allegedly sold to the Mill. *See generally* FAC.

## B. Procedural History

### 1. Plaintiffs file four different complaints

In August 2023, Plaintiffs filed this putative class action suit against Ahlstrom, 3M, and 49 John Doe Defendants, Dkt. 1, later adding Wausau Paper as a Defendant as well, Dkt. 29. Plaintiffs have made a number of substantive changes to their complaint since August 2023, amending it four times over the course of the past two years. Plaintiffs filed their First Amended Complaint on February 8, 2024, adding Wausau Paper as a Defendant. Dkt. 29. Plaintiffs filed a proposed Second Amended Complaint on September 25, 2024, which added additional Plaintiffs and factual allegations, modified the proposed class definition, and added three proposed subclasses. Dkt. 84-2. Because the complaint "allege[d] insufficient facts for the court to determine whether it has jurisdiction," the Court ordered Plaintiffs to file "a third amended complaint with good-faith allegations addressing" issues related to diversity jurisdiction and jurisdiction under the Class Action Fairness Act. Dkt. 85. Plaintiffs filed the requested Third Amended Complaint on October 15, 2024. Dkt. 89. Plaintiffs then filed a Fourth Amended Complaint on April 14, 2025, adding BASF as a Defendant. Dkt. 113; *see also infra* pp. 9–10.

Meanwhile, discovery commenced in April 2024. *See* Dkt. 79 (explaining that the parties held the first Rule 26(f) conference on April 22, 2024); *see also* Fed. R. Civ. P. 26(d)(1) (discovery commences after the 26(f) conference). By January 2025, the

parties represented that they had "exchanged various discovery requests and responses and have made several document productions." Dkt. 100. And Plaintiffs served a third-party subpoena, dated July 17, 2024, on BASF, requesting documents related to the purchase, order, sale, acquisition, or distribution of PFAS or PFAS-containing products to the Mill. Declaration of Vincent John Montalto ("Montalto Decl."), ¶ 2.[6] In October and November 2024, BASF produced documents in response to these requests. *Id.* ¶ 3.

## 2. Defendants move to dismiss

On March 22, 2024, and April 5, 2024, Defendants 3M, Ahlstrom, and Wausau Paper moved to dismiss all or part of Plaintiffs' First Amended Complaint. Dkts. 42, 50, 55. After Plaintiffs amended their complaint again, Defendants Ahlstrom and Wausau Paper requested that all motions and briefing associated with their motions to dismiss Plaintiff's First Amended Complaint be applied to Plaintiff's Second Amended Complaint as well. Dkt. 84. The Court ruled that it would also apply their briefing to the Third Amended Complaint. Dkt. 91.

Defendant 3M filed a separate motion to dismiss Plaintiffs' Third Amended Complaint, making several arguments. Dkts. 94, 95. First, 3M argued that Plaintiffs failed to plead proximate causation because the Third Amended Complaint contained

---

[6] Considering matters outside the pleadings does not (and cannot) transform a motion under 12(b)(1) into a motion for summary judgment. *Mack v. Resurgent Cap. Servs., L.P.*, 70 F.4th 395, 402–03 (7th Cir. 2023). In all events, courts in this district have, on a motion for judgment on the pleadings, taken judicial notice of a third-party subpoena and its response. *Loud Recs. LLC v. Minervini*, 621 F. Supp. 2d 672, 675 (W.D. Wis. 2009).

no allegation that would plausibly indicate that 3M knew or should have known that Defendants Ahlstrom and/or Wausau Paper would and did allegedly improperly dispose of PFAS-laden waste sludge from the Mill. Dkt. 95:6–10. Second, and for similar reasons, 3M moved to dismiss Plaintiffs' strict-liability and negligence claims because 3M had no duty to guard against unforeseeable harm. Dkt. 95:10–11. 3M also moved to dismiss Plaintiffs' strict-liability claims because they were barred by Wisconsin's 15-year statute of repose. Dkt. 95:11–13. Next, 3M moved to dismiss Plaintiffs' design-defect claims because Plaintiffs failed to allege a reasonable alternative design, Dkt. 95:13–16, and to dismiss Plaintiffs' failure-to-warn claims because a lack of warning made no difference to Defendants Wausau Paper and Ahlstrom, Dkt. 95:16–18. Finally, 3M moved to dismiss Plaintiffs' trespass and private nuisance claims because the Third Amended Complaint failed to allege that 3M had the requisite intent and because Plaintiffs do not have ownership of the groundwater. Dkt. 95:18–22. And 3M moved to dismiss the trespass claims because the complaint failed to allege that 3M had control over the PFAS when they allegedly entered Plaintiffs' properties. Dkt. 95:20–22.

Defendants Ahlstrom and Wausau Paper made other arguments for dismissal. They moved to dismiss Plaintiffs' strict-liability claim for abnormally dangerous activity because Plaintiffs failed to plausibly allege that land application of waste qualifies as an abnormally dangerous activity under Wisconsin law. Dkts. 51:7–17; 56:7–17. Defendant Ahlstrom also moved to dismiss because Plaintiffs failed to allege a basis for personal jurisdiction over it. Dkt. 51:17–18. And Wausau Paper moved to

dismiss Plaintiffs' intentional trespass and private-nuisance theories because Plaintiffs failed to allege sufficient facts to state a cognizable claim. Dkt. 56:18–19.[7]

### 3. On their fifth try, Plaintiffs add BASF as a defendant, but include few allegations against BASF

As explained above, *supra* pp. 6–7, Plaintiffs amended their complaint four times. Dkts. 29, 88, 89, 113. Three of these amendments took place several months after the start of discovery in April 2024. Dkts. 79, 88, 89, 113. Plaintiffs filed their FAC, the current operative complaint, on April 15, 2025. Dkt. 113. The FAC alleges two strict-liability claims (design defect and failure to warn) against 3M, BASF, and the John Doe Defendants; negligence, private nuisance, and trespass claims against all Defendants; and abnormally dangerous activity and unjust-enrichment claims against Ahlstrom and Wausau Paper. FAC ¶¶ 93–188.

In this fourth amendment to the original complaint, Plaintiffs added BASF as a defendant but made very few changes to the Third Amended Complaint. *See* Dkt. 111-5 (redline comparison of complaints). Indeed, the FAC does not contain any allegations about what PFAS Product BASF allegedly sold to the Mill, *see generally* FAC, despite Plaintiffs having had the benefit of discovery, including third-party discovery of BASF, for several months by that point. *See* Dkt. 79; Montalto Decl. ¶ 3. Instead, the FAC identifies only a broad category of products allegedly sold to the Mill—"PFOA-containing fluorochemical products." FAC ¶ 65.

---

[7] Wausau Paper also argued that Plaintiffs failed to establish personal jurisdiction over Essity, a defendant that Plaintiffs grouped with "Wausau Paper." Dkt. 56:19–23. Plaintiffs later stipulated to dismissal of Essity. Dkt. 71.

### 4. This Court largely denies Defendants' motions to dismiss

On June 4, 2025, this Court issued its Opinion and Order on Defendants' pending motions to dismiss. Dkt. 125. The Court denied Defendants Ahlstrom's and Wausau Paper's motions to dismiss entirely. Dkt. 125:31. And the Court granted in part and denied in part 3M's motion to dismiss. Dkt. 125:31. Specifically, the Court granted 3M's motion to dismiss Plaintiffs' trespass claims against it. Dkt. 125:23, 25.

## STANDARD OF REVIEW

"[T]o survive a challenge to standing under Rule 12(b)(1), a plaintiff must plead sufficient factual allegations, taken as true, that 'plausibly suggest' each of [the] elements" of standing—injury, traceability, and redressability. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016).

To avoid dismissal under Rule 12(b)(6), a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted) (alteration in original), and its well-pleaded "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level,'" *E.E.O.C. v. Concentra Health Servs. Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555). *See also Rock Hill Dairy, LLC v. Genex Coop., Inc.*, No. 19-CV-845-WMC, 2020 WL 7042837, at *2 (W.D. Wis. Dec. 1, 2020) (Conley, J.).

Dismissal with prejudice is proper where plaintiffs fail to state a claim despite multiple chances to amend and the benefit of discovery. *See Lee v. Ne. Illinois Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019); *United States ex rel.*

*Gutman v. Chicago Vein Inst.*, No. 1:16-CV-09734, 2021 WL 170674, at *7 (N.D. Ill. Jan. 19, 2021) (dismissing with prejudice where plaintiff "already had the opportunity to conduct discovery and amend [the] complaint multiple times").

Finally, when "it is clear from the pleadings that the plaintiffs may not proceed as a class" it is appropriate for the class allegations to be dismissed or stricken. *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269, 272–73 (W.D. Wis. 2013); *see also* Fed. R. Civ. P. 23(c)(1) ("At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action.").

## ARGUMENT

### I. PLAINTIFFS LACK STANDING TO SUE BASF BECAUSE THEY FAIL TO TRACE THEIR HARM TO BASF

To sue in federal court, a plaintiff must establish standing. Standing requires (1) an "injury in fact," (2) that is "fairly traceable to the defendant," and (3) "that is likely to be redressed by a favorable judicial decision." *Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023). The second element, traceability, is a "causation" analysis. *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). If the "line of causation between the illegal conduct and injury" is "too speculative or too attenuated," then the plaintiff has not established traceability. *Id.* at 383; *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013) (standing cannot be based on "a highly attenuated chain of possibilities"). Here, because Plaintiffs do not sufficiently allege that any of their injuries are traceable to BASF, they lack standing.

### A. The Complaint Does Not Allege How Any Product BASF Sold to the Rhinelander Paper Mill Could Have Reached Plaintiffs' Properties

In cases involving alleged pollution or contamination, the plaintiff must make at least "a requisite showing of geographic proximity." *Conservation L. Found., Inc. v. Acad. Express, LLC,* 129 F.4th 78, 91 (1st Cir. 2025). "Courts cannot simply presume pollution discharged in one place will affect would-be plaintiffs everywhere." *Ctr. for Biological Diversity v. E.P.A.*, 937 F.3d 533, 538 (5th Cir. 2019). Thus, "to satisfy the 'fairly traceable' causation requirement, there must be a distinction between 'the plaintiffs who lie within the discharge zone of a polluter and those who are so far [away] that their injuries cannot fairly be traced to that defendant.'" *Texas Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 973 (7th Cir. 2005) (citation omitted). In other words, the plaintiff must plausibly allege (and later show) that the property or location where the injury occurred falls within "the affected area." *Pollack v. U.S. Dep't Of Just.*, 577 F.3d 736, 740 (7th Cir. 2009) (citation omitted). Allegations that a plaintiff merely was (or is) "roughly 'in the vicinity'" of where the pollution occurred cannot support standing. *Texas Indep. Producers,* 410 F.3d at 973 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565–66 (1992)).

The permissible extent of "the affected area" for traceability purposes depends upon the type of pollution alleged. A permissible distance for air pollution is larger than a permissible distance for pollution of a waterway. *Compare Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1246 (10th Cir. 2021) (affected area could reach to state border), *with Pollack*, 577 F.3d at 741 (finding, on motion to dismiss, no traceable injury where alleged pollution was 13 miles away on

- 12 -

Lake Michigan), *and Friends of the Earth, Inc. v. Crown Ctr. Petroleum Corp.*, 95 F.3d 358, 361 (5th Cir. 1996) (no traceability when alleged harm was "18 miles downstream" from defendant). This is because "air is different than water," so "the traceability analysis must be different as well." *Conservation L. Found., Inc.*, 129 F.4th at 91. Accordingly, allegations of land-based contamination have the smallest permissible distance. Indeed, cases involving groundwater contamination often involve distances of less than a mile. *See, e.g.*, *Schmucker v. Johnson Controls, Inc.*, No. 3:14-CV-1593 JD, 2019 WL 718553, at *3 (N.D. Ind. Feb. 19, 2019) (noting "parties' experts disagree on whether [groundwater] contamination from the Johnson Controls site may ever reach the wellfield . . . a mile" away); *Forest Park Nat. Bank & Tr. v. Ditchfield*, 881 F. Supp. 2d 949, 957 (N.D. Ill. 2012) (noting that decades of pollution at dry cleaning facility led to a "groundwater contamination plume" 270 feet long); *Duffin v. Exelon Corp.*, No. CIV A 06 C 1382, 2007 WL 845336, at *1, *4 (N.D. Ill. Mar. 19, 2007) (spills of six million gallons of polluted water along underground pipeline created maximum groundwater plume of "5000 meter[s]").

Here, Plaintiffs fail to allege a geographic nexus between their properties and Defendants' alleged pollution. Plaintiffs' repeated allegations that their property was "damaged as a result of the presence of Defendants' PFAS chemicals" or that Defendants otherwise "caused" PFAS contamination do not move the needle. *See, e.g.*, FAC ¶¶ 1–3, 6, 9–36, 74, 79, 81–82. They simply repeat a legal conclusion "couched as a factual allegation." *Twombly*, 550 U.S. at 555. Causation is an "element[ ] of [each] cause of action" here, so stating that Defendants "caused" the contamination

is simply a "recitation of th[at] element[ ]." *Id.*; *see also* Wis. Stat. § 895.047 (product liability); *Hornback v. Archdiocese of Milwaukee*, 313 Wis. 2d 294, 305 (2008) (negligence); *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 2005 WI 8, ¶ 32 (private nuisance); *Grygiel v. Monches Fish & Game Club, Inc.*, 2010 WI 93, ¶ 40 (trespass).

Instead of simply reciting an element of their claims, Plaintiffs must allege facts from which a court can infer the necessary causal nexus to establish traceability. *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011) (holding that allegations must provide enough detail to "show how, in the plaintiff's mind at least, the dots should be connected," especially in complex cases (citation omitted)). As explained below, Plaintiffs fail to do so.

Plaintiffs allege that "BASF sold PFOA-containing fluorochemical products . . . to the Rhinelander Mill," FAC ¶ 65, that the Mill "generated" PFAS-laden waste sludge "by the use of PFAS Products" in its manufacturing process, FAC ¶ 134, and that the Mill disposed of that waste sludge by "dumping and spreading the waste on farmland throughout Oneida County," FAC ¶ 2. But Oneida County is nearly 50 miles wide and encompasses over one thousand square miles of land (over three-quarter-million acres). *See* Oneida County, Wis., Google Maps.[8]

---

[8] https://maps.app.goo.gl/5duxaVrycqfJ2LKb9. The Court may take judicial notice of Google Maps. *See supra* n.5.



According to Plaintiffs' own allegations, then, the potential affected area is "immense." *Pollack*, 577 F.3d at 742. But Plaintiffs provide no allegations from which one can plausibly determine in what "discrete area" within this "vast environmental area" Defendants' activities occurred. *Id.* For example, Plaintiffs allege that the Mill spread its "waste sludge over thousands of acres of farmland" somewhere in Oneida County. FAC ¶ 70. But even if the Mill spread waste on ten thousand acres, that is still little more than 1 percent of the land area in the county. That is far too small of an impact to satisfy the traceability requirement. *See Lujan*, 497 U.S. at 886–89 (no traceability where government action impacted a few thousand acres "within a two

- 15 -

million acre area," which only *might* have overlapped with areas plaintiff used "for recreational purposes and for aesthetic enjoyment").

Plaintiffs' allegation that the Mill spread the sludge "waste on farms in the Rhinelander area" suffers from the same flaw. FAC ¶ 40; *see also* FAC ¶ 70. The class area itself extends ten miles beyond the City of Rhinelander, so even if that can be considered as within the "Rhinelander area," Plaintiffs have alleged only that the Mill spread *some* sludge, at *some* time, *somewhere* within the 300 square miles (10 miles in each direction) surrounding Rhinelander. *See* Rhinelander, Wis., Google Maps.[9]



Overbroad and vague allegations about spreading occurring somewhere in a 1000- or 300- square-mile area are simply not enough. *See Lujan*, 497 U.S. at 886–89; *Pollack*, 577 F.3d at 743 (no traceability where pollution occurred near one specific park on Lake Michigan, but plaintiff alleged only that he visits parks somewhere on 70 miles of the Illinois shoreline).

---

[9] https://maps.app.goo.gl/DmiFchYR6n9e2u5h6.

Plaintiffs do allege that sludge was spread "in the Town of Stella" and provide *one* address in that area where sludge was allegedly spread: Jerome Kuczmarski's property located at 2777 County Highway C. FAC ¶¶ 2, 33. But even this property is several miles away from some of the other named Plaintiffs' properties, *see, e.g.*, FAC ¶¶ 24, 31, 34–35, and the class area extends seven miles away, FAC ¶ 83.



A distance of four or seven miles is still too far to be within the "affected area" for standing in a case alleging ground pollution, since such cases involve distances much, much smaller. *See Schmucker*, 2019 WL 718553, at *3; *Forest Park Nat. Bank & Tr.*, 881 F. Supp. 2d at 957.

What is more, Plaintiffs supply no factual allegations about when the sludge was spread on the Kuczmarski property, how many times, or in what quantities. *See* FAC

¶¶ 33, 167, 169.[10] Nor do Plaintiffs provide allegations sufficient to infer that any PFAS contained in that sludge could have travelled to an adjacent property, let alone one several miles away. Plaintiffs allege that "sandy soil conditions . . . exist in the Wisconsin region in and around Rhinelander" and that "[s]andy soil is known for its high permeability, which influences how contaminants in the sludge migrate into groundwater." FAC ¶¶ 68, 176. But the allegation that soil type "influences" migration is not enough to explain how migration occurs over long distances—if it is possible at all. *Cf. Schmucker*, 2019 WL 718553, at *3; *LAJIM, LLC v. Gen. Elec. Co*, No. 13 CV 50348, 2017 WL 3922139, at *7–8 (N.D. Ill. Sept. 7, 2017) (noting that certain geographic features, such as creeks, can function as a "groundwater divide"). There are therefore no allegations from which a court can infer, plausibly, that sludge spread at the Kuczmarski property affected even the groundwater on neighboring property—let alone properties miles and miles away. While it might be possible that PFAS spread to groundwater on and around the Kuczmarski property, a "mere possibility" is not enough. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).[11]

---

[10] Indeed, as discussed *infra* pp. 30–31, Plaintiffs appear to allege that BASF sold PFAS-containing products to the Mill during only a portion of the time in which sludge was spread. Thus, without knowing when the sludge was allegedly spread on the Kuczmarski property, it is impossible to know whether PFAS from a BASF product was even in that sludge and thus impossible to trace any harm from this landspreading to BASF.

[11] Plaintiffs' failure to provide additional factual allegations is especially concerning because the Complaint expressly states that Plaintiffs rely on "Annual Land Application Reports" to claim that the Mill spread sludge over "thousands of acres of farmland." FAC ¶ 70. Yet, despite highlighting the availability of that information, Plaintiffs fail to include any details from those reports in the FAC.

**B. Plaintiffs Improperly Attribute Their Harms to All Defendants Collectively and Thus Fail to Trace Any Harm Specifically to BASF or Its Products**

When a suit involves multiple defendants, "the plaintiff must tie his injury to each defendant"—on an individual basis. *In re E. I. du Pont de Nemours & Co. C-8 Pers. Inj. Litig.* ("*E. I. du Pont de Nemours*"), 87 F.4th 315, 320 (6th Cir. 2023) (internal quotation marks omitted); *Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017). "Standing is not dispensed in gross," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), meaning that a plaintiff may not try to establish traceability by treating multiple defendants as a "unified whole." *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). And that makes sense: the fact that one person has wronged a plaintiff does not give that plaintiff "a license to sue anyone" (or everyone) for that injury. *E. I. du Pont de Nemours*, 87 F.4th at 320. Instead, "the standing inquiry must be evaluated separately as to each defendant." *Disability Rts. S.C. v. McMaster*, 24 F.4th 893, 900 (4th Cir. 2022); *see, e.g.*, *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-CV-0818, 2025 WL 553696, at *4 (N.D. Ill. Feb. 19, 2025) (plaintiffs satisfied traceability by identifying the "specific hair relaxer products they use or used"). Distinguishing between potential sources of harm is especially important in the PFAS context, where "thousands of companies . . . have manufactured chemicals of this general type over the past half-century." *E. I. du Pont de Nemours*, 87 F.4th at 320.

The Sixth Circuit's decision in *E. I. du Pont de Nemours* shows how this traceability principle applies to mass-tort actions against multiple defendants. There, the plaintiff sued ten companies, alleging "that 'Defendants' manufactured and

distributed 'one or more PFAS materials, including in Ohio and this District, in such a way as to cause the contamination of Plaintiff's and the class members' blood.'" 87 F.4th at 321 (quoting complaint). The Sixth Circuit held that the plaintiff's injury was not traceable to the defendants because the complaint "treat[ed] the defendants as a collective." *Id.* at 320. The court explained that, even in the mass-tort context, a plaintiff "cannot sue ten defendants—by lumping them all together in his allegations—when the more particular facts would allow him to proceed against only one. (Much less none.)" *E. I. du Pont de Nemours*, 87 F.4th at 320.

Repeating the kind of error condemned in *E. I. du Pont de Nemours*, Plaintiffs fail to trace any harm to BASF. Their allegations instead treat Defendants (particularly the manufacturers) as a collective whole, not as distinct entities. *See E. I. du Pont de Nemours*, 87 F.4th at 320. Plaintiffs allege that their properties were "damaged as a result of the presence of *Defendants'* PFAS chemicals," FAC ¶¶ 9–36 (emphasis added), but never allege that BASF—apart from the other Defendants—damaged any of their properties. Some Plaintiffs allege that "[e]xposure to Defendants' PFAS" caused or contributed to personal injuries, but none of them allege that the harm was traceable to a BASF product. *See* FAC ¶ 184. Plaintiffs' collective allegations are insufficient.

Nor does the fact that Plaintiffs allege that BASF sold "PFOA-containing fluorochemical products" to the Mill satisfy the traceability requirement. FAC ¶ 65. To properly allege that an injury is traceable to BASF, Plaintiffs must (1) tie their injuries specifically to BASF, rather than to the Defendants as a collective, *E. I. du*

*Pont de Nemours*, 87 F.4th at 320, and (2) show that there is a "plausible pathway" by which BASF "could have delivered" PFAS to their properties, *id.* at 321. These are separate requirements. *Id.* at 320. Plaintiffs attempt to establish a "pathway" by alleging that some Defendants, including BASF, sold "PFOA-containing fluorochemical products" to the Mill, at different times, and that the Mill "delivered and applied PFAS-laden waste sludge" in different areas of the county where Plaintiffs live, at different times, over multiple decades. FAC ¶¶ 65–70. As explained above, those allegations do not plausibly suggest that any BASF product ever reached any Plaintiff's property, so they have also failed to establish a plausible pathway. *See supra* Part I.A. But even if Plaintiffs were to allege a "plausible pathway" as to Defendants collectively, that would not cure their traceability problem, because it would still fail to tie their injuries individually "to each defendant." *E. I. du Pont de Nemours*, 87 F.4th at 320. Plaintiffs cannot simply allege that BASF products reached the Mill since, from there, they might never have reached Plaintiffs' properties. They must tie a BASF product to *their* properties, and they have failed to do so. Indeed, Plaintiffs have failed to do so even after receiving BASF's responses to their third-party subpoena that requested production of documents "that relate to the marketing, purchase, order, sale, acquisition, or distribution of PFAS or PFAS-Containing Product(s) to the Rhinelander Paper Mill." Montalto Decl. ¶¶ 2–3.

- 21 -

II.    **PLAINTIFFS FAIL TO STATE A CLAIM AGAINST BASF, INCLUDING BECAUSE THEY FAIL TO ALLEGE FACTS SUFFICIENT TO TIE BASF TO THEIR ALLEGED HARM**

In Wisconsin, claims against a product manufacturer—for any sort of harm—are governed by Wis. Stat. § 895.046. *See* Wis. Stat. § 895.046(2). It imposes difficult-to-satisfy requirements when, as here, the complaint fails to name a specific product. *See id.* § 895.046(4). Plaintiffs fail nearly every requirement. And even if Plaintiffs had named a specific BASF product, they would still fail to allege plausibly cause-in-fact. BASF's actions were not a "substantial factor" in their injuries: Plaintiffs do not allege facts that show plausibly how BASF's product reached their properties or how BASF's actions had any effect given the Mill's alleged longstanding, persistent practice of spreading PFAS-laden waste sludge.

**A. Plaintiffs' Claims Trigger But Fail to Satisfy Wis. Stat. § 895.046(4)**

**1. Section 895.046(4) controls because Plaintiffs fail to identify the specific product that allegedly caused their injuries**

Under Wisconsin law, "all actions in law or equity" alleging that a "manufacturer, distributor, seller, or promoter of a product is liable for an injury or harm to a person or property" must comply with the requirements of Section 895.046. Wis. Stat. § 895.046(2). The statute covers not only product-liability claims but also "all related or independent claims," including negligence, nuisance, trespass, and other torts. *Id.*; *see also R.S.B. by & through Hammar v. Merck & Co.*, No. 20-C-1402, 2021 WL 6113765, at *3–*5 (E.D. Wis. Dec. 27, 2021) (applying statute in diversity case).

Plaintiffs' action is governed by Section 895.046. Plaintiffs allege, among other things, that BASF is a "manufacturer . . . of a product" and as such "is liable" for

injuries to a "person or property," including because the product's "design, manufacture, distribution, sale, or promotion of, or instructions or warnings . . . caused or contributed to a personal injury or harm to a person or property, a private nuisance, or a public nuisance, and . . . related or independent claims . . . ." Wis. Stat. § 895.046(2); *see* FAC ¶¶ 39, 65, 93–109 (strict liability - design defect), 110–24 (strict liability - failure to warn), 125–39 (negligence – property damage), 140–46 (private nuisance), 147–54 (trespass), 174–88 (negligence - personal injury). Hence Plaintiffs' "claims fall easily within the ambit of [§ 895.046(2)] and are, therefore, governed by § 896.046." *Frase v. Ashland Chem. Co. Div. of Ashland*, No. 19-CV-273-WMC, 2020 WL 1974190, at *3 (W.D. Wis. Apr. 24, 2020) (Conley, J.).

Determining which of the statute's requirements apply turns on whether the complaint includes a "specific product identification." Wis. Stat. §§ 895.046(3), (4). If the complaint fails to identify "the specific product alleged to have caused the claimant's injury or harm," *id.* § 895.046(3), then subsection (4) governs and places several additional requirements on a would-be plaintiff beyond the elements of the underlying tort or product-liability claim, *see id.* § 895.046(4).

Section 895.046(4) governs here. Plaintiffs fail, in two respects, to allege that a specific product caused their harms. *First*, they do not even identify a specific BASF product. They refer only to a broad *category* of products—"PFOA-containing fluorochemical products," FAC ¶ 65—which comprises "thousands of different compounds" made by "thousands of companies . . . over the past half-century," *E. I. du Pont de Nemours*, 87 F.4th at 318–19. Nowhere in their FAC do Plaintiffs even

- 23 -

*name* a specific BASF product (despite discovery in this case having been ongoing for several months). *See Frase*, 2020 WL 1974190, at *3–*5.

*Second*, even if Plaintiffs had identified a specific BASF product sold to the Mill, they fail to allege that this product—as opposed to a product created by someone else—caused their harm. Generally, "an injured plaintiff is required to identify the particular manufacturer of the product that caused the injury." *Godoy ex rel. Gramling v. E.I. du Pont de Nemours & Co.*, 2009 WI 78, ¶ 22 (lead op.). But Plaintiffs allege only that they were harmed by some combination of "PFAS compounds" and that Defendants—or at least some of them—were the source of that contamination. *See* FAC ¶ 105 ("Plaintiffs' water supplies were and continue to be contaminated with PFOA, PFOS, and other PFAS compounds"); FAC ¶¶ 120, 142, 150 ("with PFAS, including PFOA and PFOS"); FAC ¶ 135 ("with PFAS compounds, including PFOA and PFOS"); FAC ¶ 184 ("Exposure to Defendants' PFAS has caused or was a substantial factor in causing [personal injury].").

Because none of these allegations is specific to BASF or any other Defendant, the requirements of Wis. Stat. § 895.046(4) are triggered.

## 2. Plaintiffs fail the requirements of Section 895.046(4)

Section 895.046(4) provides that, if a plaintiff does not identify the specific product that caused his harm, he must allege (and later prove) the following elements:

> 1. That no other lawful process exists for the claimant to seek any redress from any other person for the injury or harm.
>
> 2. That the claimant has suffered an injury or harm that can be caused only by a manufactured product chemically and physically identical to the [allegedly harmful product].

3. That the [defendant] manufactured, distributed, sold, or promoted a complete integrated product, in the form used by the claimant or to which the claimant was exposed, and that meets all of the following criteria:

> a. Is chemically and physically identical to the [allegedly harmful product].

> b. Was manufactured, distributed, sold, or promoted in the geographic market . . . [and] during the [relevant] time period . . . .

> c. Was distributed or sold without labeling or any distinctive characteristic that identified the manufacturer, distributor, seller, or promoter.

Wis. Stat. § 895.046(4)(a). More, the plaintiff bringing such an action must "name[ ], as defendants, those manufacturers of a product who collectively manufactured at least 80 percent of all [identical] products sold in this state during the relevant production period . . . ." *Id.* § 895.046(4)(b).

Plaintiffs fail at least six of these seven requirements.

**(a)1. Other lawful process.** Plaintiffs cannot pursue BASF under Section 895.046(4) because they can sue the Mill for the same injuries that they attribute to BASF and the other manufacturers. And even though Plaintiffs rely on different theories of liability as to the different Defendants, they sue all for the same personal and property "injury or harm." Wis. Stat. § 895.046(4)(a)1.

**(a)2. Unique injury.** Plaintiffs have not alleged that the injuries they have suffered can be "caused only by" PFOA-containing fluorochemical products. Thus, they fail to satisfy Wis. Stat. § 895.046(4)(a)2.

**(a)3. Completely integrated product.** Section 895.046(4)(a)3. eliminates liability for component-part sellers. Under the old regime, a manufacturer of a product could be liable for harm "caused by a product into which the component is integrated [when] the component is defective . . . and the defect causes the harm." Restatement Third of Torts: Prod. Liab. § 5 (1998); *see Godoy*, 2009 WI 78, ¶ 53 (lead op.). Under subsection (4)(a)3., however, only the manufacturer or seller of the final, "complete integrated product, in the form used by the claimant or to which the claimant was exposed" can be subject to liability. Wis. Stat. § 895.046(4)(a)3.

This provision prevents Plaintiffs from suing BASF. They allege harm from the spreading of paper-mill sludge—a waste product produced by the Mill, not BASF. FAC ¶ 70. Specifically, Plaintiffs allege that the paper-mill sludge was provided as a fertilizer and that PFAS from the PFAS Products were a harmful component of the sludge. FAC ¶¶ 70, 168. Because subsection (4)(a)3. eliminates component-part liability, it bars Plaintiffs' claims against BASF.

**(a)3.a. Chemically and physically identical product.** Plaintiffs have not alleged that BASF's product is "chemically and physically identical" to the product that caused them harm. In fact, they allege the opposite. They allege that "PFAS Products" are distinct from "PFAS compounds" (including "PFOA" and "PFOS"), and they allege that they were injured only by the latter. *See, e.g.*, FAC ¶ 6. In particular, they assert that "PFAS compounds readily escape from PFAS Products" and that the "use and disposal of PFAS Products and PFAS waste . . . cause PFOA, PFOS, and

- 26 -

other PFAS to contaminate properties and water supplies," the basis of the alleged injuries. FAC ¶¶ 100, 129.

On top of this, Plaintiffs have not alleged that all of Defendants' PFAS Products were identical. Instead, they allege that BASF sold "PFOA-containing fluorochemical products," and that "3M and BASF" "sold PFAS Products containing PFOA and/or PFOS." FAC ¶¶ 65–66. If any one of those different products could have been the cause of their harm, Plaintiffs must plausibly allege (and later show) that all of Defendants' PFAS Products were identical. Plaintiffs' silence on the chemical and physical makeup of Defendants' products thus dooms their claims.

**(a)3.c. Labeling or distinct characteristics.** As with subsection (a)3.a., Plaintiffs fail to grapple with this issue. *See generally* FAC. They do not identify even which of BASF's products they believe caused their harm, and they do not explain why that product would be unidentifiable. *See* Wis. Stat. § 895.046(4)(a)3.c.

**(b) 80-percent market share.** Finally, Plaintiffs have failed to allege that Defendants had 80 percent of the Wisconsin market share in PFOA-containing fluorochemical products during the relevant time period. *See generally* FAC; *see* Wis. Stat. § 895.046(4)(b).

## B. Even If Section 895.046(3) Applies, Plaintiffs Fail to Allege Cause-in-Fact

Even if Plaintiffs were to identify a specific BASF product and so could proceed under Section 895.046(3), their claims would still fail because they do not and cannot sufficiently allege actual causation ("cause-in-fact"). As this Court recently explained when addressing 3M's "motion on proximate cause," "causation has two components

-- cause-in-fact and proximate cause." Dkt. 125:7 (citing *Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis. 2d 723, 735 (1979)). Putting proximate cause entirely aside, Plaintiffs have not alleged that BASF was the "cause-in-fact" of their injuries.

The test of actual causation in Wisconsin is whether the defendant's "act was 'a substantial factor in producing' the plaintiff's injury." *Skindzelewski v. Smith*, 2020 WI 57, ¶ 8 (quoting *Morden v. Cont'l AG*, 2020 WI 51, ¶ 60). In other words, there must be a "nexus" between the defendant's action and the plaintiff's harm. *Morden*, 2000 WI 51, ¶ 60. And a "mere possibility" of causation "is not enough." *Zielinski*, 2003 WI App 85, ¶ 16 (quoting *Merco Distrib. Corp. v. Com. Police Alarm Co., Inc.*, 84 Wis. 2d 455, 460 (1978)).

Plaintiffs fail to plead cause-in-fact here in two respects. *First*, they do not allege how any BASF products could have ever reached their properties. The geographic-connection arguments for why Plaintiffs lack standing, described at length in Part I.A., apply equally to cause-in-fact. Although, as this Court recently pointed out, the Plaintiffs did allege that the Mill "used PFAS products manufactured by defendants 3M and BASF" and "spread 'millions of pounds' of waste sludge on farmlands," Dkt. 125:3 (citing FAC ¶¶ 43, 70, 72, 180), Plaintiffs' allegations still fall short of demonstrating plausibly that BASF's PFAS reached their particular properties. Plaintiffs allege only that the Mill spread sludge somewhere in Oneida County, including "in the Rhinelander area" and in the Town of Stella. FAC ¶¶ 2, 40, 44. But Oneida County encompasses over a thousand square miles of land. *See supra* p. 4. And while Plaintiffs allege that the Mill spread sludge on one Plaintiff's property

- 28 -

within the class area, they do not say—at least for that particular property—when the sludge was spread, for how long, or how much. *See generally* FAC. Spreading on that property may have occurred before or after BASF sold products to the Mill. So it is *possible* that the Mill spread sludge close enough to Plaintiffs to affect them, and it is *possible* that it happened during the time that BASF was selling "PFOA-containing fluorochemical products" to the Mill, FAC ¶ 65, but possible "is not enough," *Zielinski*, 2003 WI App 85, ¶ 16 (citation omitted).

Plaintiffs' assertions that the "PFAS chemicals" on their properties came from Defendants do not make up for those deficiencies. FAC ¶¶ 9–36, 184. Those allegations are legal conclusions. As explained above, *supra* pp. 13–14, Plaintiffs' threadbare assertions that Defendants "caused" PFAS contamination are simply repeated recitations of an element of their claim. But under the *Twombly/Iqbal* pleading standard, a plaintiff's allegations must provide enough detail to "show how, in the plaintiff's mind at least, the dots should be connected." *McCauley*, 671 F.3d at 616–17 (citation omitted). To connect the dots for cause-in-fact, Plaintiffs must allege facts to plausibly suggest how the PFAS on their property can be traced back to BASF, as opposed to someone else. *Morden*, 2000 WI 51, ¶ 60. The allegation that that the PFAS came from BASF asserts only that the dots are already connected, which makes it a legal conclusion insufficient to withstand a motion to dismiss. *McCauley*, 671 F.3d at 616–17.

*Second*, even if Plaintiffs had sufficiently alleged that they *were* exposed to a BASF product (they do not come close), they still fail to allege that BASF's actions were a

substantial factor in causing their harm. Although "there can be more than one substantial factor contributing to the same result," *Morgan*, 87 Wis. 2d at 735, a defendant's act does not qualify as a "substantial factor" when the allegations present "two [or more] possible inferences," some of liability and others of nonliability, and provide no facts "upon which the trier of fact can base a reasoned choice between" those possibilities. *Zielinski*, 2003 WI App 85, ¶ 16 (quoting *Merco*, 84 Wis. 2d at 458–59, 460). Put another way, if the allegations show that "the harm would have occurred anyway," then the defendant's act cannot qualify as a "substantial factor" contributing to the plaintiff's injury. *Emer's Camper Corral, LLC v. Alderman*, 2020 WI 46, ¶ 21 (citation omitted).

So too here. Plaintiffs allege only the possibility that BASF might (or might not) have caused them any harm.[12] To start, Plaintiffs appear to allege that, before BASF ever sold any PFAS product to the Rhinelander Paper Mill, the Mill had already been spreading "PFAS-laden waste sludge to landowners in the area." FAC ¶¶ 64–65, 70.[13] In other words, Plaintiffs allege that they were exposed to "PFAS Products and/or PFAS waste streams," FAC ¶ 134, before BASF ever sold any PFAS Product to the

---

[12] Plaintiffs' conclusory allegations that "[e]xposure to Defendants' PFAS" was a "substantial factor" in causing their injuries, *see* FAC ¶¶ 10, 17, 20, 29, 30, 32, 36, 184, is a legal conclusion that cannot save the Complaint from dismissal, *see McCauley*, 671 F.3d at 616–17.

[13] The FAC is not a model of clarity on several crucial timing issues, *see* FAC ¶ 64–65, which creates additional problems for this Complaint. *Stanard v. Nygren*, 658 F.3d 792, 798 (7th Cir. 2011) (when a complaint is "too confusing to determine the facts that constitute the alleged wrongful conduct, dismissal is an appropriate remedy").

Mill, FAC ¶¶ 64–65, so the harms Plaintiffs assert not only "would have occurred anyway," but had *already* occurred. *Emer's Camper Corral, LLC*, 2020 WI 46, ¶ 21 (citation omitted).

More, given the allegations in the FAC, Plaintiffs would have suffered the same harm even if BASF had never sold, or had stopped selling, "PFOA-containing fluorochemical products." FAC ¶ 65; *see also* FAC ¶ 66. The allegations suggest that the Mill would have continued to spread PFAS-laden sludge, and thus continued to expose Plaintiffs to PFAS, regardless of whether BASF sold those materials. Plaintiffs allege that the Mill "knew or should have long known of the dangers associated with PFAS" and "knew that disposal of PFAS-containing waste on farmlands could lead to groundwater contamination," FAC ¶ 71, yet chose to purchase PFAS Products and spread them on farmland anyway. Plaintiffs also allege that after "3M stopped selling PFOS-containing fluorochemical products in or around 2000," the Mill simply found a new supplier and continued its spreading of sludge on farmland. FAC ¶ 64. If anything, the allegations show that the only "reasoned choice" between the possibilities of what the Mill would have done if BASF had not sold PFAS Products is that the Mill would have spread PFAS-laden waste sludge regardless. *Zielinski*, 2003 WI App 85, ¶ 16 (citation omitted). As a result, BASF's actions could not be a substantial factor in Plaintiffs' harm.[14]

---

[14] The sole exception to this argument is Plaintiffs' failure-to-warn claim. As this Court explained, a reasonable jury could find that "a warning *from* [the product's manufacturer] *itself* . . . would have been *more* effective" at deterring the Mill's land application of sludge than the Mill's own knowledge that such spreading was

### C. Plaintiffs' Trespass Claims Against BASF Should Be Dismissed for the Same Reasons that This Court Dismissed Those Claims Against 3M

As described above, 3M moved to dismiss Plaintiffs' intentional and negligent trespass claims because the complaint does not allege that 3M had control over the PFAS Products that allegedly entered Plaintiffs' properties, and because Plaintiffs failed to allege that 3M intended for Ahlstrom and Wausau Paper to spread waste containing PFAS Products. Dkt. 95:24–28. The Court dismissed Plaintiffs' intentional trespass claim against 3M because Plaintiffs represented in their opposition brief that they "do not intend to proceed on a theory that 3M intentionally trespassed on their property." Dkt. 125:23 (quoting Dkt. 96:16 n.8). And the Court dismissed Plaintiffs' 3M negligent trespass claim against 3M because while Plaintiffs alleged "that 3M 'manufactured, marketed, promoted, distributed and/or sold PFAS' to the paper mill defendants," they "do *not* allege that 3M owned or possessed the PFAS at the time it was applied to farmland." *Id*. at 25 (quoting FAC ¶ 45).

The trespass claims against BASF should be dismissed for the same reasons. Plaintiffs "do not allege that [BASF] owned or possessed the PFAS at the time it was applied to farmland." Dkt. 125:25 (emphasis omitted); *see* FAC ¶¶ 45–46. Their claims for negligent trespass should therefore be dismissed. Dkt. 125:25. And, if Plaintiffs do not similarly disclaim an intentional-trespass claim against BASF, this

---

dangerous. Dkt. 125:19. But this exception does not apply to BASF's earlier argument because, regardless of whether BASF's warning would have stopped the Mill's land application, the harm had already occurred. BASF thus could not have been a substantial factor in causing that harm. *See supra* pp. 30–31. Therefore, Plaintiffs have failed to allege facts sufficient to suggest causation even as to this claim.

claim should be dismissed for the same reason as well. As 3M explained in its briefing, "the 'general consensus' is that 'ownership or control of the intruding instrumentality is dispositive of an actor's trespass liability.'" Dkt. 95:26–27 (quoting *Parks Hiway Enters., LLC v. CEM Leasing, Inc.*, 995 P.2d 657, 664 (Alaska 2000)). Because Plaintiffs do not allege that BASF had such control or ownership, any trespass claim (whether intentional or negligent) must be dismissed.[15]

## III.  IN THE ALTERNATIVE, THE COMPLAINT'S CLASS ALLEGATIONS SHOULD BE STRICKEN, FOR SEVERAL INDEPENDENT REASONS

Facially insufficient class allegations can and should be dismissed or stricken at the pleading stage. *Ladik*, 291 F.R.D. at 269, 272–73 (granting this relief); *Beyer v. Michels Corp.*, No. 21-cv-514-pp, 2022 WL 901524, *9 (March 28, 2022) (same); *see also* Fed. R. Civ. P. 23(c)(1). Class allegations are facially insufficient when "the complaint [makes] it clear that class certification is inappropriate," *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013), or, in other words, "no amount of discovery or time could provide support for class status for the claims pleaded," *Jones v. BRG Sports, Inc.*, No. 18 C 7250, 2019 WL 3554374, at *3 (N.D. Ill. Aug. 1, 2019) (granting motion to strike upon concluding that individual questions of

---

[15] As explained above, BASF adopts for purposes of preservation only Defendant 3M's arguments in favor of dismissal made in its Motion to Dismiss, with the exception of 3M's argument for dismissal under the statute of repose. Dkt. 95:12–17, 19–28; *Vazquez v. Cent. States Joint Bd.*, 547 F. Supp. 2d 833, 867 (N.D. Ill. 2008) (acknowledging parties may adopt the motion of another party "when the facts between the parties are essentially the same and the adoption would promote judicial efficiency") (citation omitted). BASF acknowledges that under the Court's June 4, 2025, Opinion and Order (Dkt. 125), these arguments are now foreclosed, and BASF does not ask the Court for their reconsideration.

causation and injury predominated with respect to claims of negligence and products liability claims); *see Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

When presented with a motion to strike class allegations, courts ask whether "plaintiffs' allegations are sufficient to show that it is plausible that plaintiffs will be able to satisfy the Rule 23 requirements after conducting discovery." *Ladik*, 291 F.R.D. at 269; *see also Bruzek v. Husky Energy, Inc.*, No. 18-CV-697-WMC, 2019 WL 4855072, at *7 (W.D. Wis. Sept. 30, 2019) (Conley, J.) (applying this standard). Unlike when deciding a motion to dismiss for failure to state a claim, however, a court "is not *required* to take the alleged facts as true when determining whether to strike class allegations." *Bruzek*, 2019 WL 4855072, at *7 (citing *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 677 (7th Cir. 2001)).

Rule 23 imposes two sets of requirements. *First*, Rule 23(a) demands that the "named plaintiffs" establish "numerosity, commonality, typicality, and adequate representation" to represent the "class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (citing Fed. R. Civ. P. 23(a)). *Next*, "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Suits that "seek[ ] money damages on behalf of the class, based on common questions, . . . may proceed only under Rule 23(b)(3), which requires both that common questions

predominate and that the class form is superior to other ways of adjudicating the case." *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017).[16]

The prerequisites of commonality (as well as, by extension, predominance) and typicality "tend to merge." *Dukes*, 564 U.S. at 349 n.5 (citation omitted). Commonality asks whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] putative class-action plaintiff must identify a common question, the answer to which 'will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 801 (7th Cir. 2017) (citing *Dukes*, 564 U.S. at 350). Having a "common contention" only in *theory* is not enough: a plaintiff also must show the existence of some factual "glue" holding otherwise individualized claims together. *Phillips v. Sheriff of Cook Cnty.*, 828 F.3d 541, 550, 557 (7th Cir. 2016) (citation omitted).

Predominance is "more stringent" and "far more demanding" than the commonality requirement of Rule 23(a)(2), "test[ing] whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 609, 623–24. "Predominance is not satisfied if 'individual questions . . . overwhelm questions common to the class.'" *Bruzek v. Husky Oil Operations Ltd.*, 520 F. Supp. 3d 1079, 1095 (W.D. Wis. 2021) (Conley, J.) (citing *Amgen Inc. v. Conn. Ret.*

---

[16] BASF reserves all rights to renew arguments made here and to make additional arguments in opposition to a motion by Plaintiffs to certify the classes, should this case proceed to that stage. *See, e.g.*, *Russo v. BRP US Inc.*, 737 F. Supp. 3d 649, 662 (E.D. Wis. 2024) ("Defendants may renew [an] argument . . . at the class-certification stage."); *Heard v. Becton, Dickinson & Co.,* 524 F. Supp. 3d 831, 851–52 (N.D. Ill. 2021) ("[Defendant] may raise its Rule 23 arguments again after discovery.").

*Plans & Tr. Funds*, 568 U.S. 455, 468 (2013)). As with commonality, "[m]ere *assertion* by class counsel" that this requirement is met "is not enough." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014).

Typicality asks whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Clarke ex rel. Pickard v. Ford Motor Co.*, 228 F.R.D. 631, 634 (E.D. Wis. 2005) (quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)).

Rule 23(a) also mandates that a plaintiff show adequacy. Adequacy requires that "[a] class representative . . . be part of the class and possess the same interest and suffer the same injury as the class members." *Amchem*, 521 U.S. at 625–26 (citations omitted); *see* Fed. R. Civ. P. 23(a)(4). When a putative class representative engages in claim splitting, thereby prejudicing the claims of class members, they are necessarily inadequate. *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 493 (S.D. Ill. 1999). After all, "[t]he danger with claim-splitting is that res judicata will bar any future claims by absent class members," foreclosing their right to pursue other claims in separate actions and thereby harming their interests. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 481 (N.D. Ill. 2009) (collecting cases), *aff'd*, 606 F.3d 391 (7th Cir. 2010) (collecting cases).

**A. Plaintiffs Do Not and Cannot Plausibly Allege Typicality, Commonality, Predominance, or Superiority Given That Their Mass-Tort Claims—Alleging Contamination From Numerous Sources, in Multiple Locations, Over Many Years—Are Inherently Individualized**

While it is axiomatic that tort claims are, by their nature, highly individualized, this is especially true "[i]n products liability actions." *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 628 (3d Cir. 1996), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) (citation omitted). In such cases, "[n]o single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant." *Id.*

This notion is at least as old as the 1966 Advisory Committee's Notes to Rule 23. They explain that, even a single "'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses of liability, would be present, affecting the individuals in different ways." Advisory Comm. Notes, Fed. R. Civ. P. 23 (1966). "In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried." *Id.* Plaintiffs must therefore "demonstrate[ ] that th[eir] mass tort case has . . . exceptional features that warrant departing from the general rule" that such cases are "ordinarily not appropriate for a class action." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 (5th Cir. 2006).

Consistent with this principle, courts in mass product-liability actions will not only deny motions to certify but may also strike class allegations on the pleadings.

*E.g., Jones*, 2019 WL 3554374, at *6; *Colley v. Procter & Gamble Co.*, No. 1:16-CV-918, 2016 WL 5791658, at *3, 12 (S.D. Ohio Oct. 4, 2016) (granting motion to strike on the pleadings where plaintiffs sought to certify a class bringing claims of "products liability, failure to warn, negligence and gross negligence" and "state-specific products liability claims"); *Trazo v. Nestle USA, Inc.*, No. 5:12-CV-2272 PSG, 2013 WL 4083218, at *13 (N.D. Cal. Aug. 9, 2013), *reconsideration granted on other grounds*, 113 F. Supp. 3d 1047 (N.D. Cal. 2015) (striking class claims on nine unrelated misbranding theories on a variety of products).

And while it is still possible to certify a mass-tort action in a single-incident or single-source-contamination case, *see, e.g., Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003), it is well established that cases involving multiple sources of contamination, at numerous locations, and over extended periods of time are too individualized to proceed under Rule 23. *See Gates v. Rohm & Haas Co.*, 655 F.3d 255, 271–72 (3d Cir. 2011) ("[c]ourts have repeatedly drawn distinctions between proposed classes involving a single incident or single source of harm and proposed classes involving multiple sources of harm occurring over time") (citation omitted); *see also Parko*, 739 F.3d at 1087 (distinguishing *Mejdrech* on this basis). That is because, whereas single-event cases "avoid the predominance problem of *Amchem* because they have at their core a single event giving rise to common questions of liability and causation, leaving only the calculation of individual damages," *all* of those issues in multi-event cases are individualized. 2 Newberg and Rubenstein on Class Actions § 4:62 (6th ed.). And therefore, in multi-event cases, *Amchem*'s principle

controls: that, where "[c]lass members were exposed to different . . . products, for different amounts of time, in different ways, and over different periods," class certification is "irreconcilable with [Rule 23's] design." 521 U.S. at 624–25.

Importantly, because the individualized questions in *Amchem*-governed cases go to threshold issues of liability and not just damages, a putative class action cannot be saved by bifurcating liability and damages. *See, e.g.*, *Ebert v. Gen. Mills, Inc.*, 823 F.3d 472, 479 (8th Cir. 2016) (vacating such a bifurcation order as an abuse of discretion and explaining that, "[t]o successfully establish the alleged claims, there are individual issues that will predominate on the matters of liability *and* damages" (emphasis added)). *Fisher v. Ciba Specialty Chems. Corp.*, 238 F.R.D. 273, 315 (S.D. Ala. 2006) (denying bifurcation "because many of the individual-specific issues . . . go to liability, not damages"); *Ruiz v. Citibank, N.A.*, No. 10 CIV. 5950 KPF RLE, 2015 WL 4629444, at *6 (S.D.N.Y. Aug. 4, 2015), *aff'd*, 687 F. App'x 39 (2d Cir. 2017) (same); *cf. Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 800 (7th Cir. 2013) (permitting bifurcation where individualized damages questions were present only because liability could be "determin[ed] on a class-wide basis").

The Seventh Circuit's *Parko* decision aptly shows the fundamental unsuitability of multi-incident mass torts for class treatment. 739 F.3d 1083; *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015) (comparing *Parko* and *Mejdrech*). There, the court reversed certification where the alleged contamination occurred "over a 90-year period and involved acts and omissions charged against the six defendants, and maybe other polluters as well." *Parko*, 739 F.3d at 1085. Thus, the

"class members could well have experienced different levels of contamination, implying different damages, caused by different polluters." *Id.* And, if so, it would raise "no common issue" but "only individual issues that will vary from homeowner to homeowner," such as whether the contaminant entered the "groundwater beneath his home at a level of concentration that if the groundwater were drunk would endanger health (and is there any possibility it would enter the water supply)." *Id.* at 1086–87. Additional questions would include "what is the source of the [contaminant] in the groundwater beneath a given home (that is, who is the polluter who caused the groundwater to become polluted)," could the contaminants' presence "in that concentration cause any other form of harm," has the contamination "reduced the value of his property," and, "if so, how great has the reduction been." *Id.* at 1087.

Like *Parko*, this case—alleging contamination from numerous sources, in multiple locations, over many years—is not suitable for class treatment. And the face of the Complaint proves it.

To begin, Plaintiffs do not allege facts plausibly suggesting "that any particular defendant was the source of the [alleged] pollution." *Bell*, 800 F.3d at 377. Nor could they. According to Plaintiffs' own allegations, the Mill has been operating for 122 years (since 1903), and the land application of sludge has been occurring for "decades." FAC ¶¶ 2, 67, 70.[17] The Mill has transferred ownership more than once and has allegedly been supplied with PFAS-containing products by up to *51 different*

---

[17] A practice which, as the Plaintiffs admit, is regulated by the Wisconsin Department of Natural Resources. FAC ¶ 68; *see also* 1990 Wis. Admin. Reg. 414B (June 30, 1990) (amending Wis. Admin. Code Ch. NR 214).

defendants. FAC ¶¶ 42, 67 (ownership transfer); FAC ¶¶ 1, 93–124 (alleging products liability claims against 3M, BASF, and 49 John Doe Defendants). And that is to say nothing of the other potential sources of PFAS, which Plaintiffs admit (as they must) exist. As Plaintiffs write, PFAS ("PFOA and PFOS") have been "found globally in water, soil, and air." FAC ¶ 51. After all, these "compounds have a tendency to mix with groundwater and migrate great distances," "readily escape from PFAS Products and have a tendency to mix with nearby waste," and are "common[ly]" "discharge[d]" "uninten[tionally]." FAC ¶ 100. Moreover, Plaintiffs allege that PFAS "are water soluble and do not readily adsorb to sediments or soil," which means "they tend to stay in the water column and can be transported long distances" while "resist[ing] breakdown and degradation in the environment." FAC ¶ 50. Given the "global[ ]" presence of PFAS, their "common[ ] discharge[ ]," and their "resist[ance]" to "breakdown," PFAS litigation is prevalent, *see* FAC ¶ 47 n.2 (listing litigation), including in Wisconsin, *see, e.g., Wisconsin v. 3M Co.*, C.A. No. 2:23-00028 (D.S.C.) (alleging statewide PFAS contamination, including from defendants and products not at issue here). *See also E. I. du Pont de Nemours*, 87 F.4th 315 (6th Cir. 2023); *Maryland v. 3M Co.*, 130 F.4th 380, 385 (4th Cir. 2025). In fact, one pending case alleges PFAS contamination from firefighting foam used at the airport just a few miles from Plaintiffs' proposed class area. *Wisconsin v. 3M Co.*, C.A. No. 2:23-00028 (D.S.C.). In all, there are *myriad* other possible sources (besides the 7 Defendants and 49 John Does named here) of the PFAS allegedly in the water.

Plaintiffs likewise fail to allege plausibly that, for the class area, "the groundwater [is] even polluted" or that the allegedly contaminated water "provide[s] a source of water for the plaintiffs." *Bell*, 800 F.3d at 377. While some Plaintiffs' wells allegedly contain unnamed PFAS (there are nearly 15,000 different PFAS)[18] at levels above EPA standards, others simply contain unnamed PFAS, and still other Plaintiffs claim only that water bodies, not groundwater, are contaminated with unnamed PFAS. FAC ¶¶ 9–17, 21–23, 25–28, 30, 36 (in well above EPA standards); FAC ¶¶ 18–20, 24, 29, 31–33 (in well); FAC ¶¶ 34–35 (water bodies).[19] Nor can Plaintiffs possibly allege that the contaminated water provides a source of water for the entire class, because, as Plaintiffs admit, their homes could be connected to a municipal water supply in the area.[20] FAC ¶¶ 105, 120, 135. Thus, individualized analysis will be necessary to determine whether a property has even suffered harm.

---

[18] *See CompTox Chemicals Dashboard v2.5.3*, Environmental Protection Agency, https://comptox.epa.gov/dashboard/chemical-lists/PFASSTRUCT (listing 14,735 as of May 29, 2025). The court can take "judicial notice of . . . government websites" at the motion to dismiss stage. *Vang*, 2024 WL 4370855, at *3 n.2 (citing *Pickett*, 664 F.3d at 648).

[19] Unsurprisingly, public records from the Wisconsin DNR show inconsistent results of well testing in the Stella area: nearly half of the private wells tested in the area show "no reported detections for PFAS," while another 24% have reported at levels PFAS "less than DHS' recommended health guidelines." Wis. Dep't of Nat. Res., *PFAS Contamination in the Town of Stella*, https://dnr.wisconsin.gov/topic/PFAS/Stella.html (last visited June 3, 2025). Again, the court can take "judicial notice of . . . government websites" at the motion to dismiss stage. *Vang*, 2024 WL 4370855, at *3 n.2 (citing *Pickett*, 664 F.3d at 648).

[20] It appears that only 12 Plaintiffs alleged that they use the water from the wells on their properties. *See* FAC ¶¶ 9, 184.

Additionally, there will undoubtedly be defenses unique to each Plaintiff. For example, one Plaintiff "allowed Defendants to apply sludge" to his property. FAC ¶ 33. He (and others like him) have different contractual relationships related to this practice. Those Plaintiffs may have waived claims, such as the trespass claim, by allowing it.

In all, Plaintiffs cannot present a fact-based theory common to the class and predominating over individual issues. Their case presents the same questions that made *Parko* uncertifiable:

- Is there PFAS "in the groundwater beneath" each "home at a level of concentration that if the groundwater were drunk would endanger health (and is there any possibility it would enter the water supply)"?

- "What is the source of the [PFAS] in the groundwater beneath a given home (that is, who is the polluter who caused the groundwater to become polluted)"?

- "[C]ould the presence of the [PFAS] in that concentration cause any other form of harm"?

- "[H]as the presence of the [PFAS] reduced the value of his property"?

- "[I]f so, how great has the reduction been"?

739 F.3d at 1087.

Indeed, in addition to failing to allege plausibly that common questions will predominate under Rule 23(b), Plaintiffs also do not and cannot allege even that there are common questions that will satisfy Rule 23(a), which means that Plaintiffs fall short on typicality, too. *See Parko*, 739 F.3d at 1086 ("It's not even clear that the plaintiffs have *identified* a common issue."); *Dukes*, 564 U.S. at 349 n.5 (commonality and typicality "tend to merge"). Plaintiffs' purportedly "common" questions,

- 43 -

FAC ¶ 89, are not common at all, either because they have no common answer or because no answer will "drive resolution of the litigation." *Dukes*, 564 U.S. at 351 (citation omitted). Many of the purported questions simply test elements of the claims, which will vary from property to property. *See supra* pp. 39–43; *see also In re E. I. DuPont de Nemours & Co. C-8 Pers. Inj. Litig.*, No. 22-0305, 2022 WL 4149090, at *7 (6th Cir. Sept. 9, 2022) (the question "whether exposure to PFAS is sufficiently harmful to warrant medical monitoring" was not common because answering the question would require individualized analyses). Other questions, like whether PFAS-containing products were used at the Rhinelander Mill, FAC ¶ 89, will not drive resolution of the litigation because the answer will not shed light on whether those products are in Plaintiffs' groundwater or neighboring water bodies. For similar reasons, Plaintiffs have not and cannot show typicality. *Mays v. Tennessee Valley Auth.*, 274 F.R.D. 614, 625 (E.D. Tenn. 2011) ("plaintiffs' claims are not typical because the analysis and ultimate determination of each plaintiff's claim will turn primarily on individualized inquiries into how the [contamination] affected each plaintiff's specific property interest").

That this case is not amenable to class treatment is also demonstrated by the decision of the Judicial Panel on Multidistrict Litigation ("JPML") to deny transfer. "Both class actions and MDLs aim at achieving efficiency when many litigants have similar claims." 2 Newberg and Rubenstein on Class Actions § 6:43 (6th ed.). And, like a class action, cases transferred to multi-district litigation must "involv[e] one or more common questions of fact." 28 U.S.C. § 1407(a). The JPML has since explained

that these "common question[s] of fact must have a material bearing on the litigation." 2 Newberg and Rubenstein on Class Actions § 6:53 (6th ed.); *compare id. with Dukes*, 564 U.S. at 350 (commonality under Rule 23 requires that the common question "resolve an issue that is central to the validity" of the claims). The JPML denied transfer in this case because it "would include far more site-specific issues, different modes of PFAS contamination, and different PFAS chemicals," and thus "could quickly become unwieldy." Dkt. 26:2 (citation omitted).

Finally, Plaintiffs also cannot satisfy the superiority requirement. Damages from "diminution in the value of . . . property," which can vary greatly, "may not be huge, but may well be sizable enough for individual (or joined) suits to be a feasible alternative to a class action." *Parko*, 739 F.3d at 1086. In addition, class members may "have a strong interest in controlling the prosecution of individual actions." *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 209 F.R.D. 323, 350 (S.D.N.Y. 2002). This is especially true for class members "who have suffered personal injury" or who experienced "severe[ ] contaminat[ion]" of their property. *Id.* In such cases, a class action is not superior to individual actions. *Id.* And here, where at least ten Plaintiffs seek recovery for personal injury, FAC ¶ 184, and where the alleged contamination varies on each property, *see* FAC ¶¶ 9–36, individuals will likely wish to control their own litigation. Indeed, this is aptly demonstrated by the fact that the ten personal-injury Plaintiffs are pursuing those claims *individually*. FAC ¶¶ 174–88.

**B. Plaintiffs Do Not and Cannot Qualify as Adequate Class Representatives, Because They Explicitly Have Waived Claims for Personal Injuries**

"[C]lass judgments bind absentees with respect to their individual claims for relief and are preclusive as to all claims the class could have brought." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 654 (2022) (citation omitted). In other words, even if the class claims succeed, any other claims that could *possibly* have been brought will be barred by *res judicata*.

This is especially true under Wisconsin law, where a claim is precluded when there is "(1) identity between the parties or their privies in the prior and present suits; (2) prior litigation resulted in a final judgment on the merits by a court with jurisdiction; and (3) identity of the causes of action in the two suits." *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 21 (citation omitted).[21] When these criteria are met, claim preclusion bars "not only the claims actually decided in the earlier case but also any other claim which *could have been* brought therein." *Boerner v. LVNV Funding LLC*, 326 F. Supp. 3d 665, 676–77 (E.D. Wis. 2018) (emphasis added).[22] Regardless, even if *res judicata* did not apply, issue preclusion would preclude successive litigation on

---

[21] Wisconsin law governs preclusion with regard to any tort-based personal injury claims Plaintiffs and absent class members may have here. *See Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 706 (7th Cir. 2024) ("In diversity cases . . . 'federal law incorporates the rules of preclusion applied by the State in which the rendering court sits.'" (citation omitted)).

[22] The Seventh Circuit has created a federal carve-out not applicable here, for cases seeking only injunctive or declaratory relief. A class member is not prohibited by *res judicata* from later seeking individual damages, although issue preclusion will still apply. *Crowder v. Lash*, 687 F.2d 996, 1008–12 (7th Cir. 1982). Preclusion here is governed by Wisconsin law, *see, e.g.*, *Ghelf v. Town of Wheatland*, 132 F.4th 456, 470 (7th Cir. 2025), and this case does not involve an injunction-only class.

the same issues, including any factual issue that "was actually litigated and determined in the prior proceeding by a valid judgment," where "the determination was essential to the judgment," and applying the doctrine "would be fundamentally fair." *Rille ex rel. Estate of Rille v. Physicians Ins. Co.*, 2007 WI 36, ¶¶ 36–38.

Given these doctrines, when a class representative abandons or tries to reserve certain claims—notwithstanding that absent class members may wish to pursue such claims—the would-be representative's interests are antagonistic to that of the class, and he is therefore inadequate. *Thompson v. Am. Tobacco Co.*, 189 F.R.D. 544, 550 (D. Minn. 1999). This problem tends to surface when a class representative chooses to abandon personal-injury claims because he hopes that it will "improve the possibility of demonstrating commonality." *Thompson*, 189 F.R.D. at 551 (citation omitted). Even if the tactic accomplished that limited objective (and here it does not), plaintiff would succeed only in moving from the frying pan to the fire. *Clay*, 188 F.R.D. at 493 ("A judgment against the proposed class in this case would likely preclude recovery by other potential plaintiffs, who fit within the class definition, for personal injury.").[23] If the absent class members likely have such claims, then the class representatives are inadequate. *Clay*, 188 F.R.D. at 493; *Thompson*, 189 F.R.D. at 551; *In re Teflon Prods. Liab. Litig.*, 254 F.R.D. 354, 367–68 (S.D. Iowa 2008).

---

[23] Even without claim preclusion, when an issue is litigated to judgment, the judgment will bar relitigation of that issue by all absent class members, *see Crowder*, 687 F.2d at 1011, which may well have the effect of barring the claim (for example, if a key issue of liability is determined in defendant's favor), *see Anderson v. Seaworld Parks & Ent., Inc.*, 132 F. Supp. 3d 1156, 1166–67 (N.D. Cal. 2015).

This defect in pleading is especially salient when the class representatives assert personal-injury claims *on their own behalf*. That the named plaintiffs believe there are cognizable personal-injury claims arising from the course of conduct at issue only underscores that absent class members, too, might have cognizable personal-injury claims arising from the same conduct. *See In re Teflon Prods. Liab. Litig.*, 254 F.R.D. at 367 ("the fact that plaintiffs included claims for medical monitoring in their original complaints suggests that the claims *could have* been brought in the present litigation").

This rule independently blocks Plaintiffs' attempt to proceed under Rule 23. They have engaged in claim splitting, foreswearing any personal-injury claims on behalf of the class while pursuing their own, individual claims for personal injury. FAC ¶ 82 (stating that six proposed class representatives bring claims "on behalf of themselves and all others similarly situated . . . excluding personal injury damages"); FAC ¶ 184 (alleging personal injuries plaintiffs have suffered). Obviously, there is a significant possibility that class members might allege personal-injury claims—10 of the 46 named individuals in this case are pursuing them, including proposed class representative Marquardt. *See generally* FAC ¶¶ 84, 174, 184.[24] But the class representatives have elected to forgo those claims on behalf of the class members. *See* FAC ¶ 82. This foreswearing serves only to disqualify them as class representatives. In sum, because Plaintiffs cannot possibly protect the interests of the absent class

---

[24] Paragraph 174 lists only nine plaintiffs, while paragraph 184 lists ten plaintiffs. *See* FAC ¶¶ 174, 184. Proposed class representative Marquardt appears in both lists. *See* FAC ¶¶ 84, 174, 184.

members while abandoning what Plaintiffs clearly think are meritorious personal injury claims on their behalf, they do not and cannot plausibly allege that they are adequate class representatives.

### C. Plaintiffs' Proposed Class Definition Constitutes an Impermissible Failsafe Class That Is Also Vague and Overbroad

In addition to the explicit requirements of Rule 23, a proposed class must be "ascertainabl[e]": an "implicit requirement under Rule 23 that a class must be defined clearly and that membership may be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This requirement takes several forms, *see id.* at 657, 659–60, but at its core demands a class "sufficiently definite to permit ascertainment of class members." *All. to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977).

A proposed class is insufficiently definite if it is a failsafe. *See McCaster*, 845 F.3d at 799. A failsafe class is one "defined so that whether a person qualifies as a member depends on whether the person has a valid claim." *Id.* (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 825 (7th Cir. 2012)). In other words, the class member "either wins or, by virtue of losing, is defined out of the class and is therefore not bound by the judgment." *Id.* (quoting *Messner*, 669 F.3d at 825).

A vague class definition is likewise insufficiently definite. *Mullins*, 795 F.3d at 659–60. Such vague definitions fail to "identify who will receive notice, who will share in any recovery, and who will be bound by a judgment." *Id.* at 660. "To avoid vagueness, class definitions generally need to identify a particular group, harmed during a particular time frame, in a particular location, in a particular way." *Id.*

Finally, overbroad classes fail to satisfy ascertainably. *See Messner*, 669 F.3d at 824–25. Such definitions fail "because they 'include individuals who are without standing to maintain the action on their own behalf.'" *Duffin*, 2007 WL 845336 at *3. In contamination cases, a proposed class is impermissibly overbroad where "[t]he class area is defined in geographic terms unrelated to evidence of actual . . . contamination." *Id.* at *3. "[A]rbitrarily . . . draw[ing] lines on a map" absent identification of "any logical reason relating to the defendants' activities" in that area creates an impermissibly overbroad proposed class. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 602–03 (D. Colo. 1990). And where "the overbreadth issues are numerous," striking a proposed class is a permissible remedy. *O'Flynn v. PHH Mortg. Corp.*, No. 1:22-CV-00335-JMS-MG, 2024 WL 4553116, at *12 (S.D. Ind. Oct. 23, 2024); *see also Burkhead v. Louisville Gas & Elec. Co.*, 250 F.R.D. 287, 292–93 (W.D. Ky. 2008).

Plaintiffs' proposed class definition is a prohibited failsafe class, impermissibly vague, and overbroad.

Plaintiffs propose the following class definition: "all owners of real property in Oneida County generally within the map depicted below and within the red outline of the class area since September 2022 where the land application of PFAS-containing paper mill sludge has caused harm to property." FAC ¶ 83. This definition continues to create three subclasses: (1) properties "where land application of sludge" "has caused contamination of groundwater and the sole source of drinking water to the property is groundwater"; (2) "properties where PFAS-containing paper mill sludge has been land applied" and (3) properties "adjacent to – or which possess riparian

rights to" several waterbodies. *Id.*; *see also* FAC ¶ 84 (identifying proposed representatives for each subclass).

This definition is an impermissible failsafe class because it allows class members to qualify for the class only if the person has a valid claim: if "the land application of PFAS-containing paper mill sludge has *caused* harm to property." FAC ¶ 83 (emphasis added). The proposed class claims—(1) design defect and defective product, (2) failure to warn/inadequate instruction, (3) negligence, (4) private nuisance, and (5) trespass—all require proof of causation. *See supra* pp. 13–14. Absent proof of causation, none of these claims will succeed. So the proposed class members can either succeed on these claims (successfully prove causation) or, if these claims are unsuccessful, the class member is "defined out of the class" and "not bound by the judgment." *McCaster*, 845 F.3d at 799 (citation omitted). Thus, this "case can't proceed as a class action" because Plaintiffs seek to represent a failsafe class. *Id.* And this alone is a reason to grant a motion to strike. *See Bell v. Cheswick Generating Station, Genon Power Midwest, L.P.*, No. CIV.A. 12-929, 2015 WL 401443, at *5 (W.D. Pa. Jan. 28, 2015); *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *9 (S.D. Ohio May 7, 2014).

Plaintiffs' proposed class definition also is too vague because it fails to identify "a particular location" for the class. *Mullins*, 795 F.3d at 659–60. The proposed definition includes "all owners of real property in Oneida County generally within the map depicted below *and* within the red outline of the class area." FAC ¶ 83 (emphasis added). One reading of this proposed definition limits the class to the red outline

depicted in paragraph 83 of the FAC. However, this definition, as well as the subclasses later defined, could be read to suggest that the proposed class includes all of the geography depicted in the map—not only those properties in the red outline. For example, the first subclass includes "properties in the contaminated area" which is not separately defined. FAC ¶ 83. It is not clear if the "contaminated area" is limited to properties "within the red outline" or more broadly extends "within the map depicted." FAC ¶ 83.

In addition, the second subclass includes "properties where PFAS-contaiming paper mill sludge has been land applied." FAC ¶ 83. The FAC identifies only one such property, FAC ¶ 33, but elsewhere suggests that the sludge was spread "over thousands of acres of farmland," FAC ¶ 70, without limitation to the red outline.

Perhaps the best example of this vagueness is the third subclass. That subclass includes properties "adjacent to – or which possess riparian rights to" several specific bodies of water as well as "any other surface waterbody within the geographic limitations outlined above that contains PFAS." FAC ¶ 83. But the outlined area cuts across several bodies of water, without explanation of why property owners on one side of the line adjacent to these bodies of water are part of the proposed class, while those on the other side are not. This ambiguity about the particular location where class members are located leads to one conclusion: this proposed class definition is impermissibly vague.

Finally, Plaintiffs' proposed class is also impermissibly overbroad because "[t]he class area is defined in geographic terms unrelated to evidence of actual . . .

contamination." *Duffin*, 2007 WL 845336, at *3. The proposed class definition, assuming it is limited to the red outlined area in paragraph 83, *see supra* pp. 51–52, is nothing more than an arbitrary drawing of lines on a map. *See Daigle*, 133 F.R.D. at 602–03. Plaintiffs identify only one specific location where the sludge was allegedly spread. FAC ¶ 33. And this location is within the red outline. However, the FAC alleges that this sludge was spread "over thousands of acres of farmland," FAC ¶ 70, without further geographic identification. There is no way to know, on the face of the FAC, if the sludge was applied elsewhere, where the alleged contamination area encompasses, and whether these events occurred in Onedia County beyond the outlined area. And the red outline in paragraph 83 does not include all of the lakes and waterbodies in the region, and cuts across several lakes. Plaintiffs provide no explanation as to how alleged contamination could affect only a part of the lake and not the entire body of water. Due to these "numerous" overbreadth issues stemming from arbitrary line drawing of boundaries, the proposed class should be stricken. *See O'Flynn*, 2024 WL 4553116, at *12.

## CONCLUSION

This Court should dismiss Plaintiffs' claims against BASF with prejudice. If it does not dismiss the Complaint in its entirety, the Court should strike Plaintiffs' class allegations with prejudice.

Dated: June 9, 2025

Respectfully Submitted,

/s/ Ryan J. Walsh
RYAN J. WALSH
WBN 1091821
AMY C. MILLER
WBN 1101533
EIMER STAHL LLP
10 East Doty Street, Suite 621
Madison, WI 53703
Phone: (608) 620-8346
Fax: (312) 692-1718
rwalsh@eimerstahl.com
amiller@eimerstahl.com

VINCENT JOHN MONTALTO
(Pro Hac Vice)
DLA PIPER LLP US
51 John F. Kennedy Parkway
Suite 120
Short Hills, NJ 07078
Phone: (973) 307-3033
vincent.montalto@us.dlapiper.com

Counsel for Defendant BASF
Corporation